**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

---

| | |
|---|---|
| Douglas Burchfield, | **Civil Action File No.** |
| Plaintiff, | **1:07-CV-1263 (TWT)** |
| v. | |
| CSX Transportation, Inc. and The Andersons, Inc., | |
| Defendants. | |

---

**NON-PARTY GENERAL MILLS' REPLY BRIEF IN SUPPORT OF
MOTION TO QUASH AND FOR PROTECTIVE ORDER**

**FACTS**

Mo Draper works for a Charlotte, North Carolina based company, Barloworld, as an experienced trainer in trackmobile operations. (Draper Aff. ¶ 2). In 2005, Draper was specially retained by Mark Dreux, General Mills' outside legal counsel, to serve as a consulting expert to assist in General Mills' post accident investigation. (Draper Aff. ¶ 3; Dreux Aff. ¶¶ 2-4). Specifically, Draper was engaged to participate in the videotaped experimental testing of the AEX 7136 rail car hand brake. (Draper Aff. ¶ 4; Dreux Aff. ¶¶ 3-4). Attorney Dreux spoke to Draper several times before, during and after the experimental testing about

Draper's role in the experiment and the need to keep his participation in testing and the results of the testing confidential. (Draper Aff. ¶ 5; Dreux Aff. ¶¶ 4-5). Dreux also sent Draper a letter memorializing these several discussions. (Draper Aff. ¶ 5; Dreux Aff. ¶ 4). Draper is General Mills' retained consulting expert and pursuant to Fed. R. Civ. P. 26(c), 26(b)(4)(B), and 45(c), the facts he knows and the opinions he holds about the testing are not discoverable. Defendants' attempt to secure testimony from General Mills' consultant about the videotaped testing is oppressive, burdensome and unjust, therefore, the subpoenas issued to Draper must be quashed.

## ARGUMENT

**I.   Defendants seek to question Draper about expert experimental test data, not "neutral" facts about the Burchfield accident.**

For all their protestations that they seek only "pure facts" about the accident, any data solicited by Defendants about the videotaped hand brake experiment -- whether from Gary Wolf and his colleagues at Rail Sciences, or from Mo Draper, or even from General Mills' regular employees -- is data about an expert's experimental test, **not the facts of Doug Burchfield accident**. Defendants do not intend to ask these witnesses what they saw or heard before the accident, or how they found the accident scene as they came upon it on June 5, 2005, or what any accident witnesses that they may have interviewed revealed about the event, or any

2

of a host of accident circumstances ordinarily treated as the "facts of an accident." To the contrary, Wolf was engaged by General Mills' legal counsel to assist General Mills in its preparation for anticipated litigation and to formulate opinions on the potential causes of the Burchfield accident. The details of the experiment he conducted are uncontrovertibly separate and distinct from the facts of the accident. Attorney Dreux also engaged Draper to assist in the experimental testing performed under his direction and Draper's observations of the testing also do not constitute "pure facts" of the accident.

It is of no import whatsoever whether Draper prepared a report of his observations and opinions, or whether he considered himself a key player in the testing. He did not observe the testing as a mere uninformed lay person passively watching a neutral event unfold about which he understood nothing nor had any meaningful opinions. Draper does not need to be an accident reconstructionist or any other type of "professional expert" to have both a specialized role in General Mills' experimental testing of the rail car and an expert's view of what transpired during the testing. The facts known and opinions held by Draper should be protected from further inquiry, just as Wolf is so protected by this Court's August 27, 2008 order from having to testify about "data concerning testing."

**II.   Rules 45 and 26 provide this Court with sufficient authority to protect Draper and General Mills from compelled disclosure of expert investigatory data.**

Rule 45(c)(3)(A) "requires the court to protect all persons from undue burden imposed by the use of the subpoena power." Adv. Comm. Notes to Rule 45, 1991 Amend. Rule 45(c) "is not intended to diminish rights conferred by Rules 26-37 or any other authority," <u>id.</u>, and in fact, Rule 45(c)(3) tracks Fed. R. Civ. P. 26(c), which broadly authorizes a court, on a showing of "good cause," to preclude or limit discovery or to impose specific conditions on the use of discovered data, in order to "protect a party <u>or person</u> from annoyance, embarrassment, oppression or undue burden or expense . . . ." (emphasis added). By its terms, Rule 26(c) allows protection of non-parties, and defines in general terms the grounds for such relief, as well as the substance of the relief that may be afforded. Many courts have recognized the potential of this rule to protect a non-party from the unfairness imposed by the compelled disclosure of the non-party's investigative data. Such cases have generally arisen in the work product context and the rationale of these decisions is relevant, applicable and persuasive here.

For example, in <u>In re Student Financial Corp</u>., No 06-MC-69, 2006 U.S. Dist. LEXIS 86603 (E.D. Pa. Nov. 29. 2006), the court addressed cross motions to compel and for a protective order related to discovery of a non-party's

4

investigatory materials, and concluded that despite the limiting language of Rule 26(b)(3), work product protections could be afforded to a non-party. Id. at *32. The court acknowledged other rulings that had denied work product protection to non-parties due to the "limiting" language of Rule 26(b)(3), but expressly disagreed with those rulings, observing that Rule 26(b)(3) is "not the only means for asserting work product protection in federal courts." Id. at *31.

The Student Financial court observed, among other things, that "Rule 45 expressly provides that the court from which a subpoena has issued shall quash or modify the subpoena if it 'requires disclosure of privileged or other protected matter and no exception or waiver applies.'" Id. at *32-33 (quoting Fed. R. Civ. P. 45(c)(3)(A)(iii)). The court also found that "Rule 26(c) authorizes a court to issue a protective order 'for good cause shown' to protect 'a party or person from annoyance, embarrassment, oppression or undue burden or expense.'" Id. at *33.

Acknowledging other rulings which found that it would be "unduly burdensome and therefore, unjust, to require a non-party to deliver [work product] to a party who may subsequently join the non-party in the litigation," the Student Financial court concluded that a non-party could assert the work product privilege beyond the strict terms of the rule. Id. (quoting Basinger v. Glacier Carriers, Inc., 107 F.R.D. 771, 772 (M.D. Pa. 1985)). See also In re California Public Utilities

Comm'n, 892 F.2d 778, 781 & n.2 (9th Cir. 1989) (commenting that the district court "might choose to consider the interest of the [non-party] in the outcome of the litigation…and a significant burden on that interest could arguably be 'oppressive' for purposes of Rule 26(c))"; In Re Polypropylene Carpet Antitrust Litigation, 181 F.R.D. 680, 691-692 (N.D. Ga. 1998) (observing that "[a]lthough the documents do not fall under the literal protection afforded by Rule 23(b)(3), the third party who generated the documents is not powerless to seek protection from disclosure of sensitive and confidential information" and instructing that the text of Rule 26(c) and Eleventh Circuit law could offer protection to a non-party).

Similarly, in addressing the potential limits of Rule 26(b)(3), Professors Wright, Miller and Marcus have counseled:

> Fortunately, courts need not be constrained by a literal reading of Rule 26(b)(3) and can continue to arrive at sensible decisions on this narrow point. To the extent that Rule 26(b)(3), literally read, seems to give insufficient protection to material prepared in connection some other litigation, the court can vindicate the purposes of the work-product rule by the issuance of a protective order under Rule 26(c).

Wright, Miller & Marcus, Federal Practice and Procedure: Civil § 2024, at 356.

Given that Rules 26(b)(3) and Rule 26(b)(4)(B) contain the same language at issue (i.e., reference to "parties"), the analysis of federal courts and commentators to extend protection to a non-party is relevant and applicable to General Mills' request for non-party protection for itself and its expert, whether ultimately granted

under Rule 26(b)(3), 26(b)(4)(B), 26(c) or Rule 45(c). However, the many observations about the breadth of Rule 26(c) are especially persuasive here.

There is no question that it would be unduly burdensome to General Mills and Draper allow the parties here to depose Draper about his participation in experimental tests on the rail car. The precarious position of General Mills in this litigation further illustrates this burden. While General Mills' is a non-party to this litigation, many aspects of this litigation, including the causation theories proffered by the parties, critically impact the interests of General Mills because CSX has placed General Mills in its crosshairs for a potential future claim in indemnity. Thus, the oppressiveness of the subpoena to non-party General Mills and its expert, and General Mills' concurrent need for the same protections that would be afforded to it if it were a party right now, could not be more evident.

**III.   The facts known and opinions held by Draper are within the ambit of Rule 26(b)(4)(B) and the express protections afforded by Rule 26(c).**

The fundamental authority granted to this Court pursuant to Fed. R. Civ. P. 45(c) and 26(c) to protect person from undue burden is not the sole basis upon which a court may issue a ruling to protect non-parties. The recent decision in the Carnes case is illustrative of one court's recognition of the principles underlying the limitation on discovery of an adversary's work product and the concomitant need for a fair and balanced application of Rule 26 protections to a non-party

7

facing potential litigation. As General Mills has asserted, the logic of the court's ruling in Carnes is relevant and applicable to issue before this Court.

In Carnes, the district court addressed a non-party employer's motion to quash a Rule 45 subpoena seeking documents related to the non-party's investigation of a serious workplace accident. The non-party argued that its investigative work product was protected from discovery by Rule 26(b)(3).[1] Acknowledging that the work product doctrine did not ordinarily extend to non-parties, the court noted that the three-fold "protection provisions of Rule 45 and Rule 26(c), as well as Hickman, support the extension of work product protection beyond the limits of the text of Rule 26(b)(3)." Id. at 697 (citing In re Student Finance Corp., 2006 U.S. Dist. LEXIS 86603 at *11 (E.D. Pa. 2006)).

Similarly, in Basinger v. Glacier Carriers, Inc., 107 F.R.D. 771 (M.D.Pa. 1985), the non-party tavern's insurance representatives who had been served subpoenas seeking their claims investigation materials and deposition testimony about the investigation argued to the district court that Rule 26(c) was broad enough to permit application of Rule 26(b)(3) to protect the non-party tavern's

---

[1] Presumably Defendant Star of the West understands this issue well, as UPS, the non-party resisting a subpoena and seeking work product protection in Carnes, was represented by the law firm of Mozley, Finlayson & Loggins, counsel for Star of the West in this action.

interests. The court agreed, and noting that the insurer represented a potential future party, it observed:

> Certainly, if a party to litigation is partially protected by Rule 26(b)(3) from having to disclose certain information to an opposing party, it is unduly "burdensome" and therefore, unjust, to require a non-party to deliver the same kind of information to a party who may subsequently join the non-party in the litigation. A contrary interpretation would permit a strategically delayed joinder to circumvent the purposes of Rule 26(B)(3).

Basinger, 107 F.R.D. at 772. See also, Carnes, 244 F.R.D. at 699 (citing to the reasoning of Basinger in rendering its decision to extend the scope of work product protection to a non-party employer whose investigatory materials had been subpoenaed); In re Student Financial Corp., No 06-MC-69, 2006 U.S. Dist. LEXIS 86603 (E.D. Pa. Nov. 29. 2006) (citing to the three-fold source of authority – Rules 45, 26(c) and Hickman v. Taylor – in order to extend protection outside the express terms of Rule 26(b)(3) in appropriate cases).

The limiting language of Rule 26(b)(3) that these federal courts have analyzed is identical to the limiting language of Rule 26(b)(4)(B). Both rules implement protections against discovery by one party of the materials or experts of "another party." Because the language is the same, the same analysis and principles of fairness that led several courts to subsequently extend protection to non-parties may be applied here to extend Rule 26(b)(4)(B) protections to

consulting expert Mo Draper and the non-party who retained him, General Mills.[2] It matters little whether Draper considers himself a professional litigation expert like Gary Wolf. Draper was engaged by General Mills' outside counsel to serve as a consulting expert and to bring his expertise to bear on an experimental test of rail car hand brakes. If attorney Dreux just needed "cheap labor," he did not need to go to Charlotte, North Carolina to find it, nor did he need to send a retention letter to Draper memorializing the terms of his engagement and the importance of conscientiously adhering to the confidentiality protections that are afforded to experts. Just as Wolf merits protection under Rule 26(b)(4)(B), so too does Draper, therefore, absent exceptional circumstances, no testimony may be taken from Draper.

Interpreting Rule 26(b)(4)(B) by strictly construing the language of the rule to preclude any possible protection for a non-party subjected to an oppressive subpoena, as Defendants would urge, undermines not only the essential fairness policies of the federal procedural and evidentiary rules, but also countermands the express history and interrelationship between the broad protections of Rules 26(c) and 45(c). While General Mills is not of aware of any *published* court opinions

---

[2] Indeed, even Rule 26(b)(3) work product protections may be invoked to preclude Defendants from obtaining information related to the experimental testing of the hand brakes, which was conceived of by attorney Dreux as part of General Mills' investigation into the possible causes of the Burchfield accident.

which have expressly extended Rule 26(b)(4)(B) protections to non-parties, Defendants can cite no case where a court has slammed the door of fairness on a non-party facing the prospect of future litigation by ordering blanket disclosure of confidential expert experiments and investigatory data.  To the contrary, a number of courts and commentators have expressly lamented the unfairness that may be wrought by a strict interpretation of Rule 26 provisions and sought to remedy the problem by taking a broader view of the Rule 26 and 45 and the protections that can and should be afforded to non-parties.

General Mills placed this same basic fairness issue before this Court in its earlier motion seeking protection of the Wolf expert investigatory materials, asserting that it was wholly improper for Defendants to assert the non-party negligence of General Mills, seek indemnity and threaten future litigation against General Mills, while using federal subpoena power to compel disclosure of General Mills' expert data and opinions.  This Court responded by limiting discovery of Wolf about his expert investigation and should so preclude discovery of Mo Draper.

**IV.    The key cases upon which Defendants rely bear no relationship to this matter on the two critical issues: (1) what type of investigatory data sought by the subpoena and (2) what prejudice, if any, will the non-party suffer if disclosure is compelled?**

Arkwright Mutual Ins. Co. v. National Union Fire Ins. Co., the key case that both CSX and The Andersons rely on in their support of their argument that Rule 26(b)(4)(B) may not be extended to non-parties, is wholly distinguishable on the critical issues here. First, in Arkwright, the Court noted "[i]t appears unlikely that [the non-party] will ever be a party to this action or related subrogation proceedings." Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co., 148 F.R.D. 552, 556 (S.D. W.Va. 1993).[3] Second, the witness to be deposed was an

---

[3] It also bears mention that Chief Judge Haden, the district court judge in Arkwright, had initially denied a motion to compel documents from the non-party, Murray, ruling that "[a]lthough Murray is not a party to the dispute between Arkwright and National Union, Murray can assert the work product privilege." Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co., 771 F. Supp. 149, 150-151 (S.D. W.Va. 1991). The Fourth Circuit made no comment on that aspect of the district court's ruling, and merely remanded the matters for *in camera* review of the subpoenaed documents to determine if they satisfied work product definitions. National Union Fire Ins. Co. v. Murray Sheet Metal, Inc., 67 F.2d 980 (4th Cir. 1992). Oddly, ten months later, following *in camera* review, Judge Haden issued a new ruling in which he criticized the "*sub silentio* holding" of the appellate court that Rule 26(b)(3) applied to non-parties, denied Rule 26(b)(4)(B) and Rule 45(c) protections to Murray, and reversed course on his initial ruling, upholding the defendants' renewed motion to compel documents from the non-party. Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co., 148 F.R.D. 552 (S.D. W.Va. 1993). It is this unusual decision that Defendants cite here in support of their burdensome subpoena. From what General Mills can discern, the key difference is that when Judge Haden first extended work product protection to the non-party in 1991, he stated "It is uncontroverted that Murray is a potential party to litigation," 771 F. Supp. at 151, whereas in 1993, when he ordered the non-party to produce documents, the potential for Murray to become a party to litigation had evaporated ("It appears unlikely that Murray will ever be a party to this action or related subrogation proceedings." 148 F.R.D. at 556, n. 9).

unretained expert and, third, the subpoenaing party basically sought his observations of a fire scene immediately following the fire. Id. at 557.

Meanwhile, the other case relied on by Defendants, Fernandez v. McDaniel Controls, Inc., 1998 U.S. Dist. LEXIS 19221 (E.D. La. Dec. 2, 1998) ultimately stands only for the proposition that one federal district court has declined to extend Rule 26(b)(4)(B) protections to the representative of a non-party. There is no indication in Fernandez whether disclosure of the materials sought from plaintiff employer's worker compensation carrier would prejudice the employer in any fashion, nor whether the type of investigatory materials sought from the non-party insurance carrier were merely the typical insurance investigatory materials (i.e., witness statements, accident scene photographs, etc…) or more like the sensitive experimental testing data at issue here.

General Mills' position as a non-party here is far more precarious than the non-parties in Arkwright and likely Fernandez. The Andersons have given statutory notice of their intent to seek a jury finding on non-party General Mills' negligence and CSX has made clear its views on a possible indemnity action against General Mills. The information sought by CSX and The Andersons goes far beyond the "pure factual data" that Defendants continually (mis)represent that they are seeking and for these reasons, the holdings of Basinger and Carnes are far

more relevant to the Court's analysis here.  See Basinger v. Glacier Carriers, Inc., 107 F.R.D. 771, 772 (M.D. Pa. 1985) (noting that the non-party was likely to be joined as party and allowing the non-party to invoke Rule 26(b)(3) to protect its investigatory files) and Carnes v. Crete Carrier Corp., 244 F.R.D. 694 (N.D. Ga. 2007) ("Much like the [non-party] in Basinger, UPS may be a party to litigation at some point in the future; requiring UPS to provide its information to a potential adverse party or co-tortfeasor would be "unduly 'burdensome' and therefore unjust.").

As in Basinger and Carnes, to now allow CSX, a potential future adversary to use federal subpoena power to secure the details of General Mills' post-accident expert testing, conducted not merely in the course of business but rather in full anticipation of potential litigation, would be manifestly unjust.  For this reason alone, Defendants' oppressive attempt to depose Mo Draper must be quashed.

**V.     CSX and The Andersons have failed to prove exceptional circumstances exist to permit the deposition of General Mills' expert.**

As has been stated many times, Rule 26(b)(4)(B) requires a showing of exceptional circumstances "under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means."  It is important to reiterate that "a party seeking disclosure under Rule 26(b)(4)(B) carries a heavy burden."  Hoover v. U.S. Dep't. of Interior, 611 F.2d 1132, 1142

(5th Cir. 1980) (citing Barkwell v. Sturm Ruger Co., 79 F.R.D. 444, 446 (D. Alaska 1978)).  In fact, "it will rarely be possible to make the required showing." U.S. v. Meyer, 398 F.2d 66, 76 (9th Cir. 1968).

Without dispute, the information Defendants hope to obtain about the videotaped testing would most easily be obtained from Gary Wolf.  However, pursuant to the Court's August 27, 2008 ruling granting in part General Mills' Motion to Quash and for a Protective Order, Wolf cannot be deposed.  There is no authority for the proposition that this Court's ruling precluding a deposition of Wolf may now serves as the basis for Defendants to argue that it is impracticable for them to obtain the information sought from other sources and, therefore, they must be permitted to depose Draper about the same topics.  The lack of exceptional circumstances should also preclude Defendants' improper discovery tactics.

## CONCLUSION

For all the reasons set forth above, General Mills respectfully requests that this Court grant General Mills' Motion to Quash and Motion for Protective Order regarding The Andersons' subpoena issued to General Mills' expert Mo Draper for his deposition and document production, and regarding that portion of the CSX subpoena to Barloworld seeking documents evidencing communications between

General Mills and Barloworld related to General Mills' post-accident investigations.

| | |
|---|---|
| Dated:  <u>October 6, 2008</u> | <u>/s/ Alyssa L. Rebensdorf</u><br>Jerry W. Blackwell, Minn. Bar #186867<br>Alyssa L. Rebensdorf, Minn. Bar #296478<br>Mark R. Jundt, Minn. Bar # 346767<br>BLACKWELL BURKE P.A.<br>431 South Seventh Street, Suite 2500<br>Minneapolis, MN  55415<br>Tel: (612) 343-3200<br>Fax: (612) 343-3205<br>Blackwell@blackwellburke.com<br>arebensdorf@blackwellburke.com<br>mjundt@blackwellburke.com<br><br>**ATTORNEYS FOR<br>GENERAL MILLS, INC.** |

**THIS DOCUMENT WAS PREPARED IN COMPLIANCE WITH LOCAL RULE 5.1 USING TIMES NEW ROMAN 14 POINT FONT.**

CERTIFICATE OF SERVICE

This is to certify that this Notice of Appearance was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

| | |
|---|---|
| Douglas Campbell Dumont | dcd@warpoe.com |
| Sirce Elliott | selliott@mfllaw.com |
| Lindsay M. Gatling | lgatling@wwhgd.com |
| Sandra Gray | sxg@caseygilson.com |
| Joyce Gist Lewis | jgist@caseygilson.com |
| John Arthur Mozley | amozley@mfllaw.com |
| James M. Poe | jpoe@warpoe.com |
| Michael J. Warshauer | mjw@warpoe.com |
| Robert Edward Casey, Jr. | rec@caseygilson.com |
| Jerry W. Blackwell | Blackwell@blackwellburke.com |
| Corey L. Gordon | cgordon@blackwellburke.com |
| Alyssa L. Rebensdorf | arebensdorf@blackwellburke.com |

/s/Alyssa L. Rebensdorf