## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| DOUG BURCHFIELD, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action File No. |
| | : | 1:07-CV-1263 (TWT) |
| CSX TRANSPORTATION, INC., | : | |
| THE ANDERSONS, INC., | : | |
| | : | |
| Defendants; and | : | |
| | : | |
| THE ANDERSONS, INC., | : | |
| | : | |
| Defendant/Third-party Plaintiff,: | | |
| | : | |
| v. | : | |
| | : | |
| STAR OF THE WEST MILLING | : | |
| COMPANY, | : | |
| | : | |
| Third-party Defendant. | : | |
| _____ | : | |

## DEFENDANT CSX TRANSPORTATION, INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF
## <u>MOTION FOR SUMMARY JUDGMENT</u>

Defendant CSX TRANSPORTATION, INC. (CSXT) moves this Court for

summary judgment in this personal injury case. The three separate and independent

grounds for CSXT's motion are 1) the record contains no admissible evidence from

which a jury could find that Plaintiff set the handbrake on railcar AEX 7136; 2) there

is no evidence that the handbrake on railcar AEX 7136 was inefficient, i.e., incapable of holding the railcar in place; 3) there is no evidence of any causal relationship between any alleged handbrake defect and the accident in which Plaintiff was injured.

It is undisputed that Plaintiff does not recall setting the handbrake and has not identified any person that saw him set the handbrake on AEX 7136 or bring the bell crank into contact with the end sill of the railcar, as required for the handbrake to be in position to "dead pull".  See Plaintiff Doug Burchfield's Response to Defendant CSX Transportation, Inc.'s Second Requests for Admission, Nos. 103, 104.  Although Plaintiff's experts suggest that the AEX 7136 had an "inefficient" handbrake because of the alignment of the bell crank and rigging, they acknowledge that the test of whether a handbrake is efficient is whether it will hold the railcar in place.  Engle Dep., p.79; O'Brien Dep., p. 85.  Plaintiff's experts did not perform any test to determine whether AEX 7136 would roll with its handbrake applied.  Engle Dep., pp. 78-79; O'Brien Dep., p. 86.  The only evidence in this case unequivocally shows that the handbrake on AEX 7136 was used to hold the railcar in place at General Mills for at least five (5) months following the accident, and that when applied, the handbrake provided sufficient force to prevent movement of the subject railcar.  Deposition of Wayne Willis (Andersons 30(B)(6)), pp. 67-71; Nutt Dep. (10/1/08), pp. 92, 151-52. In the absence of any evidence from which a jury could find that Plaintiff brought the

bell crank into contact with the end sill or that the handbrake would not retard movement of railcar AEX 7136 when applied at General Mills, CSXT is entitled to judgment as a matter of law.

## STATEMENT OF FACTS

On or about Friday, June 3, 2005, CSX Transportation, Inc. delivered railcar AEX 7136 to the General Mills cereal processing plant in Covington, Georgia. Jones Dep., p. 128. On Sunday, June 5, 2005, General Mills employees Rodney Turk and Plaintiff Doug Burchfield were assigned to move railcars utilizing a trackmobile (a rail mover which can be used on railroad tracks or on pavement). Turk Dep., pp. 18-19, 21. Plaintiff worked as groundman, and Mr. Turk operated the trackmobile. Turk Dep., p. 47. As described by Mr. Turk, he and the Plaintiff needed to move railcar AEX 7136 to Track 22, but were first required to re-position three cars which were already on that track "To make room for the loaded car [AEX 7136]." Id. at 47-48. Although Mr. Turk admits that from his position in the trackmobile he "would […] have a clear view" of Mr. Burchfield setting the handbrake on AEX 7136, he did not see Plaintiff apply the railcar handbrake. Id. at 123-24. Rather, Mr. Turk assumed that Plaintiff set the handbrake on the north end of the railcar, which did not have a handbrake. Id. at 97-98. Plaintiff does not recall setting the handbrake and has not identified any person that saw him set the handbrake on AEX 7136 or bring the bell

crank into contact with the end sill of the railcar. See Plaintiff Doug Burchfield's Response to Defendant CSX Transportation, Inc.'s Second Requests for Admission, Nos. 103, 104.

After moving AEX 7136 to Track 22, Plaintiff and Mr. Turk moved another car, AEX 7318, down the tracks to a railroad switch near the intersection of General Mills' and CSXT's property. Turk Dep., pp. 48-49. Mr. Turk was still in the trackmobile when he observed that AEX 7136 was rolling towards him down the tracks. Id. at p. 72. Realizing that the trackmobile would be struck by the runaway railcar and that Plaintiff was still on the ground, Mr. Turk yelled for Mr. Burchfield, but was unable to warn him of the impending impact. Turk Dep., pp. 72-73. Mr. Burchfield's legs were amputated as a result of the collision. Burchfield Dep., p. 138. Mr. Burchfield has no recollection of the accident or the events preceding it, but insists that "there's no way that I did not set that handbrake." Burchfield Dep., p. 70-71.

Approximately ten (10) weeks following the accident, on August 24, 2005, Plaintiff's expert David Engle inspected railcar AEX 7136 at General Mills in Covington. Engle Dep., p. 41.When he arrived at the facility, Mr. Engle found that railcar AEX 7136 was being held in place by the handbrake without the use of chocks or chains. Engle Dep., p. 45. Mr. Engle tested brake shoe forces on AEX 7136 using Jim Shoe testing, but did not perform any test to determine whether AEX 7136 was

capable of rolling with its handbrake applied. Engle Dep., pp. 78-79. Mr. Engle has opined that the position of the bell crank on AEX 7136 constituted a defect on the railcar. Engle Dep., p. 55. However, Mr. Engle has does not know and has done no testing to determine whether AEX 7136 could be held in place on the grade at General Mills notwithstanding this purported defect. Engle Dep., p. 114-15.

Plaintiff's other liability expert, Mike O'Brien, inspected the railcar on March 25, 2008. O'Brien Dep., p. 121. Mr. O'Brien has opined that "[w]hen the handbrake on the AEX 7136 failed to function as intended due to the fouling of the bell crank against the end sill, the handbrake system was inefficient." O'Brien Dep., p. 116. Like Mr. Engle, Mr. O'Brien has testified that the test of the handbrake's efficiency is whether the handbrake is capable of holding the car in place or stopping movement of the car, but admits he did no testing to determine whether AEX 7136's handbrake would hold the railcar when applied. O'Brien Dep., pp. 85-86. After fifteen months of discovery in this case, Plaintiff is unable to identify "any person who has seen railcar AEX 7136 roll with its handbrake applied." See Plaintiff Doug Burchfield's Response to Defendant CSX Transportation, Inc.'s Second Requests for Admission, No. 106.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the U.S. Supreme Court held that the movant's burden is "discharged by 'showing'–that is pointing out to the District Court–that there is an absence of evidence to support [an essential element of] the non-moving party's case." The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "After such a showing, unless the non-moving party offers proof sufficient to establish the existence of the essential element, the district court must grant summary judgment to the moving party." *Real Estate Financing v. Resolution Trust Corp.*, 950 F.2d 1540, 1543 (11th Cir. 1992) (*citing Celotex, supra* at 325).

In Georgia, "[i]n order to state a cause of action for negligence it is necessary to establish the essential elements of duty, breach of that duty, and proximate cause which amounts to a legally sufficient causal connection between the conduct alleged and the resulting injury. [Cit.] A defendant who pierces the plaintiff's pleadings by showing that under any theory one essential element is lacking is entitled to summary judgment despite any remaining issues of fact with respect to other essential

elements." *Black v. Georgia Southern & Florida Ry. Co.*, 202 Ga.App. 805, 805, 415 S.E.2d 705 (1992).

## ARGUMENT AND CITATION OF AUTHORITY

### A. The Record is Devoid of Admissible Evidence Indicating that Plaintiff Set the Handbrake on AEX 7136.

As a threshold matter, Plaintiff has failed to present evidence from which a jury could find, without reliance upon speculation, that Plaintiff properly set the handbrake on AEX 7136. The undisputed evidence in this case shows that the handbrake was not applied when the car was inspected immediately following the accident. Jeffords Dep., pp. 17-18, 132.[1] Plaintiff has no memory of setting the handbrake on AEX 7136 on the day of the accident, but claims that he would have set the handbrake as a matter of "practice." Burchfield Dep., pp. 70-71. However, there is no evidence in the record that setting handbrakes was a "habit" of Plaintiff's for purposes of Federal Rule of Evidence 406.

In discussing Rule 406, the Eleventh Circuit has instructed that "[e]vidence of habit or routine is to be weighed and considered by the trier of fact in the same

---

[1] Lawrence Jeffords was a CSXT roadmaster at the time of the accident and is currently employed as an inspector for the Federal Railway Administration (FRA). Jeffords Dep., p. 20. Mr. Jeffords arrived on the scene before emergency medical personnel had departed and was one of the first to inspect the equipment involved in the collision. Jeffords Dep., pp. 68-69.

438552-1
CSXATL-CX1382

manner as any other type of direct or circumstantial evidence." *Loughan v. Firestone Tire & Rubber Company*, 749 F.2d 1519, 1524 (11th Cir. 1985). The burden of establishing the habitual nature of the evidence rests on the proponent of the evidence, and "does not hinge on the ability of the party seeking exclusion of the evidence to disprove the habitual character of the evidence." *Weil v. Seltzer*, 873 F.2d 1453, 1461 (D.C. Cir.1989).

Because of the potential for "improper inferences" or "unfair […] prejudice" as to the persons against whom it is offered, "habit or pattern of conduct is never to be lightly established, and evidence of example, for purpose of establishing such habit, is to be carefully scrutinized before admission." *Loughan*, supra at 1524. In light of this high standard for admissibility of habit evidence,

> It is only when examples offered to establish such pattern of conduct or habit are "numerous enough to base an inference of systematic conduct," that examples are admissible. Wilson [v. Volkswagen of America, Inc., 561 F.2d 494, 511 (4th Cir.1977) […] (citing Strauss v. Douglas Aircraft Co., 404 F.2d 1152, 1158 (2d Cir.1968)). See also 2 Wigmore, Evidence § 376 (3rd ed. 1940). The key criteria are 'adequacy of sampling and uniformity of response or ratio of reactions to situations.'

*Id.*

In *Loughan*, the Court found that a defendant adequately established the plaintiff's habit for drinking on the job by pointing to testimony from plaintiff and at least two other persons as to multiple examples over a period of five years which

"demonstrat[ed] a uniform pattern of behavior." *Id.  But see Reyes v. Missouri Pacific Railroad Company*, 589 F.2d 791 (5th Cir. 1979) ("Four prior convictions for public intoxication spanning three and one-half year period were of insufficient regularity to rise to level of 'habit' evidence").  By contrast here, the record is devoid of even one specific example of Doug Burchfield setting handbrakes:

> Q.    And have you had any discussions, that you can recall, with anybody about whether you had set the handbrake on that car that got away?
>
> A.    I've had discussions with my wife about it. Nothing -- not that specifically, just about in general, you know.  And I told her there's no way that I did not set that handbrake.
>
> Q.    And why is that?
>
> A.    Because it wasn't a practice of mine.
>
> Q.    What wasn't a practice of yours?
>
> A.    To leave a car, you know.  Just park a car, set the handbrake. That's what we were taught.
>
> Q.    Do you know if anyone saw you setting the handbrake on that car?
>
> A.    No.
>
> Q.    Has anybody told you whether or not they saw you set the handbrake on the car?
>
> A.    No one has told me.

Burchfield Dep., pp. 70-71.

Plaintiff's testimony that he was trained to set handbrakes and believes he would have set the handbrake on AEX 7136 is distinguishable from the kind of "semi-automatic" or "uniform" response which typifies admissible habit evidence. *Loughan, supra* at 1524. See also Habit of Person, 12 Fed. Proc., L. Ed. § 33:242 ("among the factors that have been considered by the courts [in determining whether individual incidents of conduct rise to level of habit] are: (1) regularity; (2) numerosity; and (3) specificity"). Here, in addition to the absence of any evidence of numerosity or specificity with regard to Plaintiff's purported "practice" of setting handbrakes, the undisputed evidence in this case refutes any claim of "regularity" for Plaintiff engaging in this activity. Rodney Turk has testified that he and Plaintiff moved three cars on Track 22 to make room for AEX 7136:

> Q.  Okay. Was there anything on 22 that y'all had to fiddle with first?
>
> A.  There was three cars on 22.
>
> Q.  Okay.
>
> A.  We moved these three cars first, pushed them towards the building -- closer to the building about ten feet or so.
>
> Q.  Why did you need to move the three cars that were on 22 north towards the building?
>
> A.  To make room for the loaded car [AEX 7136] right here.

Turk Dep., pp. 47-48.

Rodney Turk assumed that Mr. Burchfield set the handbrakes on the other three cars they had moved on Track 22. Turk Dep., p. 56. However, the evidence is undisputed that when Lawrence Jeffords arrived at General Mills following the accident on June 5, 2005, he discovered that none of the cars Mr. Burchfield and Mr. Turk had moved on Track 22 immediately prior to the accident had handbrakes applied:

> A.    The only reason I tied a hand brake was, you know, there were all kinds of people mingling around this area down below this steep grade. And, you know, here we've had -- already had one car roll down the -- the area. And I remember the brakes not being on the cut [of railcars] in track 22. And so, you know, after doing 22, I checked the hand brake to make sure that it didn't roll down and run over anybody that was there at the time.

Jeffords Dep., p. 63.

> Q.    Okay. It's my understanding these three cars were sitting up on track 22 after the subject accident; is that correct?
>
> A.    Yes, these were -- these -- this is where these cars were when I got there.
>
> Q.    Okay. Is it your understanding that the car that got away or rolled down the hill was sitting on the same track, just a little bit closer to the mainline, before it rolled down the hill?
>
> A.    That's my belief.

Jeffords Dep., pp. 128-29.

In light of the undisputed testimony establishing that the three other cars Plaintiff moved on the date of his accident also did not have handbrakes applied, Plaintiff cannot show that he had a habit or a routine practice of setting handbrakes for purposes of Fed. R. Evid. 406. Any testimony that Plaintiff "would have" set the handbrake on AEX 7136 is either unfounded speculation or inadmissible character evidence which must be excluded under Federal Rule of Evidence 404 ("Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion").

CSXT anticipates that Plaintiff will also attempt to offer testimony from Rodney Turk that Turk asked if Plaintiff set the handbrake on AEX 7136 and Plaintiff said "yes". Turk Dep., pp. 98-99. Although such a statement is arguably admissible to explain Mr. Turk's conduct in not checking the brakes on AEX 7136 after initially observing the railcar roll (Id.), it is inadmissible hearsay if offered by Plaintiff on summary judgment to prove the truth of the matter asserted, i.e., that Plaintiff did in fact set the handbrake. Fed. R. Evid. 801, 802; *See also Allen v. Suntrust Banks, Inc*., Slip Copy, 2008 WL 4394732, (N.D.Ga., September 24, 2008) ("The general rule is that inadmissible hearsay, an out-of-court statement offered for the truth of the matter asserted and not falling within an exception to the hearsay rule, cannot be considered on a motion for summary judgment.").

In the absence of any admissible evidence from which a jury could affirmatively find that Plaintiff applied the handbrake on AEX 7136, Plaintiff has failed to eliminate the most plausible explanation for the subject accident, and CSXT is entitled to summary judgment on Plaintiff's claims. *Compare Willard v. Bic Corp.*, 788 F.Supp. 1059, 1069-70 (W.D.Mo.1991) (granting summary judgment where "equally plausible causes existed aside from a product defect" and "because the record did not indicate that a product defect was the more reasonable cause of the loss").

**B.      Plaintiff Has Failed To Point To Any Evidence From Which A Jury Can Find That The Handbrake On AEX 7136 Was Inefficient.**

In addition to the absence of evidence from which a jury could find that Plaintiff applied the handbrake on railcar AEX 7136 on the day of the accident, there is no evidence in the record to support Plaintiff's claim that CSXT violated 49 U.S.C.A. § 20302, known as the Safety Appliance Act, by failing to deliver a car with an "efficient handbrake." Plaintiff's experts define an "efficient handbrake" as one which is capable of holding a railcar in place or stopping a moving railcar. Engle Dep., p. 79; O'Brien Dep., p. 85. However, Plaintiff is not aware of any person who has seen AEX 7136 roll with its handbrake applied, and Plaintiff's experts did no tests to determine whether the handbrake was actually capable of holding the car. See

Plaintiff Doug Burchfield's Response to Defendant CSX Transportation, Inc.'s Second Requests for Admission, No. 106; Engle Dep., pp. 78-79; O'Brien Dep., p. 86.

In analyzing the Safety Appliance Act's provision pertaining to handbrakes, "no inference of inefficiency of the brake can be drawn from the mere fact" that a person claims to have set the brake and the car later moved. *Woods v. New York, C. & St. L. R. Co.*, 339 Ill.App. 132, 137, 88 N.E.2d 740 (1949). "It must first be shown that the brake was actually set, with due care and in a normal, natural and usual manner. It must also be shown that the slope of the […] track was such as to cause a spotted car to move or drift toward the main track unless an efficient brake was properly set. The burden of making this proof [i]s upon plaintiff." *Id.* at 137. Here, as discussed in Section A., *infra*, the record is devoid of evidence that "the brake was actually set, with due care and in a normal, natural and usual manner." *Id.* The record reflects that Plaintiff also cannot present any evidence that railcar AEX 7136 would "move or drift" on the tracks at General Mills had its handbrake been set. *Id.*

Plaintiff's experts David Engle and Mike O'Brien both assert that misalignment of the bell crank could interfere with the ability of the handbrake to transfer force to the brake shoes. Engle Dep., pp. 48, 55; O'Brien Dep., p. 36. However, neither of these witnesses has endeavored to determine whether, when the bell crank is touching the end sill, the handbrake is nonetheless efficient, i.e., is already transmitting

438552-1
CSXATL-CX1382

sufficient force to the brake shoes to prevent movement of the railcar on a grade similar to that at General Mills in Covington.

Plaintiff's expert David Engle inspected the subject railcar at the General Mills property on August 24, 2005, approximately ten (10) weeks following Plaintiff's accident. Engle Dep., p. 41. At the time of his inspection, Mr. Engle understood that railcar AEX 7136 was in a "substantially similar condition" to its condition at the time of the subject accident. Engle Dep., pp. 41-42. He also testified that at the time of his inspection, the railcar was being held in place by the handbrake without the use of chocks or chains.[2] Engle Dep., p. 45. Although Mr. Engle opines that the railcar was "defective" because the bell crank could be brought into contact with the end sill when the handbrake was applied (Id., p. 55), he does not know whether this alleged defect rendered the handbrake incapable of holding the railcar:

> Q.    Okay. Can a car with a defect still have a hand brake which holds
>        the car in place?
>
> A.    That's a big question.
>
> Q.    Yes, it is.
>
> A.    Well, I don't know.

---

[2] See also Deposition of Wayne Willis (Andersons 30(B)(6)), pp. 67-71 (noting that at time of Andersons' testing at General Mills on October 19, 2005, fully loaded railcar AEX 7136 was still being held in place without use of chocks and chains).

Engle Dep., pp. 114-15.

Mr. Engle acknowledged that the "Jim Shoe" testing he performed will not assist the trier of fact in determining whether the handbrake on AEX 7136 was capable of holding the car at the General Mills Covington facility, and admitted that he did not perform the testing necessary to make such a determination:

> Q.    …[T]he Jim Shoe testing, it doesn't tell you whether the actual rigging, brake shoes, et cetera, on an individual car will hold the car or not at any given location?
>
> A.    I would say that's true.
>
> Q.    Okay.  How would you determine whether this particular car with its brake rigging and brake shoes and everything, how would you tell whether it will hold the car in place or not?  Is there a way to do that?
>
> A.    I would say that you would have to take this same car in the same condition, at the same place, under the same circumstances, and recreate that.
>
> Q.    Okay.  And if you did all that and the car held in place, would that be an efficient hand brake?
>
> A.    I would say given all those circumstances, yes.
>
> …
>
> Q.    Okay.  Did anybody ask to do that on that day from your group?
>
> A.    No.
>
> Q.    Okay.  You didn't ask to do that?

A.    No.

Engle Dep., pp. 78-79.

Like Mr. Engle, Plaintiff's expert Mike O'Brien also did not perform any test to determine whether the handbrake on AEX 7136 was capable of holding the handbrake in place, but he too acknowledged that the test of a handbrake's efficiency is whether it provides sufficient force to prevent or stop movement of the car:

Q.    Would you agree or disagree that the test of whether a handbrake is efficient or not is whether it will hold the car in place?

A.    If it holds it, it's efficient. Plus, it doesn't commonly come up, but if you read the regs, all of them have a provision that the handbrake must be capable of being safely applied when the car is in motion. And the intent of that is, again, to more than stop it from rolling once it's stopped, but to actually stop it from moving.

Q.    Did you do any test with this railcar car to see if it could be stopped by application of the handbrake that was on it when it was rolling?

A.    There was no means to do that, no.[3]

---

[3] Although Mr. O'Brien asserts that he had no means to perform such a test, his testimony is rebutted by the video which the Court ordered General Mills to produce in response to CSXT's subpoena in this matter. That video shows that the AEX 7136 handbrake is not only capable of holding the railcar in place, but actually provides sufficient force to stop movement of the railcar after the car is allowed to roll. General Mills and Plaintiff have moved to quash the depositions of witnesses who can lay a foundation for the date of the testing shown in the video, but the testimony and circumstantial evidence in this case indicate that the video was made between June 9, 2005 (See letter from General Mills counsel attached hereto as Exhibit A) and the Andersons' testing on October 19, 2005 (Willis Dep., pp. 48, 68-69).

O'Brien Dep., pp. 85-86.

On this record, Plaintiff has completely failed to meet his burden to point to evidence from which a jury could find that the handbrake on railcar AEX 7136 was inefficient.  In the absence of any evidence that CSXT breached its duty to deliver a railcar with an efficient handbrake, Plaintiff's claims against CSXT must be dismissed.

C.    **Plaintiff Has Failed To Present Any Evidence That A Defect In The Handbrake On AEX 7136 Proximately Caused His Injuries.**

Under Georgia law, "[n]o matter how negligent a party may be, if [their] act stands in no causal relation to the injury it is not actionable." *Jonas v. Isuzu Motors Ltd.*, 210 F.Supp.2d 1373 (M.D.Ga. 2002) (*quoting Finney v. Machiz*, 218 Ga.App. 771, 772, 463 S.E.2d 60, 61 (1995).  Federal courts examining the burden of proving proximate cause have uniformly held that "The mere existence of a defect does not prove that the defect was responsible for subsequent injuries". *Crossley by Crossley v. General Motors Corp.*, 33 F.3d 818, 821 (7th Cir.1994) ("if a person intentionally drives a defective Blazer off a cliff, the driver's estate cannot recover against General Motors because the vehicle in which the injuries occurred was defective."); *See also Owen v. General Motors Corp.*, 533 F.3d 913, 923 (8th Cir. 2008) ("The district court was correct in concluding that the record does not present evidence from which a jury could conclude, without engaging in speculation, that the Owens' damages resulted

438552-1
CSXATL-CX1382

from a defect of which GM was aware and failed to warn, or even that circumstantially, the [alleged] defect was the more reasonable cause of their loss."); *Estate of Ratcliffe v. Pradera Realty Co.*, Not Reported in F.Supp.2d, 2008 WL 53115, (S.D.N.Y. 2008) ("Plaintiffs have failed to account for other factors that are equally, if not more, likely to have been the cause of Ms. Ratcliffe's fatal fall. Where, as here, 'the circumstantial evidence presented lends itself equally to several conflicting inferences,' a jury's finding that defective conditions of the Building caused Ms. Ratcliffe's fatal accident would amount to speculation") (cites omitted).

Here, if it is assumed for purposes of summary judgment only that Plaintiff could offer evidence from which a jury could find 1) that Plaintiff actually applied the handbrake on AEX 7136 and 2) that the handbrake on AEX 7136 was defective,[4] Plaintiff has nevertheless failed to meet his burden to show that the alleged defect was the proximate cause of his injuries.  Georgia law requires that

> When a party is relying on inferences [from circumstantial evidence] to prove a point, not only must those inferences tend in some proximate degree to establish the conclusion sought, but [they] must also render less probable all inconsistent conclusions." Id. "In cases of circumstantial evidence a mere inconclusive inference, or, as the English courts express it, a mere scintilla, is not to be regarded as any evidence, so as to require the submission of its sufficiency to the jury." (Citation

---

[4] If the instant case is permitted to proceed to trial, CSXT will vigorously dispute that it was negligent with regard to repair or maintenance of the handbrake on AEX 7136.

438552-1
CSXATL-CX1382

and punctuation omitted.) Allen Kane's Major Dodge, Inc. v. Barnes, 243 Ga. 776, 781, 257 S.E.2d 186 (1979). If the circumstantial evidence raises only a mere conjecture as to the conclusion sought, there can be no recovery. Dawkins v. Doe, 263 Ga.App. 737, 740, 589 S.E.2d 303 (2003).

*Ken Thomas of Georgia, Inc. v. Halim*, 266 Ga.App. 570, 597 S.E.2d 615 (2004).

In the instant case, there is no evidence to support an inference that a defect in AEX 7136's handbrake caused or contributed to Plaintiff's accident. Plaintiff's expert David Engle admits that when he tested the railcar on August 24, 2005, the brake shoes pressed up against the wheels if the handbrake was applied:

> Q.   Okay.  On page 13 [of Engle's expert report (docket no. 172)], you applied the hand brake and you were able -- indicate you were able to pry the brake shoes away from the wheels and that only wheel L1 had any substantial force holding the brake shoe.  Was indicative of an asymmetry in the brakes.  Is --  Did you expect an asymmetry in this type of brake system?
>
> A.   That is common on those type brakes.
>
> Q.   Okay.  Is that considered a defect?
>
> A.   I would say no.

Engle Dep., p. 67.

> Q.   Okay.  How much force do you have to use to attempt to pry away the brake shoes?
>
> A.   I don't know what that force would be.
>
> Q.   Okay.  How many brake shoes have to not be able to be pulled away for that car to stay in place?

438552-1
CSXATL-CX1382

A.    I would say that would depend on the car.

Engle Dep., p. 149.

Plaintiff's expert Mike O'Brien is not critical of any individual component of the handbrake system, but of the way those components functioned together to bring the bell crank in proximity to the railcar end sill.  See O'Brien Dep., pp. 67, 95.  Mr. O'Brien has acknowledged that once the shoes are against the wheels, the position of the bell crank "is not going to reduce the pressure that's been placed … onto the shoes", because "[w]hatever is there is there."  O'Brien Dep., p. 65.

Visual inspection by the Andersons' Wayne Willis on October 19, 2005, confirmed David Engle's finding that the brake shoes of AEX 7136 would apply to the railcar's wheels *before* the bell crank came into contact with the end sill of the railcar:

Q.    Did you check to make sure they [the brake shoes] were making contact with the wheels?

A.    That's correct.  That's what --

Q.    How did you do that?  Visually?

A.    Visual inspection of that.

…

Q.    Do you remember looking at the -- looking at the bell crank at that time?

A.    Yes.

438552-1
CSXATL-CX1382

Q.    And what do you recall observing?

A.    That the bell crank was intact and operational.

Q.    Was the bell crank touching the bottom of the end sill?

A.    No.

Willis Dep., pp. 50-51.  See also Willis Dep., pp. 58-60.

As testified to by Brian Nutt, who participated in the testing on October 19, 2005, the handbrake on AEX 7136 "produced twice the amount of brake force needed to hold the car in place" on the 1.5% grade present at General Mills.  Nutt Dep. (10/1/08), pp. 92, 151-52.  Notably, according to Mr. Nutt, even after applying twice the amount of braking force necessary to hold AEX 7136, the bell crank still did not contact the end sill of the car:

Q.    When Plaintiff's counsel was questioning you [] about David Engle's photograph, I heard you say that you were not able to get the bell crank in the position that is depicted in those photographs. Should I understand that to mean that you were trying to tie the brake such that you could bring the bell crank up to that position?

A.    No.  We didn't -- We didn't put enough force to -- as hard as we could.  All we did was tie up the hand brake to the amount of force that's recommended by the Double AR [American Association of Railroads (AAR)] to do the testing.

Q.    Okay.  So fair to say that in your opinion, based on what you were observing on October 19th, 2005, in order for someone to get the bell crank into the position that's -- that's indicated in the Engle photographs -- … Exhibit Number 203 and 204, you believe that

the hand brake would have to be tied beyond the AAR recommendations for -- for force on the wheel?

A.    Well, based upon the tests that we did, we put the amount of force on that was necessary.  And if everything is the same in David Engle's situation, he would have to just keep cranking on that -- on that wheel to get it to keep moving.

Q.    Beyond --

A.    Beyond where we did.

Q.    Okay.  Based on your observations of the railcar and the brake system, is it fair to say that in your opinion for the bell crank to be in the position that is depicted in Exhibits 203 and 204, the brake shoes would have to be pressed up against the -- the wheels of the railcar?

A.    I would assume they would be, yeah.

Nutt Dep. (10/1/08), pp. 153-54.  See also Engle Dep., pp. 97-98 (acknowledging that during Plaintiff's March 2008 inspection of railcar, Mr. Engle was only able to bring bell crank into contact with end sill of railcar by having two people pull on handbrake simultaneously).

As previously discussed in Section A., *infra*, Plaintiff has no memory of tying the handbrake on AEX 7136.  Burchfield Dep., pp. 67, 70-71.  He has not identified any person who observed him applying the handbrake, nor any person who observed him bring the bell crank into contact with the end sill of the railcar.  Id., Plaintiff Doug Burchfield's Response to Defendant CSX Transportation, Inc.'s Second Requests for

Admission, Nos. 103, 104. On this record, Plaintiff cannot point to any testimony from which a jury could find that he applied the handbrake with sufficient force to bring the bell crank into contact with the end sill of the railcar. Moreover, any inference that insufficient braking force is generated when the bell crank is touching the end sill is directly refuted by the testimony of Bryan Nutt, Wayne Willis, and Plaintiff's own experts. In the absence of any evidence from which a jury could find that the condition alleged by Plaintiff even occurred, much less that such condition rendered the handbrake on AEX 7136 incapable of providing sufficient braking force to retard movement of the car, Plaintiff has failed to meet his burden to show proximate cause, and CSXT is entitled to summary judgment on all of Plaintiff's claims.

### D.    CSXT Is Entitled To Summary Judgment With Regard To Plaintiff's Claim For Punitive Damages.

Plaintiff alleges in his Complaint that he is entitled to punitive damages based upon a "willful, wanton, and callous disregard for safety" by CSXT. Complaint [1], ¶ 18. However, there is no evidence from which a jury can find that CSXT acted willfully or wantonly with regard to inspection and delivery of railcar AEX 7136. AEX 7136 was tested to and passed AAR standards for an efficient handbrake during a March 23, 2005 single car air brake test. Paredes Dep., pp. 12, 30-31. CSXT also performed a repair on the car on May 30, 2005, five days prior to the subject accident,

and did not take any exception to the position of the bell crank at that time. Josh Winters Dep., p. 109-10.  In the absence of any evidence from which a jury could find that CSXT intentionally or wantonly delivered a railcar with a handbrake incapable of holding the car, CSXT is entitled to summary judgment on Plaintiff's claim for punitive damages.

## CONCLUSION

For all the foregoing reasons, CSXT's Motion for Summary Judgment should be granted, Plaintiff's Complaint dismissed in its entirety, and CSXT awarded its costs in having to defend this action.

Respectfully submitted, this 3rd day of November, 2008.

**CASEY GILSON P.C.**

/s/ Joyce Gist Lewis
**ROBERT E. CASEY, JR.**
Six Concourse Parkway, Suite 2200     Georgia Bar No.:  115605
Atlanta, GA  30328                                    **JOYCE GIST LEWIS**
Telephone:  770/512-0300                    Georgia Bar No.:  296261
Telecopier:  770/512-0070                     *Attorneys for Defendant*
rcasey@caseygilson.com
jlewis@caseygilson.com

25

## <u>CERTIFICATION OF SIZE AND FONT</u>

Counsel for CSX Transportation, Inc. hereby certifies that **DEFENDANT CSX**

**TRANSPORTATION, INC.'S MEMORANDUM OF LAW IN SUPPORT OF**

**MOTION FOR SUMMARY JUDGMENT** has been prepared in Times New Roman

14-point font, in accord with the requirements of Local Rules 5.1B and 7.1D.

This 3rd day of November, 2008.

**CASEY GILSON P.C**.

/s/ Joyce Gist Lewis
**JOYCE GIST LEWIS**
Georgia Bar No. 296261
Attorneys for Defendant
CSX Transportation, Inc.

438552-1
CSXATL-CX1382

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

DOUG BURCHFIELD,                     :
                                     :
        Plaintiff,                   :
                                     :
v.                                   :        Civil Action File No.
                                     :        1:07-CV-1263 (TWT)
CSX TRANSPORTATION, INC.,            :
THE ANDERSONS, INC.,                 :
                                     :
        Defendants; and             :
                                     :
THE ANDERSONS, INC.,                 :
                                     :
        Defendant/Third-party Plaintiff,:
                                     :
v.                                   :
                                     :
STAR OF THE WEST MILLING             :
COMPANY,                             :
                                     :
        Third-party Defendant.       :
_____    :

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on November 3, 2008, the undersigned counsel electronically filed the foregoing **DEFENDANT CSX TRANSPORTATION, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which

will automatically send e-mail notification of such filing to the following attorneys of

record:

J. Arthur Mozley, Esq.
Sirce Elliott, Esq.
Mozley, Finlayson & Loggins LLP
One Premier Plaza, Suite 900
5605 Glenridge Drive
Atlanta, GA 30342
amozley@mfllaw.com
selliott@mfllaw.com

Michael J. Warshauer, Esq.
Douglas C. Dumont, Esq.
Warshauer, Poe & Thornton, P.C.
3350 Riverwood Parkway
Suite 2000
Atlanta, Georgia 30339
mjw@warpoe.com
dcd@warpoe.com

Earl W. Gunn, Esq.
Lindsay Gatling, Esq.
Weinberg, Wheeler, Hudgins, Gunn & Dial LLC
950 E. Paces Ferry Road, Suite 3000
Atlanta, GA 30326
bgunn@wwhgd.com
lgatling@wwhgd.com

This 3rd day of November, 2008.

**CASEY GILSON P.C.**

/ s / Joyce Gist Lewis

Six Concourse Parkway, Suite 2200
Atlanta, GA  30328
Telephone:  770/512-0300
Telecopier:  770/512-0070
jlewis@caseygilson.com

**JOYCE GIST LEWIS**
Georgia Bar No. 296261