## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DOUG BURCHFIELD,    :
           :
  Plaintiff,     :
           :
v.          :  Civil Action File No.
           :  1:07-CV-1263 (TWT)
CSX TRANSPORTATION, INC., :
THE ANDERSONS, INC.,   :
           :
  Defendants; and   :
           :
THE ANDERSONS, INC.,   :
           :
  Defendant/Third-party Plaintiff,:
           :
v.          :
           :
STAR OF THE WEST MILLING :
COMPANY,      :
           :
  Third-party Defendant. :
_____ :

## DEFENDANT CSX TRANSPORTATION, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

In responding to CSXT's Motion for Summary Judgment, Plaintiff erroneously asserts that CSXT's motion rests upon whether a question of fact exists that Plaintiff tied the handbrake on railcar AEX 7136.  As discussed in CSXT's principal brief, the fact that Plaintiff may have touched the handbrake is not sufficient to defeat summary

judgment.  Rather, in order to create a jury question as to negligence and causation, Plaintiff must demonstrate 1) that he applied the handbrake with sufficient force to bring the bell crank into contact with the end sill of the railcar and 2) that the handbrake on AEX 7136 was not capable of holding the railcar when the bell crank was in that position.  Because Plaintiff has failed to come forward with any evidence from which a jury could find, without speculating, that Plaintiff brought the bell crank into contact with the end sill of the railcar or that the subject handbrake was not efficient, CSXT's Motion for Summary Judgment should be granted.

**ARGUMENT AND CITATION OF AUTHORITY**

A.    **Plaintiff's Conclusory Assertion that He Had a "Habit" of Tying Handbrakes Does Not Create an Issue of Fact for Jury Determination.**

The record in this case does not contain any admissible facts from which this Court may conclude that Plaintiff had a habit of properly setting railcar handbrakes, as required to meet the threshold for admission of habit evidence in the Eleventh Circuit. "In this circuit, 'adequacy of sampling and uniformity of response' are controlling considerations in determining when certain behavior may become a habit." *McWhorter v. City of Birmingham*, 906 F.2d 674, (11th Cir. 1990) (*quoting Reyes v. Missouri Railroad Co.*, 589 F.2d 791 (5th Cir.1979) (internal cites omitted).

Here, Plaintiff has submitted an affidavit in response to CSXT's Motion for Summary Judgment, but has neither provided any examples of his purported habit, nor any testimony from others who have witnessed his purported habit.  Instead, Plaintiff relies solely upon his own conclusory assertions as to his past conduct.  See e.g., Plaintiff's Affidavit [352-4], ¶ 2 ("In fact, it was my habit to set handbrakes whenever I left a car unattended"); ¶ 4 ("I set the handbrake whenever I left the car unattended."); ¶ 5 ("It was my practice and routine to set the handbrake on individual railcars every time I left a railcar unattended."); ¶ 6 ("I am not aware of even one time when I did not set the handbrake.").  These general statements do not constitute evidence of habit under Rule 406, and may be properly excluded pursuant to Federal Rule of Evidence 404(a) as self-serving assertions of "good character" by Plaintiff.

Character evidence is distinguished from evidence of habit based on the "specificity of the behavior, its regularity, and the degree to which it is automatic or unreflective."  2 FEDERAL EVIDENCE § 4:46 (3d ed.) (2008).  As noted in CSXT's principal brief, the burden is on Plaintiff as the proponent of the evidence to show that his conduct rises to the level of habit under Rule 406.  *See e.g., Weil v. Seltzer*, 873 F.2d 1453, 1461 (D.C. Cir.1989).  Here, Plaintiff has failed to meet his burden with regard to any of the elements which distinguish inadmissible character evidence from admissible habit evidence.

First, Plaintiff has provided this Court with a sample size of zero; he has not identified a single specific instance in which he has tied a handbrake on any particular style of railcar, much less a railcar configured with a WABCO truck-mounted brake system like that on AEX 7136.  See Beale Dep., p. 45; Willis Dep., p. 33.  Second, there is no evidence in the record that setting handbrakes was such a "regular" or "automatic" activity for Plaintiff that it rose to the level of a habit under Rule 406. Plaintiff estimates that he was required to set a railcar handbrake "one time per week on average" between 2003 and 2005.  Plaintiff's Affidavit, ¶ 4.  Plaintiff also states that he would apply an average of 60 pounds of force each time he applied a handbrake and would have to make a "reasonable effort to insure [sic] that the brake was applied."  Id. ¶ 10.  Thus, by Plaintiff's own admission, setting a railcar handbrake was not a daily activity for him; moreover, because of the amount of physical force and judgment which Plaintiff himself has testified the task required, there is no basis for the Court to find that setting a handbrake was an activity that was so automatic that it could be characterized as non-volitional, or capable of being done without thinking. *Compare Levin v. United States*, 338 F.2d 265 (D.C.Cir.1964), *cert. denied*, 379 U.S. 999, 85 S.Ct. 719, 13 L.Ed.2d 701 (1965)(rejecting as habit defendant's "asserted weekly practice of observing the Orthodox Jewish Sabbath by staying home every Friday night after sundown [because] the very volitional basis of the activity raises

serious questions as to its invariable nature, and hence its probative value" under Rule 406) (internal cites omitted).

In addition, as discussed in CSXT's principal brief, the only evidence in the record directly contradicts Plaintiff's conclusory assertion that it was his "habit" to tie handbrakes. Plaintiff has failed to point to any evidence of record which refutes Lawrence Jeffords' testimony that none of the handbrakes were set on any of the railcars Plaintiff moved on track 22 immediately prior to moving AEX 7136:

> A.    I did not find a car on General Mills' property with a hand brake on. Now, I didn't walk every car on the tracks to the left, which were full. I did walk the ends of them. But the cars in the track to the right [track 22], none of those cars had the hand brakes on.

Jeffords Dep., p. 16.

On this record, Plaintiff's general assertion that he "always" tied handbrakes should be deemed an improper attempt to introduce character evidence rather than evidence of habitual or automatic conduct rising to the level of habit under Rule 406. Because Plaintiff has failed to point to any evidence from which this Court can find that he had a "habit" of tying handbrakes, his testimony does not create a question of fact for purposes of summary judgment, and CSXT's motion should be granted.

**B.    Plaintiff's Purported Statement to Rodney Turk is Inadmissible Hearsay And Does Not Create a Jury Issue as to Whether Plaintiff Properly Applied the Railcar Handbrake**

Plaintiff urges the Court to find that Rodney Turk's testimony that Plaintiff said "yes" when Turk asked if he "set the brakes" creates a jury question as to whether Plaintiff tied the handbrake on AEX 7136.   However, Plaintiff has failed to demonstrate that this statement meets any exception under the Federal Rules of Evidence which would allow the same to be considered on summary judgment.

### 1.    Plaintiff's statement is not a present sense impression.

Plaintiff argues that his purported statement to Mr. Turk constitutes a "present sense impression" under Federal Rule of Evidence 803(1), which provides that "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is an exception to the Rules' general prohibition against the admission of out-of-court statements.  The Court should find this hearsay exception inapplicable because Plaintiff's alleged statement does not "describe" or "explain" any event that Plaintiff was actively observing or perceiving, but is a response to an inarguably ambiguous question by Mr. Turk regarding activities that took place outside of Mr. Turk's view.  *Compare U.S. v. Menendez*, Slip Copy, 2008 WL 3166362, *2 (11th Cir. August 08, 2008) (witness' "statement is not a 'present sense impression' because it does not describe anything that [witness] was perceiving at the time.").

The present sense impression exception expressly requires that the statement sought to be admitted must "describ[e] or explain[] an event or condition."[1] Here, Plaintiff's purported statement to Mr. Turk was not a description or explanation. The word "yes" did not describe the railcar handbrake or explain the process of tying the handbrake. To the contrary, the meaning of Plaintiff's "yes" is entirely dependent on Plaintiff's understanding of Mr. Turk's question. Mr. Turk asked if Plaintiff had "set the brakes," not whether he set the handbrake on AEX 7136. Turk Dep., pp. 63-64. Because AEX 7136 has "air brakes" in addition to a single handbrake (Turk Dep., p. 156), both Mr. Turk's question and Plaintiff's "yes" are inherently ambiguous and could reasonably be interpreted to apply to either braking system on the railcar. Absent some description of the event or condition in the statement itself, there is no way to mitigate the potential for faulty recollection, misperception, or misunderstanding on the part of the witness.[2] To admit this statement, this Court

---

[1] *U.S. v. Parker*, 936 F.2d 950, 954 (7th Cir. 1991), cited by Plaintiff in his Response, is consistent with this requirement of the Rules. In that case, the declarant's statement ("that's the bag you gave me") unambiguously explained an event which immediately preceded the declarant's making of the statement.

[2] The record also contradicts any argument that Plaintiff's statement was made contemporaneously with the alleged activity. Indisputably, both time and activity transpired between Plaintiff first dismounting the trackmobile and his purported "yes" to Mr. Turk, including moments when Plaintiff walked to the other end of the railcar and was out of Mr. Turk's view. See e.g., Turk Dep., pp. 62-64, 97-98, 115. *Compare U.S. v. Manfre*, 368 F.3d 832, 839 (8th Cir. 2004) ("The present-sense-impression

would be required to make precisely the type of assumptions which the prohibition

against hearsay is intended to avoid:

> The hearsay rule, Fed. Rule Evid. 802, is premised on the theory that
> out-of-court statements are subject to particular hazards.  The declarant
> might be lying; he might have misperceived the events which he relates;
> he might have faulty memory; his words might be misunderstood or
> taken out of context by the listener.

*Williamson v. U.S.*, 512 U.S. 594, 598, 114 S.Ct. 2431, 2434 (1994).  Not surprisingly,

Plaintiff has not cited a single case in which a one-word response to a question has

been admitted under the present sense impression exception to the hearsay rule.

> **2.     Plaintiff's statement is not admissible under the residual
> exception to the hearsay rule.**

Plaintiff has also failed to meet his burden to show that his purported statement

may be properly admitted under the residual exception to the hearsay rule set forth in

Federal Rule of Evidence 807.  This Court has previously analyzed the rigorous

standard which must be applied when a party offers hearsay evidence which meets

none of the recognized hearsay exceptions:

> [I]n order to warrant admission under Rule 807, a statement must satisfy
> five requirements: (1) circumstantial guarantees of trustworthiness; (2)
> materiality; (3) probative value; (4) interests of justice; and (5) notice.

---

exception to the hearsay rule is rightfully limited to statements made while a declarant
perceives an event or immediately thereafter, and we decline to expand it to cover a
declarant's relatively recent memories.").

> ….Given the presumption of unreliability, and because it is not a firmly rooted hearsay exception, the residual exception is to be used "only rarely, in truly exceptional circumstances." United States v. Fernandez, 892 F.2d 976, 982 (11th Cir.1989). As such, the proponent of a hearsay statement has the burden of establishing proof of trustworthiness. Id.

*Rowland v. Rowland*, 2005 WL 3096169, *3 (N.D.Ga., Nov. 18, 2005) (Thrash, J.).

Here, Plaintiff has failed to meet his "burden of establishing proof of trustworthiness." *Id.* As discussed in subsection B.1., *infra*, because of the potential for misunderstanding or miscommunication in responding to an ambiguous question, Plaintiff's one-word statement lacks the "circumstantial guarantees of trustworthiness" equivalent to other exceptions to the hearsay rule. Plaintiff's statement also lacks probative value in that Plaintiff's "yes" is meaningless unless the Court is first willing to assume that Plaintiff heard and understood the question posed, and that Plaintiff intended his response to convey that he set the handbrake on AEX 7136 (as opposed to, for example, the handbrake on another car, or the air brakes on AEX 7136).[3]

In addition to the foregoing, this one-word hearsay statement is not "material", because it does not allow a jury could find that Plaintiff applied the handbrake on

---

[3] The interests of justice are also not served by admitting this statement in light of Turk's testimony that he had a "clear view" of the railcar handbrake but did not see Plaintiff set the handbrake (Turk Dep., pp. 123-24); Lawrence Jefford's testimony that AEX 7136 "didn't have a hand brake on it" when he inspected the railcar following the accident (Jeffords Dep., pp. 17-18); and the evidence that no handbrakes were set on any of the cars moved by Plaintiff and Turk that day. Jeffords Dep. pp. 15-16.

AEX 7136 with sufficient force to bring the bell crank into contact with the end sill. Plaintiff's experts are critical of the handbrake in this case because they were able to bring the bell crank "dead against the bottom of the end sill of the car" during their testing.  Engle Dep., p. 46.  See also O'Brien Dep., pp. 90-91.  Here, even if Plaintiff's statement was admitted for the purpose of creating a fact question as to whether Plaintiff manipulated the handbrake on AEX 7136, there would still be no evidence that he applied the brake with the same amount of force as did his litigation experts. As noted in CSXT's principal brief, the Andersons' expert was not able to bring the bell crank to this position even after applying twice the amount of braking force necessary to hold AEX 7136.  Nutt Dep. (10/1/08), pp. 128, 153-54.

Because Plaintiff's out-of-court statement to Rodney Turk may not be admitted under any recognized exception to the hearsay rule, lacks substantial guarantees of trustworthiness, and is not material to the issues to be determined by the jury in this case, the statement should not be considered for the truth of the matter asserted[4] and CSXT's Motion for Summary Judgment should be granted.

---

[4] As discussed in CSXT's principal brief, Plaintiff's assertion that this statement is admissible to explain Rodney Turk's conduct does not permit consideration of the statement for purposes of creating an issue on summary judgment as to whether the handbrake was "set".  *See Allen v. Suntrust Banks, Inc.*, 2008 WL 4394732, *2 (N.D.Ga., September 24, 2008) (*citing Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir.1999).

### C.     Plaintiff Has Not Presented Any Evidence That The Subject Railcar's Handbrake Was Inefficient.

Plaintiff devotes eight (8) pages of his Response to explaining his theory as to why the handbrake on car AEX 7136 was inefficient and why CSXT was negligent. However, all of Plaintiff's arguments require the Court to first assume that Plaintiff properly set the handbrake, that he brought the bell crank into contact with the end sill of the railcar, and that the handbrake in this position was incapable of holding the railcar in place at General Mills.[5]  Under the provisions of the Safety Appliance Act applicable to handbrakes, "the burden of making this proof is upon Plaintiff." *Woods v. New York, C. & St. L. R. Co.*, 339 Ill.App. 132, 137, 88 N.E.2d 740 (1949).  Quite simply, Plaintiff cannot meet his burden with regard to any of these assumptions.

As discussed in CSXT's principal brief and in Section B., *infra*, there is no admissible evidence that Plaintiff actually applied the AEX 7136 handbrake, much less that he applied it with enough force to bring the bell crank to the end sill of the railcar.  Every case cited by Plaintiff in his Response is distinguishable on this basis alone, but Plaintiff has also failed to point to any admissible evidence from which a

---

[5] To briefly address Plaintiff's suggestion that the "emergency air brake" should have held the railcar in place "for hours" (Ptf. Brief, p. 2), the Court should note that this requirement applies only to new railcars.  Cherry Dep., p. 174.  For all other railcars, the Federal Railway Administration (FRA) requires only that air brakes hold

jury could find that the handbrake on AEX 7136 was incapable of holding the railcar.[6]

Plaintiff admits that his expert, Mike O'Brien, "did no testing to determine whether AEX 7136's handbrake would hold the railcar when applied." (Ptf. Resp. Facts, ¶ 20). The deposition testimony of David Engle cited by Plaintiff in response to the summary judgment motion also does not create a question of fact on this issue.  Mr. Engle has testified that his anecdotal experience shows him that a bar can be used to establish that a railcar *will not* move, not that it *will* move:

> A.   We used to have to -- When we pulled cars into the rip track in Knoxville, Tennessee, you could actually take a bar and check the brake shoes.  And as long as you couldn't pry them away you weren't going to move that car.

Engle Dep., p. 148.

When questioned by CSXT's counsel as to whether prying the brakes away from a railcar wheel could be used to show that a particular car *will* move, this witness admitted this was his "assumption", but would not "always … be the case":

---

for "more than three minutes."  Peterson Dep., p. 79.  There is no testimony indicating that the air brakes on AEX 7136 failed to hold for at least three minutes.

[6] Plaintiff's citation to *Richards v. Consolidated Rail Corp.*, 330 F.3d 428, 432 (6th Cir. 2003) for the proposition that he may "rely on the doctrine of res ipsa loquitur to prove [his] FSAA claims" is also misplaced.  As this Court is aware, the res ipsa loquitur doctrine is not applicable where "there is no evidence that the [implement] was in defendant's exclusive, or virtually exclusive, control."  *Nolen v. Tractor Supply Co.*, 2006 WL 3388430 (N.D.Ga., November 21, 2006).  It is undisputed that CSXT is not the owner and did not have control of the railcar at the time of the accident.

Q.      Okay.  If the car is sitting with -- with the brake applied, the brake
        shoes are up against the wheel, you're not doing a Jim Shoe test,
        you don't know the specific force on the brake shoes; if you can
        go out there and pry away the brake shoes, does that mean that
        that brake will not hold that car in place?

A.      I would say that's a safe assumption.

Q.      Okay.  Is that always going to be the case?

A.      Well, I'm not sure I can say always.

Engle Dep., pp. 148-149.

Further, Mr. Engle admits that he did not measure the grade at General Mills and would not know how to account for the slope of the terrain in determining whether a handbrake can hold a railcar:

A.      Well, if -- if a car rolled off, I mean, I can't sit here and tell you
        that I wouldn't consider the grade because I would, but **I don't
        know how to figure whether a car is supposed to sit there or
        not.**

Q.      You don't know the calculation --[] that would consider the grade
        and whether --[] -- or not the brake would have held under load?

A.      Correct.

Engle Dep., p. 171 (emphasis added).

On this record, it remains undisputed that, notwithstanding the alleged defect, unless he applies the handbrake "in the same condition, at the same place, under the same circumstances," Mr. Engle does not know whether a handbrake is capable of

holding a "particular" railcar.  Engle Dep., pp. 78-79, 114-15.  All contrary opinions

by this witness are based upon speculation, improper post-discovery testing, or both.

Because this Court will not admit expert opinions which were not timely disclosed

during discovery, Plaintiff cannot create a question of fact on summary judgment.[7]

### D.    Plaintiff Has Failed to Point to Evidence Which Supports His Claim That CSXT Acted With Conscious Indifference.

Plaintiff has completely failed to point to record evidence from which a jury

could find that CSXT exhibited conscious indifference to consequences with regard to

the subject railcar.  Specifically, Plaintiff points to no record evidence showing that

any CSXT employee observed the bell crank on AEX 7136 in a dead pull position at

any time prior to this accident.  Likewise, Plaintiff has cited no record evidence to

support his assertion that "CSX practice, policy and procedure" with regard to

adjustment of the bell crank "is akin to a policy not to change a tire until it goes flat."

Ptf.'s Brief, FN. 6.  The undisputed evidence in this case shows that railcar AEX 7136

was tested to and passed the AAR requirements for a single car test less than three

months prior to the subject accident.  Paredes Dep., pp. 30-31; Harold Winters Dep.

(CSXT 30(B)(6)), p. 52-53.  Likewise, although Plaintiff criticizes CSXT for reducing

_____

[7] To the extent that Mr. Engle purports to have done testing following the close of
discovery which he claims supports this opinion, CSXT is filing contemporaneously

the number of car inspectors it employed, Plaintiff completely fails to explain how this fact "exhibits indifference to the safety of others" (Ptf. Brief, p. 25) where, as here, it is undisputed that a CSXT car inspector performed a repair on the subject railcar five days prior to the subject accident, and did not take any exception to the position of the bell crank. Josh Winters Dep., p. 109-10. In the absence of any evidence that CSXT caused Plaintiff injury by acting with conscious indifference, CSXT is entitled to summary judgment on the issue of punitive damages.

## CONCLUSION

For all the foregoing reasons, as well as those set forth in CSXT's principal brief and the pleadings and evidence of record in this case, CSXT's Motion for Summary Judgment should be granted and Plaintiff's Complaint dismissed.

Respectfully submitted, this 18th day of December, 2008.

**CASEY GILSON P.C.**

/s/ Joyce Gist Lewis
**ROBERT E. CASEY, JR.**
Six Concourse Parkway, Suite 2200     Georgia Bar No.:  115605
Atlanta, GA  30328                   **JOYCE GIST LEWIS**
Telephone:  770/512-0300             Georgia Bar No.:  296261
Telecopier:  770/512-0070            *Attorneys for Defendant*
rcasey@caseygilson.com
jlewis@caseygilson.com

---

with this Reply a separate Motion to Strike any new opinions in his December 1, 2008 affidavit which were not disclosed by Mr. Engle during discovery.

## <u>CERTIFICATION OF SIZE AND FONT</u>

Counsel for CSX Transportation, Inc. hereby certifies that **DEFENDANT CSX TRANSPORTATION, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** has been prepared in Times New Roman 14-point font, in accord with the requirements of Local Rules 5.1B and 7.1D.

This 18th day of December, 2008.

**CASEY GILSON P.C**.

/s/  Joyce Gist Lewis
**JOYCE GIST LEWIS**
Georgia Bar No. 296261
Attorneys for Defendant
CSX Transportation, Inc.

16

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DOUG BURCHFIELD, | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | :    Civil Action File No. |
| | :    1:07-CV-1263 (TWT) |
| CSX TRANSPORTATION, INC., | : |
| THE ANDERSONS, INC., | : |
| | : |
|     Defendants; and | : |
| | : |
| THE ANDERSONS, INC., | : |
| | : |
|     Defendant/Third-party Plaintiff,: |
| | : |
| v. | : |
| | : |
| STAR OF THE WEST MILLING | : |
| COMPANY, | : |
| | : |
|     Third-party Defendant. | : |
| _____ | : |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on December 18, 2008, the undersigned counsel electronically filed the foregoing **DEFENDANT CSX TRANSPORTATION, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will

automatically send e-mail notification of such filing to the following attorneys of record:

| | |
|---|---|
| J. Arthur Mozley, Esq. | Michael J. Warshauer, Esq. |
| Sirce Elliott, Esq. | Douglas C. Dumont, Esq. |
| Mozley, Finlayson & Loggins LLP | Warshauer, Poe & Thornton, P.C. |
| One Premier Plaza, Suite 900 | 3350 Riverwood Parkway |
| 5605 Glenridge Drive | Suite 2000 |
| Atlanta, GA 30342 | Atlanta, Georgia 30339 |
| amozley@mfllaw.com | mjw@warpoe.com |
| selliott@mfllaw.com | dcd@warpoe.com |

Earl W. Gunn, Esq.
Lindsay Gatling, Esq.
Weinberg, Wheeler, Hudgins, Gunn & Dial LLC
950 E. Paces Ferry Road, Suite 3000
Atlanta, GA 30326
bgunn@wwhgd.com
lgatling@wwhgd.com

This 18th day of December, 2008.

**CASEY GILSON P.C.**

/ s / Joyce Gist Lewis
**JOYCE GIST LEWIS**
Georgia Bar No. 296261

Six Concourse Parkway, Suite 2200
Atlanta, GA 30328
Telephone: 770/512-0300
Telecopier: 770/512-0070
jlewis@caseygilson.com