IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DOUG BURCHFIELD,

    Plaintiff,

      v.

CSX TRANSPORTATION, INC., et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:07-CV-1263-TWT

## ORDER

This is a personal injury action. It is before the Court on the Defendant CSX Transportation's Motion for Summary Judgment [Doc. 314], the Plaintiff's Cross Motion for Partial Summary Judgment [Doc. 322], the Plaintiff's Motions to Strike Notice of Defense [Doc. 316, 334], and the Defendant CSX Transportation's Motions to Strike Expert Affidavits [Doc. 376, 377]. For the reasons set forth below, the Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART; the Plaintiff's Motion for Partial Summary Judgment is GRANTED; the Plaintiff's Motions to Strike Notice of Defense are DENIED as moot; and the Defendant's Motions to Strike Expert Affidavits are DENIED.

## I.  Introduction

The Plaintiff is a former employee of General Mills.  The Defendant CSX delivered a railcar to the General Mills cereal processing plant in Covington, Georgia that struck and seriously injured the Plaintiff at the plant.  On June 3, 2005, CSX delivered a railcar identified as AEX 7136 to the General Mills plant.  The railcar was loaded with grain.  Two days later, the Plaintiff and his coworker, Rodney Turk, were moving railcars at the plant.  Turk, whom the Plaintiff was training how to move railcars (Turk Dep. at 60), was operating what is called a "trackmobile[,] a rail mover which can be used on railroad tracks or on pavement." (Def.'s Mot. for Summ. J., at 3).  The first car that they moved was AEX 7136, which allegedly caused the Plaintiff's injuries.  The railcar was equipped with an air brake and a handbrake.  Turk did not see the Plaintiff set the handbrake.  (Turk Dep. at 123-24).  When Turk pulled the trackmobile away from AEX 7136, he thought that the car moved a bit.  (Turk Dep. at 63).  Concerned because the car was sitting on a slope, Turk then asked the Plaintiff if he had set the handbrake on the railcar.  (Id.)  The Plaintiff replied that he had.  (Id.)  The Plaintiff and Turk then proceeded to work downhill of railcar AEX 7136.  (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 3; Turk Dep. at 66).  Shortly thereafter, Turk saw that railcar AEX 7136 was loose and rolling down the tracks

towards them.  It collided with the trackmobile and another railcar, and all three vehicles ran over the Plaintiff, cutting off his legs.

The Plaintiff has little recollection of the incident.  Looking back, he cannot remember specifically setting the handbrake on the runaway car.  (Burchfield Dep. at 67).  However, he maintains that he is quite sure that he did because he always set the handbrakes on railcars.  (Burchfield Aff. ¶¶ 2, 4).  After the collision, Lawrence Jeffords, a former CSX employee now with the Federal Railroad Administration, checked the handbrakes on the railcars at the General Mills plant.  He noticed that another railcar on track 22 did not have its handbrake fully applied, and he set the handbrake on the most downhill car.  (Jeffords Dep. at 16, 63).  When he inspected AEX 7136, he found that its handbrake "wasn't fully on."  (Id. at 132).  In Jeffords's opinion, the collision was "definitely violent."  (Id. at 18).

The Plaintiff filed suit against the Defendant CSX and the owner of the railcar, The Andersons, Inc.  The Andersons filed a third-party complaint against Star of the West Milling Company, the lessee of the railcar.  The Plaintiff and The Andersons settled in December 2008.  Burchfield's employer, General Mills, is a non-party to this suit.  The Plaintiff and the Defendant CSX now file cross motions for summary judgment and various motions challenging the admission of expert testimony.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III.  Discussion

### A.  Liability

#### 1.  The Plaintiff's Evidence of Habit

First, the Defendant contends that it is entitled to summary judgment because there is no admissible evidence that the Plaintiff actually set the handbrake on railcar AEX 7136.  If the Plaintiff did not set it, any insufficiency of the handbrake would be irrelevant.   The Plaintiff counters that he need not provide testimony that he specifically remembered setting the handbrake or that Turk saw him set the brake; a

jury could find that the Plaintiff set the handbrake out of habit.  Federal Rule of

Evidence 406 provides that:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Fed. R. Evid. 406.  Habit evidence is "highly persuasive" and "highly probative."

Loughan v. Firestone Tire & Rubber Co., 749 F.2d 1519, 1524 (11th Cir. 1985).  For

this reason, courts should exercise caution before finding actions to be habitual;

"habit or pattern of conduct is never to be lightly established, and evidence of

example, for purpose of establishing such habit, is to be carefully scrutinized before

admission."  Id.  The court should ask how many times did the person perform the act,

and was it essentially the same act every time?  Ultimately, a court should remember

that the purpose of Rule 406 is to admit "those kinds of repetitive acts that provide

strong proof of conduct on a specified occasion" while minimizing danger of

prejudice and confusion.  23 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR.,

FEDERAL PRACTICE & PROCEDURE § 5273, at *5 (2008); see also Goldsmith v. Bagby

Elevator Co., Inc., 513 F.3d 1261, 1285 (11th Cir. 2008).

In Loughan, the Eleventh Circuit found that the evidence was sufficient to

establish habitual drinking on the job by a tire mechanic.  The Loughan court

distinguished the case from a previous Fifth Circuit decision which held that four convictions for public intoxication over a four year period were too sporadic to qualify as habit evidence. Loughan, 749 F.2d at 1522 (discussing Reyes v. Missouri Pacific Railroad Co., 589 F.2d 791, 795 (5th Cir. 1979)). In contrast, in Loughan, the court found evidence of the plaintiff's drinking habit where three separate sources depicted more specific habits over a six year period. Id. at 1523. For example, the plaintiff admitted that he carried a cooler of beer in his truck to work regularly, his previous supervisor confirmed that he usually had a cooler and added that he liked to drink in the early morning hours, and his last supervisor fired the plaintiff because of customer complaints about his drinking on the job. Id. The Eleventh Circuit, noting that district courts possessed broad discretion in finding evidence of habit, decided that these accounts of the plaintiff's drinking were "numerous enough to base an inference of systematic conduct." Id. at 1524 (citations omitted).

In support of his claim that setting the handbrake was his habit, the Plaintiff first points to his own testimony. The Plaintiff claims that:

> I've had discussions with my wife about it. Nothing -- not that specifically, just about in general, you know. And I told her there's no way that I did not set that handbrake. . . . [b]ecause it wasn't a practice of mine . . . to leave a car [without setting the handbrake]. Just park a car, set the handbrake. That's what we were taught.

(Burchfield Dep. at 71). In his affidavit, he noted that in 2003, he was trained to set the handbrakes. (Burchfield Aff. ¶ 3). Between his training and the date of the accident, he estimates that he set the handbrake on a railcar about 100 times, or once per week during that span. (Burchfield Aff. ¶ 4). Specifically, he remembers that when he "touched a handbrake wheel to apply the handbrake, I would turn the wheel clockwise until the wheel stopped and then apply reasonable effort to insure that the brake was applied. This would cause the chain beneath the wheel to be tight." (Burchfield Aff. ¶ 7).

The Defendant argues that the proffered evidence is actually character evidence which is inadmissible. "Character and habit are close akin." Loughan, at 1524. Unlike habit, which describes a person's repetitive reaction to a specific situation, character describes a "general trait, such as honesty, temperance, or peacefulness." Id. According to the Defendant, the fact that Jeffords testified that at least two of the three lead cars (usually only one end car is tied down with a handbrake) at the plant had no handbrakes set is inconsistent with any claim of habit. "In light of [Jeffords's] undisputed testimony[, any] testimony that Plaintiff 'would have' set the handbrake on AEX 7136 is either unfounded speculation or inadmissible character evidence." (Def.'s Mot. for Summ. J., at 12). This goes to the weight of the evidence and not its admissibility. Rule 406 states that habit evidence may be uncorroborated. Fed. R.

Evid. 406; see also Okehi v. Security Bank of Bibb County, 199 F.R.D. 388, 391 (M.D. Ga. 2001) (Fitzpatrick, Ch. J.) (habit and standard practice of witness established solely by her own testimony). The Plaintiff has stated that he applied handbrakes over 100 times in a two-year span and described in detail how he applied handbrakes. His claim of setting the brake is more squarely a habit than a trait of character, and the specificity in his affidavit of setting the brake surpasses the generalized nature of character evidence.

Ultimately, habit evidence is to be "weighed and considered by the trier of fact in the same manner as any other type of direct or circumstantial evidence." Loughan, 749 F.2d at 1523. Here, there is certainly conflicting evidence. Jeffords's survey of the General Mills tracks finding handbrakes that were not set fully must be weighed against the Plaintiff's detailed description of how he set brakes as a matter of course. Turk's statement that he did not see the Plaintiff set the handbrake must be weighed against his observations that he was in training at the time, and he may have been distracted by generally getting acquainted with the trackmobile. (See generally Turk Dep. at 61). These issues must be decided by the jury; the presence of this conflicting testimony only goes to the weight of the evidence and does not make habit evidence inadmissible. Id.

2. The Plaintiff's Evidence of Present Sense Impression

By finding the Plaintiff's proposed habit evidence to be admissible, the Plaintiff has presented enough evidence to survive summary judgment on grounds that he did not set the handbrake. Nevertheless, it is necessary to consider another piece of the Plaintiff's proposed evidence which could be probative at trial. The Plaintiff argues that the dialogue between the Plaintiff and Turk moments before the accident should be admissible under the present sense impression exception to the hearsay rule. Under Rule 803(1) of the Federal Rules of Evidence, "a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is not excluded as hearsay. Fed. R. Evid. 803(1).

In this case, Turk testified that after he dropped off the "runaway car," he was concerned that it moved on the track. (Turk Dep. at 63). Turk describes the exchange immediately following those events in his deposition.

Q:     And did you inquire or ask Doug about [the runaway car's movement]?
A:     Yes, I did.
Q:     What did you say?
A:     I asked him if he set the brakes on it.
Q:     And what did [the Plaintiff] say?
A:     He said yes.

(Turk Dep. at 63-64). Here, the Plaintiff seeks to characterize the Plaintiff's response of "yes" as a present sense impression.

The Plaintiff argues that the admissibility of the Plaintiff's simple, affirmative response is supported by <u>United States v. Parker</u>, 936 F.2d 950, 954 (7th Cir. 1991). In that case, the government obtained a conviction partly on the strength of statements by an Amtrak "redcap" who stated that a particular bag belonged to the defendant. When a detective asked the redcap if the defendant had any luggage on the train, the redcap pointed to a bag that (unbeknownst to the redcap) was filled with illegal drugs. The defendant denied that it was hers, but the redcap reiterated to the defendant that "[t]hat's the bag you gave me." <u>Id.</u> at 954. The Seventh Circuit characterized the time lapse between the defendant telling the redcap to pick up her bag and the redcap's statements to the detective as "extremely short." <u>Id.</u> During the interval, the defendant showed the redcap her bag and took a few steps before brief questioning by the police. Immediately thereafter, she and the police walked about 100 feet to the baggage claim area where the redcap spoke to the detective. <u>Id.</u> The court was satisfied that this duration between event and statement was brief enough to "minimize unreliability due to defective recollection or conscious fabrication." <u>Id.</u> The court found additional reliability in the fact that the redcap did not know the defendant, or that she was being investigated, or what was in her bag. <u>Id.</u> As a result, pointing to the wrong bag would have angered another passenger and possibly endangered the redcap's employment. <u>Id.</u>

That case is, of course, not binding on this Court. But the holding is persuasive to the extent that even a simple response to a question can be a present sense impression as long as the question and response together describe and explain an event with sufficient specificity. The Defendant argues that <u>Parker</u> is inapplicable because the declarant's statement in that case "unambiguously explained an event which immediately preceded the declarant's making of the statement." (Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 7 n.1). In this case, the Plaintiff's one-word response, according to the Defendant, is ambiguous because it "is entirely dependent on Plaintiff's understanding of Mr. Turk's question." (<u>Id.</u>) In the Defendant's view, Turk could have been asking the Plaintiff if he set the air brake (in addition to the handbrake) or Turk could have been referring to an entirely different car. (<u>Id.</u>) The Defendant argues that these ambiguities make this statement one that the hearsay rule was designed to exclude. Indeed, the Supreme Court has stated that the rule is to prevent statements where the declarant "might have misperceived the events which he relates [or] his words might be misunderstood or taken out of context by the listener." <u>Williamson v. United States</u>, 512 U.S. 594, 598 (1994). The Court is mindful of the purposes of the hearsay rule and confident that admission of the statement would not violate those principles. First, it is highly unlikely that the Plaintiff and Turk were contemplating two different cars. The pair had just moved

that particular car, it was uphill from them, and Turk saw it move. Second, although it is possible that Turk was referring to the air brakes on AEX 7136, it is doubtful. (See Turk Dep. at 69) (Turk agreed he was "absolutely positive that Doug Burchfield told [Turk] that he tied that hand brake."). Even at this stage in his training, Turk testified that he knew that handbrakes were to be set on railcars. (Turk Dep. at 121-122). Furthermore, given the Plaintiff's more extensive experience, it is unlikely that he would have assumed that Turk was asking about the air brakes. Because both men testified that they were trained to deploy the handbrakes, and because their safety depended on using that training, any chance of miscommunication concerning the types of brakes is minimized.

Just as the declarant in Parker, additional reliability stems from the Plaintiff's clear incentives to truthfully respond to Turk's alleged question at the time. As Turk described, both men knew they would be working downhill from railcar AEX 7136. (Turk Dep. at 66). Additionally, both men agreed that they were not rushed that morning while moving the railcars. (Turk Dep. at 64; see also Burchfield Dep. at 70) ("Rodney [Turk] needed help that morning. . . . So it wasn't urgent, just whenever someone could get down there."). Finally, the duration between the act and statement is short enough to allow admission of the statement as a present sense impression. The Plaintiff has presented evidence that the interval between the Plaintiff's alleged

act of setting the handbrakes and Turk's question could have been as brief as fifteen to twenty seconds. (See Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 11). As in Parker, where the group walked about 100 feet in addition to briefly questioning the suspect, the interval in this case can be described as "extremely short." Parker, 936 F.2d at 954. Because the Court finds the statement should be admitted as a present sense impression, it need not consider whether the statement should be admitted under the hearsay rule's residual exception or as an explanation for Turk's conduct. The Plaintiff has produced some admissible evidence that he set the handbrake.

### 3. Negligence

The Safety Appliance Act requires a railroad carrier to equip and maintain safety equipment, including efficient handbrakes. 49 U.S.C. § 20302(a). Although the Safety Appliance Act provides a basis for relief in this case, the statute does not provide for a private cause of action for those injured. Crane v. Cedar Rapids & Iowa City Railway Co., 395 U.S. 164, 166 (1969). An injured employee can sue under the Federal Employee Liability Act, provided that the defendant employed the plaintiff. That is not the case here. Therefore, the Plaintiff's case must be brought as a state common law claim. ("The Safety Appliance Act did not create a federal cause of action for [nonemployees]. . . . [T]he nonemployee must look for his remedy to a

commonlaw action in tort."). Id. at 167. In Georgia, a personal injury resulting from a violation of the Safety Appliance Act constitutes negligence per se.

Taking the Defendant's duty a step further, the Plaintiff suggests that liability can be established through the doctrine of *res ipsa loquitur*. Richards v. Consolidated Rail Corp., 330 F.3d 428, 432-33 (6th Cir. 2003) (citing Didinger v. Pennsylvania R. Co., 39 F.2d 798, 799 (6th Cir. 1930). However, the doctrine of *res ipsa* usually applies only when the thing causing the harm was in the exclusive control of the Defendant. See Pennsylvania R. Co. v. Pomeroy, 239 F.2d 435, 446 (D.C. Cir. 1957) (plaintiff must show that the defendant exercised exclusive control over instrumentality). That was not the case here -- the railcar was on the property of and under control of General Mills. *Res ipsa* may not be used to establish liability in this case.

B. Causation

The Plaintiff also must show that the defective handbrake proximately caused his injuries. Under Georgia law, "[c]ausation is generally a matter for the jury." CSX Transportation, Inc. v. McCord, 202 Ga. App. 365, 367 (1991) (examining Safety Appliance Act claim brought under FELA). The Defendant first argues that there is no causation because its own experts refute the Plaintiff's claims that the bell crank fouled the end sill. Even if such a condition existed, the Defendant continues, there

is evidence that it would not cause a failure of the brake system. In support of this argument, the Defendant introduces testimony that the bell crank was not touching the bottom of the end sill at all. (Willis Dep. at 50-51). The Plaintiff has introduced evidence that directly contradicts that claim. (<u>See</u> Engle Rule 26 Report, at 11). Engle's expert report alone also renders null (for summary judgment purposes) the Defendant's argument that no person observed the Plaintiff bring the bell crank into contact with the end sill of the railcar. (Def.'s Mot. for Summ. J., at 23).

For the second prong of its argument, the Defendant introduced expert testimony that the brake on the runaway car "produced twice the amount of brake force needed to hold the car in place on the 1.5% grade present at General Mills." (Def.'s Mot. for Summ. J., at 22). Having provided evidence that the bell crank did not prevent proper application of the braking system, the Defendant claims that there is not enough evidence to "render less probable all inconsistent conclusions." (Def.'s Mot. for Summ. J., at 19) (<u>citing</u> <u>Ken Thomas of Georgia, Inc. v. Halim</u>, 266 Ga. App. 570, 597 (2004)). In this case, the inconsistent conclusion would be that the Plaintiff never set the brake. The problem with the Defendant's argument is that there is substantial evidence that the handbrake was inefficient, regardless of the cause. For example, David Engle posited that the asymmetrical braking system caused brake failure. Whether or not the brake can function with asymmetrical brake systems does

not change the fact that Engle's pry bar and Jim Shoe tests demonstrated inefficiency on AEX 7136.  (Engle Rule 26 Report, at 12-15).  The factfinder must weigh the conflicting evidence of the brake system's efficiency.

C.  Punitive Damages

The Plaintiff seeks punitive damages based upon reckless indifference.  The Defendant argues that there is no evidence that it acted in a matter sufficient to justify punitive damages.  Georgia law provides that:

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

O.C.G.A. § 51-12-5.1(b).  Accordingly, something more than the commission of a tort is required to support a claim for punitive damages.  MDC Blackshear, LLC v. Littell, 273 Ga. 169, 173 (2000); Cullen v. Novak, 201 Ga. App. 459, 460 (1991). Negligence alone, even gross negligence, will not provide the requisite support.  MDC Blackshear, LLC, 273 Ga. at 173.  Moreover, the alleged willful misconduct or aggravating circumstances must relate to the tort that is being sued upon.  Carter v. Spells, 229 Ga. App. 441, 444 (1997) (Banke, J., concurring) (citing McNorrill v. Candler Gen. Hosp., Inc., 188 Ga. App. 636 (1988)).

The Plaintiff argues that the Defendant's reduction in the number of car inspectors is evidence of conscious disregard of safety. See CSX Transportation, Inc. v. Palank, 743 So.2d 556 (Fla. 4th Dist. Ct. App. 1999) (punitive damages appropriate where proper inspection would have revealed defect but defendant cut maintenance of way employee personnel for cost considerations). The Plaintiff introduced evidence that the Defendant reduced its inspection force by roughly a third over the past fifteen years. (Poynter Dep. at 24). The Defendant counters that specific examples of testing leading up to the accident should negate any showing of conscious disregard for safety. According to the Defendant, it tested AEX 7136 and determined that it met Association of American Railroads' requirements for an efficient handbrake in March 2005. Further, the Defendant repaired the car only five days before the Plaintiff's injury. In fact, it claims that none of its employees ever saw evidence of asymmetry in the brake system (such that the bell crank fouled the end sill on the car).

Elsewhere in its opposition brief, the Plaintiff alleges that, on the day of the accident, the Defendant's engineer should have spotted the allegedly defective brake had he been properly trained. According to the Plaintiff, the conductor on the day of the accident who "set off" the car took no exception to a "picture of the handbrake touching the bottom of the end sill." (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J.,

at 22).  The Plaintiff contends that this is an "obvious danger and defect."  (Id.)  To make matters worse, a more experienced (and presumably more properly trained) "brakeman" working for the Defendant would have "bad ordered" AEX 7136.  (Id.)  However, the Plaintiff has neither alleged nor presented evidence that reduction in inspectors contributed to the conductor's alleged sub-par training.  Therefore, the Defendant's inspection of the brakes shortly before the accident distinguishes this case from Palank.  Further, whereas a proper inspection in Palank would have shown a defect, the Plaintiff has not alleged what a proper inspection might be.

Finally, the Plaintiff argues that a defendant's failure to follow federal regulations may result in punitive damages.  See Aldworth Co., Inc. v. England, 286 Ga. App. 1, 4 (2007) (defendant, in contravention of federal trucking regulations, failed to obtain address history for employee).  The Defendant's inspections before the accident differentiate this case from Aldworth.  Although there is evidence that the Defendant failed to satisfy federal regulations by providing an efficient brake, there is no evidence that the Defendant simply ignored this.  In sum, the Plaintiff has not introduced evidence that the Defendant's culpability rises to the level authorizing an award of punitive damages.

D. Motions to Strike Expert Testimony

The Defendant argues that the Plaintiff has presented insufficient evidence to show that the handbrake was inefficient. The Plaintiff counters that claim, in part, by attaching affidavits by his expert witnesses to his brief opposing summary judgment. The Defendant moves to strike these affidavits as untimely to the extent that the affidavits contain new opinions not set forth in the expert reports and amended expert reports. A plaintiff is entitled to submit affidavits in response to a motion for summary judgment. However, Rule 26(a)(2)(B) requires that any expert must submit a written report that contains "a complete statement of all opinions the witness will express and the basis and reason for them." Fed. R. Civ. P. 26(a)(2)(B). A motion to strike is properly made with respect to pleadings. Fed. R. Civ. P. 12(f). An affidavit is not a pleading. Therefore, a motion to strike is not appropriate. The proper procedure is to object to the Court considering any portions of the affidavits that are objectionable. Rather than just deny the Defendant's motions, the Court will consider them as objections to the consideration of the affidavits.

The Plaintiff argues that the opinions expressed in the affidavits are not "new." He argues that he should be able to supplement his experts' reports and depositions because it is impossible to anticipate every single argument that opposing counsel might make. "Unless there is an ability to explain and expand upon and illustrate and

affirm and confirm opinions an expert would simply read his Rule 26 report and sit

down." (Pl.'s Br. in Opp'n to Def.'s Mot. to Strike O'Brien Affidavit, at 4). Further,

depositions "would include [hours more] questioning by the lawyer who retained the

expert to make sure that every question could later be taken out of context, or perhaps

incompletely answered, would be corrected." (Id., at 4-5). It is difficult in a case such

as this to draw a bright line between accommodating the vicissitudes of litigation and

a violation of Rule 26. After careful consideration of the arguments of the parties, the

Court concludes that there has not been a deliberate or flagrant violation of Rule 26.

The Defendant's objections to the consideration of the Plaintiff's affidavits are

overruled.

      E.    Fault of Non-Party General Mills

           1.  Timeliness of Notice of Fault of Non-Party

The Plaintiff argues that the Court should strike the Defendant's Notice of

Defense of Fault of General Mills due to untimeliness. Rule 26(e) requires that a

party making a disclosure or response (to an interrogatory, request for production, or

request for admission) under Rule 26(a) must supplement or correct its disclosure or

response in a timely manner during discovery. Fed. R. Civ. P. 26(e). Corresponding

local rules require a party to timely supplement and amend its initial disclosures.

Reese v. Herbert, 527 F.3d 1253, 1266 n.17 (11th Cir. 2008). This Court has held that

a new claim not disclosed during discovery should be barred.  Jones v. E.R. Snell Contractor, Inc., 333 F. Supp. 2d 1344, 1349 (N.D. Ga. 2004).  Such a "failure is not harmless; allowing the new claim would completely change the nature of the case.  Accordingly, Rule 37(c)(1) requires the exclusion of the evidence."  Id.

The Plaintiff notes that, in its initial disclosures (in which the Defendant was to provide a detailed factual basis for its defenses), the Defendant failed to specify the fault of General Mills at all vis-à-vis the Plaintiff. It only noted there was a potential indemnification claim against General Mills.  (Defendant's Initial Disclosures, ¶ 9). More pointedly, the Plaintiff asked in an interrogatory for the Defendant to "[d]escribe in detail all facts supporting each allegation of any act or omission on the part of Plaintiff or any other person you contend constituted negligence that was a contributing factual cause of the occurrence."  (Br. in Supp. of Pl.'s Mot. for Partial Summ. J., at 8).  The Defendant responded only with an accusation of fault towards the Plaintiff and otherwise general disclaimer of "unknown at this time."  (Id.) According to the Plaintiff, the Defendant never supplemented or amended that interrogatory response to reflect an accusation of fault against General Mills.

For its part, the Defendant notes that Rule 26 only requires a party to supplement disclosures or responses if the information was not otherwise known to the opposing party.  Fed. R. Civ. P. 26(e)(1).  In its deposition notices to nonparties

General Mills and Barloworld, the Defendant stated that it would discuss issues of training and supervision. [Doc. 175 and 176]. On the other hand, the Defendant never formally raised the defense, and never directly answered the pointed questions about General Mills's liability. Such conduct goes against the principles of forthright discovery, and the Court will not allow the Defendant to assert a defense based upon fault on the part of General Mills.[1]

## 2. The Plaintiff's Motion for Partial Summary Judgment

In moving for summary judgment on the issue of General Mills's fault, the Plaintiff first argues that the Defendant has not established the duty owed to the Plaintiff by General Mills. The Defendant notes that there is a statutory duty to provide a safe workplace. O.C.G.A. § 34-2-10 requires employers to:

> Furnish employment which shall be reasonably safe for their employees therein, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such an employment and place of employment safe. . . .

Id. This statutory duty is, however, a general one. A more particularized showing of the standard of care in necessary in Federal Employee Liability Act cases, which are

---

[1]The Court need not consider the Defendant's argument that O.C.G.A. § 51-12-33 -- which provides a safe harbor of 120 days before the trial for a party to assert the fault of nonparty -- controls in this diversity suit. The Court will decline to delve into the interplay of that statute and the federal rules.

closely related to Safety Appliance Act actions as both deal with railroading injuries.[2]

<u>Van Gorder v. Grank Trunk Western Railroad, Inc.</u>, 509 F.3d 265, 270 (6th Cir. 2007)

(plaintiff could not sustain FELA action where no evidence of the industry's "standard

of care to which Grank Trunk failed to conform.").  In an attempt to flesh out General

Mills's standard of care, the Defendant relies on testimony of the corporate

representative of non-party Barloworld, who sold the trackmobile to General Mills.

The Defendant did not present Barloworld's corporate designee, Charlie Jobes, as an

expert witness.  Jobes claimed that Barloworld instructs its clients (including General

Mills) to keep chocks or other wheel blocks (which prevent cars from rolling) on the

trackmobile at all times.  (Jobes Dep. at 63).  Jobes stated that employees should block

the wheels of any car (with chocks) that is not connected to the trackmobile mover.

(Jobes Dep. at 120).  As an additional safety measure, Jobes recommended the use of

a derailer, which would prevent runaway cars from proceeding down a track.  (Jobes

Dep. at 60-61).  There is evidence in the Plaintiff's testimony that could show General

_____

[2]The Defendant does not argue that the Safety Appliance Act applies to General Mills.  Liability attaches under the Safety Appliance Act by failure of an absolute duty "and the carrier is not excused by any showing of care, however assiduous."  <u>Myers v. Reading Co.</u>, 331 U.S. 477, 482 (1947).  Because the Defendant only argued in its opposition brief that General Mills's fault could be established through traditional negligence principles, it has waived any arguments regarding General Mills's potential fault under the Safety Appliance Act.  The Court need not explore the viability of such a theory here.

Mills did not abide by Barloworld's instructions. The Plaintiff testified that he never chocked the wheels of a railcar whenever he was switching cars -- switching refers to placing cars for loading or retrieving empty cars -- and that he would only set the derailers as he and his coworkers were leaving work. (Burchfield Dep. at 80-81; 60-61).

The Plaintiff argues that this evidence of the standard of care exceeds an average jury's common sense understanding. As a general matter, expert testimony may be necessary where the evidence involves such scientific, technical, or other specialized information that is beyond the common understanding of a layperson or average jury. See Federal Rule of Evidence 702; In re Amtrak Sunset Limited Train Crash in Bayou Canot, Alabama, on September 22, 1993, 188 F. Supp. 2d 1341, 1349 (S.D. Ala. 1999). "FELA claims, like common law negligence claims, must be supported by expert testimony where they involve issues (such as train speed and railcar design) beyond the common experience and understanding of the average jury." Id; see also Collins v. Seaboard Coast Line R. Co., 675 F.2d 1185, 1194-95 (11th Cir. 1982) (in non-FELA case, expert testimony necessary to determine appropriate speed at a dangerous railroad crossing). One court opined that an expert is required to opine on such railroad matters as selecting dwarf signals on the track, protecting against signal malfunctions, and in relying on outdated technology, but not

where an employee should have been alerted by unauthorized train movements.
National Railroad Passenger Corp. v. McDavitt, 804 A.2d 275, 285-86 (D.C. 2002).

The Defendant argues that a jury could simply determine the standard of care
by relying on the trackmobile handbook. Expert testimony is unnecessary when there
are "facts and issues of common understanding which jurors are able to comprehend
for themselves." United States v. Fred Smith, 122 F.3d 1355, 1359 (11th Cir. 1997);
see also Worsham v. A.H. Robins Co., 734 F.2d 676, 685 (11th Cir. 1984). In the
Court's view, the facts and issues in this case require a more technical and specialized
knowledge than exists in common understanding. First, although the handbook is
certainly instructive for establishing a duty, it is not necessarily sufficient. See Jones
v. National R.R. Passenger Corp., 942 A.2d 1103, 1108 (D.C. 2008) (in FELA case,
"internal procedures may be admissible as bearing on the standard of care, but expert
testimony was still required to establish that the internal policies embodied the
national standard of care and not a higher, more demanding one.") (citations omitted).
Next, the Plaintiff has asserted a fundamental disagreement with the requirement of
chocks and derailers. The Plaintiff notes that the Defendant's own expert opined that
chocks are "certainly not something you use during normal switching, apart from . .
. skates when you are setting a track and primarily in the yard." (Peterson Dep. at
161). Further, chocks are "generally not" used during switching maneuvers but are

used "usually when . . . the car doesn't have brakes or something, [and] it's being set out because it doesn't have brakes." (Id. at 161-62).[3] Jason Jones, a conductor employed by the Defendant, testified that it was "against our rules" to chock cars during switching operations at the General Mills plant. (Jones Dep. at 107). This conflicting evidence about the standard of care indicates the issue cannot be reduced to whether or not General Mills followed an instruction manual. Cf. Rawson v. Midsouth Rail Corp., 738 So.2d 280, 292 (Miss. App. 1999) (expert testimony needed to establish proper lighting for rail yard). Although this case does not require highly scientific questions found in other FELA cases involving speed and slope, the proper use of safety appliances on the track requires technical and specialized knowledge.

The Defendant argues that Barloworld and its corporate representative Jobes have extensive experience in training non-railroad employees and are well-qualified to opine on General Mills's duty. Because the Defendant never identified Jobes as an expert witness, his qualifications are of no matter. In other motions considered in this Order, the Defendant challenged expert affidavits submitted by the Plaintiff as untimely and inappropriate supplements to expert witness reports. The Defendant

_____

[3]Peterson answered this question in his deposition over an objection that it was outside the scope of his expert report. This objection is immaterial here considering that the Defendant's evidence to the contrary relies on the non-expert testimony of Jobes.

argued that the Plaintiff should not be allowed to "introduce completely new expert opinions" that "were not disclosed in [the witness's] expert reports and were explicitly developed in response to CSXT's Motion for Summary Judgment." (See, e.g., Def.'s Mot. to Strike Engle Aff., at 6-7). As such, the Defendant appreciates the importance of timely notification of experts and their opinions to prevent gamesmanship in moving papers. Failure to introduce expert testimony on the standard of care should prevent the Defendant's assertion of fault against non-party General Mills.

### 3. State Constitutional Challenge to Joint Liability Statute

In seeking to invalidate the Defendant's Notice of Fault of General Mills, the Plaintiff also argued that the Georgia statutory scheme allowing fault of a non-party, O.C.G.A. § 51-12-33, be stricken as unconstitutional. Because the defense of General Mills's fault should not survive summary judgment, the Court need not make such a prediction about the constitutionality of the statute.

### IV. Conclusion

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 314] is GRANTED IN PART and DENIED IN PART; the Plaintiff's Motion for Partial Summary Judgment [Doc. 322] is GRANTED; the Plaintiff's Motions to Strike Notice of Defense [Doc. 316, 334] are DENIED as moot; and the Defendant's Motions to Strike Expert Affidavits [Doc. 376, 377] are DENIED.

SO ORDERED, this 15 day of May, 2009.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge