UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DOUG BURCHFIELD,

     Plaintiff,

v.

CSX TRANSPORTATION, INC.,

     Defendant.

JURY TRIAL DEMANDED


CIVIL ACTION
FILE NO. 1:07-CV-1263

<u>CONSOLIDATED PRETRIAL ORDER</u>

1.

There are no motions or other matters pending for consideration by the court except as noted:

All parties reserve the right to file motions in limine, trial briefs, *Daubert* motions, motions to exclude, motion for supplemental jury questionnaire, and notices to produce up until the time of trial.

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (refer to LR 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take depositions of any persons for the preservation of evidence and for use at trial.

1

The parties are taking the 30(B)(6) deposition of non-party General Mills for purposes of discovery pursuant to this Court's Order. CSXT will also take the depositions of Plaintiff's experts David Engle and Mark Elrod regarding conduct, research, and testing and inspections performed subsequent to their depositions taken during the discovery period. Likewise, Plaintiff will take the deposition of Charles Cherry regarding conduct, research, testing and inspections performed subsequent to his depositions taken during the discovery period. If any of these depositions result in the need for a party's expert(s) to offer additional opinions in rebuttal, that party will make its experts available for deposition. Otherwise, all discovery in this case has been completed.

3.

Unless otherwise noted, the names of the parties as showing in the caption to this Order and the capacity in which they appear are correct and complete, and there is no questions by any party as to the misjoinder or non-joinder of any parties.

At the time this proposed order is filed with the Court, the third action between The Andersons and Star of the West has purportedly been resolved. A stipulation of dismissal has been filed.

4.

Unless otherwise noted, there is no question as to the jurisdiction of the

court; jurisdiction is based upon the following code sections.  (When there are multiple claims, list each claim and its jurisdictional basis separately.)

This Court has jurisdiction pursuant to 28 U.S.C. § 1332

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

**Plaintiff:** Michael J. Warshauer, Warshauer, Poe & Thornton, P.C., 3350 Riverwood Parkway, Suite 2000, Atlanta, Georgia 30339, 404-892-4900

**Defendant:** Robert E. Casey, Jr., Casey Gilson PC, Six Concourse Parkway, 22nd Floor, Atlanta, Georgia 30328, 770-512-0300

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR39.3(B)(2)(b).  State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

Plaintiff is entitled to open and close.

7.

The captioned case shall be tried (X) to a jury or (___) to the court without a jury, or (__) the right to trial by jury is disputed.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e.

that the same jury consider separately issues such as liability and damages.  State briefly the reasons why trial should or should not be bifurcated.

The parties met and discussed this issue in good faith and were not able to agree.

By Plaintiff:

Plaintiff does not believe the trial should be bifurcated as to his claims against CSXT because bifurcation is not supported by better-reasoned and most applicable case law, nor is it supported by the particular facts of this case. Although the decision to bifurcate is in this Court's sound discretion, the burden of proof on a motion to bifurcate is on the party requesting bifurcation, here Defendant CSXT.  Home Elevators, Inc. v. Millar Elevator Svc. Co., 933 F. Supp. 1090, 1091 (N.D. Ga. 1996).  The Advisory Committee Note to Rule 42(b) states that, "separation of issues for trial is not to be routinely ordered."  Thus, "[t]he piecemeal trial of separate issues in a single lawsuit . . . is not to be the usual course." Thorndike v. DaimlerChrysler Corp., 220 F.R.D. 6, 8 (D. Maine 2004) (quoting Wright & Miller, Federal Practice and Procedure, § 2238 (2d Ed. 2003)). Bifurcating this case into separate trials on damages and liability will greatly expand the total time the Court will have to expend in the management of the case.  Furthermore, as Plaintiff will be in the Courtroom, will testify and be observed by the jury, and the facts associated with liability include the fact of the

amputations damages suffered by the Plaintiff, the bifurcation sought by the Defendant will serve no purpose.

Defendant's argument that Plaintiff has listed over 100 damages witnesses is not a reason for bifurcation. Plaintiff is required to list all potential witnesses he may call. Plaintiff listed only witnesses who were identified during the discovery period in response to Defendant's very broad discovery request. Furthermore, Plaintiff will not be calling all of these witnesses; and Defendant's argument fails to consider that this Court will likely place time limits on the parties that will make it virtually impossible to be redundant as contemplated by the Defendant.

By Defendant

CSXT requests that the issues of liability and damages be bifurcated at trial. CSXT does not dispute that the jury will be generally aware of Plaintiff's amputations, however, from Plaintiff's witness list, it appears that Plaintiff has listed between 100-150 witnesses relative to damages issues. The primary issue of liability in this case rests on whether Plaintiff did or did not set the railcar handbrake on AEX 7136. If the jury determines that the accident occurred due to Plaintiff's failure to set the handbrake, the case will be over. The interests of judicial economy are better served by allowing a jury to determine liability prior

to expending days of court time in hearing damages testimony which will not be relevant in the event that the jury finds in Defendant's favor.  *See e.g., Brom v. Bozell, Jacobs, Kenyon & Eckhardt*, 867 F. Supp. 686, 690 (N.D. Ill. 1994) (holding bifurcation appropriate where evidence pertaining to liability was wholly independent of that pertaining to damages and damages testimony was anticipated to be extensive); *See also Beauchamp v. Russell*, 547 F.Supp. 1191, 1200 (N.D.Ga. 1982) (where plaintiff "was severely and permanently injured as a result of an industrial accident occurring at his place of employment[,] [i]n order to avoid potential prejudice, it would be preferable to permit the jury to concentrate on the complicated issue of liability without considering evidence on the extent of … injuries and the damages the plaintiff seeks for these injuries.")

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

10.

Attached hereto as Attachment "B-1" are the general questions which plaintiff wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-2" are the general questions which defendant wishes to be propounded to the jurors on voir dire examination.

Attached hereto as Attachment "B-3", "B-4", etc. are the general questions which the remaining parties, if any, wish to be propounded to the jurors on voir dire examination.

The court, shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any in the standard manner used by this Court. Counsel will be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding the matters in the Court's standard questions.  The counsel will propound general voir dire questions as approved by the Court.

Furthermore, Plaintiff intends to submit a motion for a supplemental jury questionnaire.  The Court will consider whether to grant this motion or follow its usual procedure of allowing only oral pre-approved timed voir dire prior to trial.

11.

The parties' objections to  the others voir dire questions are as follows:

For the Defendant.

Defendant's Objections to Plaintiff's questions are attached hereto as Attachment B-1A.

For the Plaintiff

Plaintiff's Objections to Defendant's questions are attached hereto as Attachment B-2A.

7

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. See Fed.R.Civ.P. 47(b).

Plaintiff requests a sufficient number of strikes, not less than allowed by 28 U.S.C. § 1870, as determined by the Court to reduce the relevant jury panel to the number that will serve as jurors as determined by the Court.

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

None.

14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied

upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information: (a) a brief description of the item claimed, for example, pain and suffering; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

15.

Attached hereto as Attachment "D" is the defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied upon as creating a defense shall be listed under a separate heading. For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed: (a) a brief description of the item claimed; (b) the dollar amount claimed; and (c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties.

No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel.

17.

Plaintiff states that the legal issues to be tried are as follows:

(a.)    Was Defendant negligent?

(b.)    Was Defendant *per se* negligent?

(c.)    Was the Plaintiff contributorily negligent?

(d.)    If Defendant was negligent, or per se negligent, what damages did Defendant's conduct proximately cause?

Defendant CSXT states that the legal issues to be tried are as follows:

1.    Whether the handbrake on railcar AEX 7136 was efficient;

2.    Whether Plaintiff exercised reasonable care for his own safety;

3.    Whether Plaintiff was negligent or contributorily negligent, causing or contributing to his injuries;

4.    Whether former Defendant The Andersons was negligent, causing or contributing to Plaintiff's injuries;

5.    Whether Plaintiff assumed the risk of injury from his conduct;

6.    Whether Plaintiff was injuries were proximately caused by any

negligence of CSXT;

Plaintiff:

In addition to the fact that number 2 and 3 of the Defendant's issues are duplicative, Plaintiff disagrees that The Andersons were negligent or that any purported negligence is a legal issue in this case.  First, there is no admissible allegation or necessary expert testimony by any party that The Andersons' did anything wrong or careless.  As there is no expert testimony creating a question of fact on this issue, it cannot be offered to the jury.  Second, any allegation that conduct by The Andersons led to the Plaintiff's injuries would require admissible expert opinion and there is no admissible expert testimony creating a question of fact on this issue.  Third, to the extent that there is admissible evidence relating to The Andersons' conduct, that evidence, including the testimony of Defendant's own experts, establishes that nothing The Andersons did caused or contributed to this incident.  Lastly, there is no evidence at all that Plaintiff was aware of any risk and thus he cannot have assumed it. Plaintiff reserves the right to file a motion *in limine* on these issues.

Defendant:

Defendant reserves the right to file a motion in limine on the Plaintiff's characterization of the legal issues.

18.

Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the defendant, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness.

All of the other parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.

19.

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the

defendant, and "G3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list.

Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge.

Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered yellow stickers to plaintiff's exhibits, numbered blue stickers to defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits.

Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed

document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity.

Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial.

Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

Plaintiff:

**Charles Adams- May 20, 2008**

7: 7-8, 8:17-9:10, 13:24-14:12, 14:18-24, 15:14-17, 16:20-17:2, 19:25-20:13, 29:14-23, 37:7-12, 38:25-39:7, 39:12-19, 41:25-42:10

**Charles Cherry- June 6, 2008**

7:8-12, 12:12-24, 13:4-10, 16:11-21, 22:22-23:6, 25:3-27:1, 27:16-28:21, 28:25-29:6, 29:10-17, 31:22-32:17, 32:25-33:13, 33:16-34:1, 34:5-9, 34:12-20, 35:1-5, 35:8, 35:12-16,

35:19-36:2, 36:6-15, 36:19-37:14, 37:18-38:1, 38:5-22, 39:3-9, 39:13-24, 40:8-14, 42:14-17, 42:21-43:14, 43:18-44:20, 45:1-9, 45:13-17, 45:21-23, 46:1-10, 46:14-19, 46:24-47:3, 47:7-14, 47:17-18, 47:21-48:3, 48:7-13, 48:17-50:5, 50:9-13, 50:17-18, 50:21-22, 50:25, 51:19-25, 52:24-53:6, 53:10-12, 53:16-54:14, 54:18-23, 55:2-18, 55:22-56:5, 56:9-16, 56:20-22, 56:25, 63:11-14, 63:19-22, 64:1-4, 64:8-11, 64:15, 66:21-24, 67:3, 67:12-22, 68:1-2, 68:5-7, 69:19-25, 70:4, 73:3-6, 73:10, 73:24-74:10, 74:15-76:9, 76:18-77:9, 77:13-78:2, 78:5-9, 78:12, 78:23-79:2, 79:7, 86:22-25, 87:3-6, 93:18-21, 94:18-22, 94:25, 95:17-25, 96:10-14, 97:5-8, 97:11, 108:11-13, 108:17, 111:24-112:1, 112:4-6, 112:9-12, 114:13-115:11, 115:15-22, 118:8-20, 25:25, 120:1-2, 120:5, 120:13-121:3, 121:6-11, 121:21-24, 122:2-8, 135:10-12, 135:16-22, 139:13-20, 139:24-140:3, 140:6-12, 140:16, 141:23-142:18, 142:22-143:5, 143:9-14, 143:18-23, 144:10-18, 144:22-145:1, 145:10-18, 146:20-147:22, 150:1-151:2, 152:16-153:3, 153:7-154:13, 154:19-155:7, 155:11-16, 155:20-24, 156:3-9, 156:13-18, 156:22-157:4, 157:8-12, 157:15-19, 157:22-23, 158:1-7, 158:10-13, 158:17-159:4, 159:8-10, 159:24-160:1, 160:4-7, 160:11-16, 160:21, 168:20-23, 169:3-11, 169:16, 172:9-16, 172:20, 178:4-6, 178:10

## Charles Cherry- October 10, 2008

4:23-5:20, 8:1-4, 8:7-15, 9:10-10:8, 10:17-11:5, 11:14-13:7, 15:5-18, 17:6-23, 18:2-23:15, 24:5-25, 25:4-24, 27:12-21, 28:24-30:10, 30:19-23, 31:2-15, 31:19-23, 32:5-33:14, 34:1-13, 34:24-37:5, 37:14-38:16, 38:19-40:2, 40:8-14, 40:20-41:1, 41:6-14, 41:22-23, 42:2-13, 42:16-18, 43:14-15, 43:20-45:3, 45:6-7, 45:10-12, 45:15-46:19, 46:24-47:15, 47:19-23, 48:2-8, 48:22-49:12, 49:16-50:6, 50:17-21, 50:24-51:7, 51:10-11, 51:14-17, 51:20, 53:4-6, 53:9, 56:4-6, 56:10-57:8, 57:11-19, 57:23-25, 58:3-5, 58:9-14, 58:17-19, 58:22, 59:13-15, 59:18-19, 60:15-20, 61:2-62:20, 63:4-7, 65:12-25, 66:3-4, 66:7-15, 66:24-67:14, 72:14-93:25, 74:6-17, 75:9-20, 76:8-15, 76:18-77:1, 77:5-13, 77:16-78:1, 78:4-7, 78:11-22, 79:1-5, 79:8-17, 79:20-23, 80:2-10, 80:14-25, 81:3-6, 96:4-9, 96:12-21, 97:10-98:2, 107:22-25, 108:25-109:6, 109:9-12

## Gary Beale- August 15, 2008

8:4-8, 8:13-16, 9:11-18, 11:13-12:14, 13:17-14:14, 37:14-38:3, 40:21-25, 41:6-9, 44:1-45:15, 46:23-47:19, 48:14-19, 49:3-8, 51:15-25, 52:17-25, 54:16-24, 58:13-59:7, 59:24-60:9, 64:13-65:8, 73:20-25, 75:1-7, 76:13-25, 80:7-9, 81:4-82:22, 85:15-19, 90:10-13, 99:5-10, 116:11-25, 121:14-23, 123:9-11, 126:16-24, 129:23-24, 134:7-25, 135:21-24, 136:12-24, 137:16-22, 141:5-9, 144:3-6, 144:12-19, 147:2-18, 149:7-19

## Eddie Butler- June 4, 2008

7:8-21, 8:11-9:6, 9:25-10:9, 10:25-11:12, 11:22-24, 12:3-7, 12:10-13:14, 14:9-24, 15:2-5, 17:5-20, 19:1-4, 19:11-20:8, 20:15-19, 21:4-21, 22:3-5, 22:8, 22:22-23:24, 24:12-22, 25:3-19, 34:23-35:6, 36:21-37:7, 37:13-25, 38:3-8, 39:7-40:4, 43:20-22, 44:13-22, 45:1-19, 46:5-47:2, 51:13-23, 53:5-11, 53:14-16, 53:20-22, 56:11-15, 56:18

## Scott Dormire- October 3, 2008

6:3-5, 9:8-24, 10:7-9, 12:18-22, 13:17-22, 15:4-8, 15:18-23, 19:5-12, 23:12-24:15, 25:8-11, 27:6-23, 29:18-30:12, 31:7-20, 32:19-22, 33:20-23, 34:6-8, 36:4-37:6, 55:22-56:5, 59:17-60:7, 61:12-24, 62:1-5, 63:5-13, 64:1-4, 64:11-15, 65:5-7, 65:10-13, 67:19-24, 71:18-24, 73:25-74:3, 74:5-8, 84:7-9, 84:12-16, 92:4-11, 93:2-7, 98:3-9, 99:11-16, 103:18-21, 103:24-104:2, 106:6-107:1, 111:7-17, 112:13-16, 117:5-12, 136:1-137:1

## William A. Gerstmyer- June 5, 2008

5:21-24, 11:4-9, 14:8-24, 15:4-11, 17:1-15, 21:12-17, 22:4-24, 23:8-16, 26:5-22, 28:5-16, 29:23-30:6, 34:6-10, 35:8-22, 37:1-15, 38:3-14, 44:1-45:2, 45:14-24, 47:13-48:15, 49:17-50:3, 52:1-4, 53:2-8, 53:17-20, 54:13-55:4, 56:5-8, 56:18-24, 57:6-18, 59:3-17, 61:7-10, 69:3-7, 71:2-4, 73:22-23, 74:9-75:9, 78:7-8, 78:12-19, 79:13-16, 80:5-8, 81:7-13, 81:19-21, 82:4-7, 82:22-84:22, 88:24-89:4, 89:7-17, 89:19-90:2, 90:4-7, 90:15-90:17, 90:21-91:8, 91:12-13, 91:16-21, 93:13-16, 93:20-94:6, 95:7-96:6, 96:21-23, 97:7-9, 97:12-14, 97:17-21, 97:25-98:1, 98:4, 98:20-21, 99:1-12, 100:7-8, 100:12-14, 101:3-5, 101:8, 102:1-3, 103:1-3, 103:7, 111:3-13, 114:13-19, 115:20-21, 115:24-116:6, 116:9-15, 116:19-117:3, 117:6-10, 117:13-15, 118:10-22, 119:1-7, 119:11, 122:17-20, 122:24-123:3, 124:18-22, 125:25-125:4, 125:15-18, 125:22-126:10, 126:14-24, 127:3-16, 128:13-23, 129:4-9, 130:14-16, 130:20-23, 131:1-3, 135:16-17, 135:20-136:9, 136:11-12, 136:16-21, 137:6-8, 137:12-14, 137:18-20, 137:24-25, 141:5-8, 141:12-17, 142:11-13, 142:16-18, 142:22-23, 143:7-9, 143:13-15, 143:19-24, 144:3, 145:12-13, 145:16-146:1, 146:5-8, 151:7-23, 157:9-24, 258:1-11

## Joe Holton- July 23, 2008

6:22-24, 9:19-24, 10:7-14, 11:5-6, 11:19-12:12, 13:5-12, 16:3-16, 17:17-24, 18:8-11, 24:16-18, 24:23-24, 43:18-44:14, 46:1-3, 46:18-22, 53:4-11, 61:18-25, 62:20-22, 63:21-64:13, 64:25-65:11, 66:2-16, 67:3-68:11, 68:21-69:2, 69:8-70:8, 70:22-71:1, 71:4-71:11, 71:15-23, 72:2-14, 72:25-73:5, 73:17-74:8, 77:5-78:11, 78:16-79:3, 79:22-80:11, 80:22-81:12, 82:5-8, 83:17-84:1, 84:5-24, 87:15-25, 88:13-16, 89:2-22, 90:1-91:15, 91:20-92:3,

92:7-9, 92:12-14, 92:18-21, 92:25-93:21, 95:2-6, 96:15-24, 97:14-98:4, 98:11-20, 98:23-25, 99:6-11, 102:5-7, 105:4-25, 108:15-17, 109:15-23, 110:3-4, 110:7-17, 111:14-24, 112:1, 112:24-114:1, 114:5-6, 114:9-11, 116:13-21, 116:24-117:1, 117:6-11, 117:15-18, 121:5-19, 122:16-25, 123:13-24, 133:3-6, 139:18-25, 143:2-4, 143:9, 143:15-22, 145:11-12, 145:19-23,

## Lawrence Jeffords- May 22, 2008

6:17-23, 7:22-24, 8:2-4, 8:8-13, 8:17-9:17, 9:24-11:10, 11:18-13:4, 18:19-21, 20:5-18, 25:6-26:10, 26:22-24, 27:3-5, 31:13-33:8, 33:14-21, 33:24-34:4, 34:7-11, 34:14-22, 40:22-41:13, 41:16-41:24, 44:16-23, 64:4-17, 66:17-67:15, 68:21-69:2, 71:5-18, 72:2-15, 93:19-95:20, 98:12-21, 98:24-25, 114:13-24, 117:1-11, 120:18-121:4, 121:7, 122:7-15, 123:2-14, 124:3-10, 124:14-20, 125:3-9, 125:24-126:14, 135:20-136:5, 138:10-21, 145:19-146:17, 148:1-7, 149:5-11, 150:7-151:9

## Charlie Jobes- September 16, 2008

7:15-18, 8:12-17, 8:24, 10:8-14, 12:1-3, 13:11-13, 14:9-13, 14:15-25, 15:10-15, 16:2-4, 16:17-24, 17:12-15, 17:19-18:1, 18:14-19, 20:8-17, 23:5-8, 31:20-24, 35:7-15, 37:13-17, 42:7-16, 46:14-17, 49:14-50:7, 52:1-8, 52:15-22, 55:13-24, 56:18-24, 57:1-9, 57:14-58:1, 61:9-24, 62:5-7, 64:6-15, 69:2-11, 74:15-20, 76:9-77:8, 81:13-82:4, 88:8-89:8, 93:3-6, 96:15-97:2, 99:3-9, 103:3-14, 104:3-5, 104:24-105:2, 106:14-18, 107:2-4, 109:1-7, 113:14-25, 114:6-8, 115:15-116:6, 116:8-10, 117:18-25, 119:9-21, 124:2-5, 124:13-16, 126:21-24, 127:1-8, 128:4-6, 130:3-16, 133:7-19, 136:14-25

## Jason Jones- May 20, 2009

7:7-10, 8:5-6, 8:11-9:5, 9:14-16, 10:13-19, 11:3-10, 11:25-12:8, 15:14-16:13, 17:4-19:8, 19:15-17, 21:7-8, 24:9-18, 25:7-10, 27:4-28:3, 29:7-11, 29:21-30:18, 30:21-31:12, 34:12-35:15, 36:4-37:4, 37:10-17, 37:23-25, 38:4-18, 38:22-24, 39:3, 39:13-18, 39:22-40:3, 40:7, 40:23-41:16, 42:9-43:15, 44:10-45:2, 45:15-47:23, 48:2-6, 48:10-16, 48:20-49:4, 49:8-10, 49:14-50:4, 50:7-20, 50:24-51:3, 51:20-52:1, 56:22-25, 57:4-13, 57:17-20, 58:8-10, 58:13-17, 58:20-59:3, 59:7-11, 59:14-17, 60:22-25, 61:4-19, 62:9-25, 63:3-8, 63:11-15, 66:18-67:7, 68:1-11, 77:11-78:21, 78:23-79:4, 80:19-81:11, 83:11-84:13, 84:17-85:9, 86:19-21, 86:25, 87:3-5, 87:8-21, 87:25, 88:20-22, 89:1-10, 89:14-18, 90:3-6, 90:9-15, 90:19-22, 90:25-91:7, 91:10-16, 91:19-94:8, 94:12-95:1, 95:21-24, 97:15-98:8, 98:17-99:3, 100:4-17, 100:25-101:2, 101:17-102:1, 102:8-13, 105:6-17, 106:11-23, 107:9-14, 107:18-25, 110:1-7, 114:23-115:9, 121:25-122:2, 122:6-9, 122:12-22, 122:25-123:2,

123:5-6, 126:1-20, 128:6-13, 132:10-15, 132:18, 132:21-133:1, 136:4-6, 137:13-18, 138:13-18,

**Bryan Nutt- September 11, 2008**

9:23-25, 10:16-22, 10:25-11:18, 12:8-13, 13:8-24, 16:6-16, 16:23-25, 17:3-14, 18:12-19:1, 19:8-19, 26:10-27:18, 57:11-24, 58:2-3, 58:10-22, 60:9-15, 70:1-8, 72:4-10, 81:3-16, 81:21-24, 82:2-6, 91:13-17

**Bryan Nutt-October 1, 2008**

 6:21-22, 9:3-10:24, 11:12-12:7, 13:3-13, 17:20-23, 20:3-7, 21:8-22:25, 24:19-26:15, 27:17-29:8, 30:10-15, 31:4-33:6, 33:14-16, 34:1-12, 34:16-19, 34:22-35:3, 36:13-15, 36:18-25, 37:3-39:7, 39:11-40:3, 40:10-41:19, 47:2-24, 48:1-13, 48:22-49:11, 51:16-52:10, 53:7-21, 54:1-4, 54:8-20, 55:9-10, 55:12-56:12, 57:3-14, 58:1-14, 59:17-21, 59:24-60:10, 62:24-64:3, 64:9-21, 66:7-8, 66:16-67:20, 68:3-11, 68:14-69:6, 73:20-74:14, 74:22-75:20, 75:23-76:3, 76:6-77:1, 77:7-17, 77:21-78:24, 79:16-80:4, 80:8-17, 82:3-4, 82:8-17, 83:12-84:8, 84:11-15, 85:2-8, 85:11-16, 85:19-86:12, 86:16-88:15, 88:18, 89:13-90:19, 91:1-93:14, 93:23-94:22, 96:2-8, 96:14-97:23, 99:2-22, 103:13-104:9, 106:13-107:4, 107:6-108:12, 109:2-4, 109:7-23, 110:1-2, 112:2-19, 112:23-113:15, 114:12-15, 114:19, 115:1-6, 115:24-116:22, 117:1-10, 118:4-13, 118:18-22, 119:1-7, 119:11-120:10, 121:11-14, 122:9-11, 122:19-124:6, 128:20-129:7, 130:20-24, 131:1-18, 131:22-3, 132:6-12, 132:16-18, 133:7-134:6, 134:14-17, 134:22-23, 136:6-10, 136:14-22, 137:13-15, 137:18-21, 139:1-4, 140:7-14, 141:8-15, 142:9-143:5, 155:20-156:1, 157:1-10, 157:19-158:6

**Allen H. Lingenfelter- October 2, 2008- 12:55 pm**

5:18-21, 6:15-7:8, 7:17-20, 8:1-17, 8:20-25, 9:2-14:13, 29:1-15, 30:14-22, 31:1-13, 32:12-15, 57:5-17, 57:23-58:1, 59:13-17

**Allen H. Lingenfelter-October 2, 2008-2:10 pm**

28:18-30:8, 30:18-20, 31:15-34:1

**George Paredes- October 7, 2008**

6:13-18, 6:22-7:7, 8:3-8, 8:21-22, 9:3-10:9, 10:23-11:4, 11:11-15, 12:1-24, 13:11-14:8, 14:15-20, 14:24-17:13, 18:5-6, 18:21-20:13, 21:6-13, 21:23-22:22, 23:11-16, 24:10-12,

25:14-23, 26:2, 26:24-29:8, 29:13-14, 29:16-31:4, 31:11-21, 32:9-33:10, 34:4-35:8, 35:13-36:11, 37:12-21, 39:10-41:21

## Foster J. Peterson- October 14, 2008

4:12-13, 9:9-16, 10:7-11, 10:14-25, 11:3-10, 14:3-15:16, 17:15-22, 18:21-19:9, 19:13-20:17, 22:24-23:5, 23:15-24:7, 24:11-26:3, 26:7-18, 26:21-25, 29:25-30:12, 30:17-20, 30:22-31:8, 32:14-24, 33:14-34:4, 34:19-24, 35:4, 35:15-19, 35:23-36:3, 36:6-9, 37:8-18, 37:21-38:16, 39:1-40:5, 40:10-15, 40:18-22, 45:14-47:10, 48:4-25, 49:8-17, 50:13-24, 52:2-20, 53:4-17, 53:23-55:14, 55:23-57:16, 57:20-59:12, 60:5-14, 62:11-19, 62:25-63:13, 64:15-19, 65:12-18, 65:24-66:7, 66:11-20, 66:24-25, 68:6-69:10, 69:22-70:12, 73:19-75:7, 76:7-77:2, 77:6-78:1, 78:2, 80:18-81:7, 81:12-23, 82:24-85:12, 85:17-86:24, 89:5-7, 89:10-90:22, 93:11-22, 93:25-94:2, 94:6-13, 94:20-24, 95:2-96:12, 96:17-97:3, 97:8-98:18, 98:22-99:20, 99:24-100:17, 100:21-102:4, 102:13-104:14, 106:9-108:2, 108:7-110:1, 111:20-112:20, 113:3-7, 113:10-11, 114:15-116:17, 118:24-119:17, 120:10-24, 121:2-122:20, 128:2-9, 129:11-13, 129:18-130:2, 132:18-24, 133:6-136:15, 138:1-8, 139:16-140:1, 140:4, 140:7-17, 141:5-143:13,  145:1-5, 147:5-149:2, 149:5-151:7, 154:3-6, 154:9-12, 154:15-19, 154:23-155:2, 156:20-157:6, 157:9, 158:4-159:7, 159:10-21, 161:2-11, 161:16-22, 161:25-162:4, 163:3-21, 164:1-9, 164:20-166:7, 168:17-24, 170:12-15, 170:19-20, 172:14-16, 172:19-25. 173:3, 177:3-17, 179:14-21, 179:24-180:11, 183:5-185:8, 185:11-187:23, 188:2-8, 192:14-193:4, 194:6-13, 194:19-195:25, 196:4-198:9, 201:6-14, 202:24-204:13, 205:2-20, 205:24-206:2, 206:5-16, 206:20-207:7, 208:16-21, 208:25-209:2, 209:5-211:24, 212:3-10, 213:22-214:11, 215:7-24, 216:4-12, 216:16, 216:21-218:2, 219:6-8, 219:12-18, 219:21-220:4, 220:9-221:23, 222:1-7, 222:11-17, 225:5-8, 225:12-226:16, 227:8-13, 227:16-228:2, 229:17-230:10, 230:13-16, 230:20

## Greg Poynter- July 23, 2008

5:12-13, 7:22-24, 9:14-23, 10:5-19, 12:3-13:6, 13:17-14:19, 14:25-15:4, 15:10-11, 15:15-23, 16:1-11, 16:15-21, 16:24-17:6, 17:11, 17:19-19:5, 19:9-24, 20:2-6, 20:10-16, 20:20-23, 21:2-5, 21:11, 22:6-16, 22:20-23:1, 23:25-24:6, 24:10-12, 24:15-20, 26:14-27:9, 27:16-24, 28:24-29:3, 29:7, 34:3-18, 40:2-42:6, 44:15-18, 44:22-25, 45:4, 53:6-10, 64:4-19, 64:23, 65:2-4, 65:8-11, 65:15-19, 65:23-25, 66:3-13,

## Greg Rueda- May 28, 2008

6:7-7:24, 8:2-10, 10:5-23, 11:1-20, 12:9-14:19, 14:22-16:7, 16:12-15, 17:5-8, 17:13-21, 17:24-19:10, 19:15-20:6, 20:10-23, 21:2-22:5, 22:11-23:12, 23:16-20, 23:23-27:1, 27:4-10, 27:13-17, 27:20-28:7, 28:10-15, 28:19-24, 29:1-3, 29:6-14, 29:16-30:3, 30:7-21,

30:24-31:6, 31:9-10, 31:13-17, 31:20-32:2, 32:5, 32:8-18, 32:21-33:1, 33:4-13, 33:16-21, 33:24-34:4, 34:7-15, 34:18-35:6,  40:13-24, 41:3-15, 41:17-20, 41:23-42:3, 42:6-19, 42:22-43:1, 43:4-19, 45:19-21, 45:24-46:13, 46:17-20, 46:25-47:8, 47:11-14, 47:17-25, 48:2-5, 50:25-51:20, 54:14-55:20, 56:8-57:16, 58:1-59:5, 59:15-62:21, 63:12-65:3, 66:15-67:6, 76:6-24, 77:7-78:1, 84:16-85:24, 90:19-24, 91:3-14, 91:17-19, 91:22-23, 93:7-10, 94:5-10, 94:13-18

## Horace Taylor- May 20, 2008

7:7-8, 8:13-22, 9:10-19, 11:13-12:25, 13:4-6, 13:9-14, 13:18-14:1, 14:5-8, 14:11-24, 15:23-16:4, 16:21-17:9, 17:13-17, 17:21-18:12, 18:16-17, 18:20-21, 19:1-20:4, 20:8-11, 20:15-24, 21:3-13, 21:20-22:21, 22:25-23:4, 23:7-9, 23:12-16, 23:19-24:4, 24:7-15, 24:19-24, 25:2-10, 25:13-20, 25:23-26:5, 26:9-15, 26:19-27:1, 27:5-12, 27:15-25, 28:4-8, 28:11, 29:21-25, 30:3-7, 30:19-24, 35:11, 35:14-36:3, 36:6-7, 38:6-8, 41:24-42:11, 42:14-20, 42:23-43:2, 43:5, 45:6-9, 45:22-46:22, 47:1, 47:13-25, 48:3-11, 52:3-10, 52:18-21, 52:24, 68:7-21, 68:25, 72:16-24, 74:1-75:10, 84:20-21, 84:25

## Rodney Turk- June 4, 2008

6:17-19, 8:13-11:14, 12:7-13:17, 13:14-18, 14:2-11, 17:4-18:14, 19:7-18, 19:21, 19:25, 20; 2-21:12, 21:15-25, 22:18-23:2, 26:6-29:13, 29:17-32:25, 33:3-35:22, 35:25-37:2, 37:7-10, 37:13-15, 37:25-39:3, 39:5-16, 39:19-40:20, 42:19-43:5, 43:10-21, 43:24-44:23, 45:1-17, 45:19-51:15, 51:18-52:15, 52:21-54:20, 55:1-25, 56:3-59:16, 59:19-64:8, 64:11-22, 65:6-8, 65:11-25, 66:12-21, 66:24-67:15, 67:19-21, 67:25-68:2, 68:5-10, 68:12-20, 69:7-10, 69:12-22, 70:1-3, 70:9-71:12, 71:19-73:17, 74:6-77:7, 78:20-79:6, 80:13-19, 31:1-2, 81:6-9, 89:16-90:12, 92:6-94:6, 98:22-99:5, 99:21-23, 100:5-14, 104:13-17, 104:20-105:9, 115:13-23, 135:23-136:12, 138:21-139:11, 139:25-140:5, 140:25-141:6

## Josh Winters- July 23, 2008

5:14-15, 6:19-25, 7:3-16, 8:2-9, 8:14-21, 8:25, 9:4-10, 10:7-15, 11:4-5, 13:15-22, 14:14-15:22, 16:1-18, 17:9-25, 18:2-19:14, 19:18-20:18, 20:24-21:21, 22:4-9, 22:13-24, 23:1-9, 25:9-26:25, 27:4-14, 27:18-28:14, 28:17-18, 28:22-29:3, 29:6-11, 29:15-30:8, 30:12-24, 31:3-10, 32:1-9, 32:16-34:10, 34:13-15, 34:19-35:8, 35:11-36:13, 36:21-37:9, 37:13-17, 37:20-38:1, 38:6-10, 38:14-40:25, 41:4-10, 41:14-43:9, 43:13-17, 43:21-44:23, 45:21-47:12, 50:14-17, 50:21-53:17, 53:21-54:15, 56:5-18, 56:22, 57:1-8, 57:12-24, 58:3-15, 58:19-59:6, 59:10-14, 59:16, 59:19-22, 60:1-14, 60:18-23, 61:1, 61:5-8, 61:15-25, 62:5-8, 62:12, 62:21-24, 63:2-14, 63:17-20, 63:24-64:10, 64:13-66:9, 67:16-68:2, 68:6-70:13,

73:25-74:5, 89:12-90:15, 90:20-91:12, 91:16-92:3, 92:7-8, 92:11-14, 92:18-93:21, 105:7-12, 105:20-106:8, 109:15-110:6, 110:11, 116:15-17, 116:21-23, 119:8-21, 120:1-122:12, 122:16, 122:21-25, 123:9-12, 123:15-124:14, 124:21-125:8

Plaintiff reserves the right to modify and/or withdraw portions of these designations, or entire witnesses, pending a ruling from this Court on various issues including training and CSX's attempt to blame The Andersons, the admission of the Gary Wolf recreation video, and/or any rulings with regard to training and the standard of care (i.e., use of chocks, chains and derails). In other words, just because the Plaintiff has designated a witness or a portion of a witness's testimony is not meant to imply that Plaintiff believes that the designated testimony is relevant to the issues that should be tried. Subject to this reservation, Plaintiff designates the following:

Defendant:

1.  Barloworld 30(B)(6) (Dave Hilfiger), pp. 6:12-13:6, 14:8-21:23, 23:14-24:2.

2.  Barloworld 30(B)(6) (Charlie Jobes), pp. 7:15- 24:18, 25:9-15, 26:11-28:24, 29:20-39:4, 39:23-47:22, 49:2-58:14, 58:24-64:10, 68:15-70:11, 72:1-82:6, 86:22-87:23, 88:2-91:24, 92:15-94:9, 94:23-97:2, 101:22-110:5, 114:9-115:14, 119:23-122:11, 125:8-21, 126:21-127:17, 129:20-130:19, 134:25-135:14; 137:10-19.

3.  Scott Dormire, pp. 6:3-5, 8:1-16:3, 16:14-31:14, 37:21-44:15, 51:3-52:11, 53:25-62:15, 63:5-13, 64:1-71:9, 82:4-83:25, 86:2-87:15, 88:7-93:12, 95:16-105:6, 105:19-109:9, 111:18-113:21.

4.  The Andersons 30(B)(6) (Wayne Willis), pp. 8:12 - 18:25, 26:7-28:20, 33:22-39:20, 43:10-44:13, 48:11-54:25, 58:15-60:25, 61:24-64:2, 66:18-70:21, 71:4-72:13, 75:18-77:6, 78:22-79:9.

5.  The Andersons 30(B)(6) (Chuck Brown), pp. 6:8-17, 58:13-62:7.

6.  The Andersons 30(B)(6) (Gary Beale), pp. 6:25-7:12, 8:4-12:14, 12:24-20:24, 21:16-24:1, 31:17-32:11, 33:23-38:6, 40:15-51:20, 52:17-54:24; 58:13-60:13, 61:1-63:8, 64:13-68:6, 73:20-80:6, 92:4-100:2, 111:12-112:13, 117:11-119:24, 121:14-122:10, 123:9-125:9, 125:19-128:23, 130:9-131:14, 140:11-142:13, 143:24-145:5.

7.  Bryan Nutt (9/11/08), pp. 8:15-13:24, 14:22-15:17, 17:3-32:24, 34:11-46:19, 47:17-61:6, 61:19-81:16, 83:9-85:24.

8.  Bryan Nutt (10/1/08), pp. 37:21-40:3, 42:3-45:6, 47:2-53:19, 54:11-25, 70:7-72:16, 73:6-74:14, 84:20-85:24, 87:9-22, 90:1-93:14, 94:7-95:8, 102:10-105:1, 105:18-106:13, 107:9-110:14, 120:11 - 121:1, 129-130:24, 132:19-134:13, 136:23-138:21, 150:4-155:5.

9.  George Paredes, pp. 6:13-17:6, 19:10-25:19, 26:4-26:14, 27:7-28:8, 30:6-37:21, 38:21-41:4.

10.  Greg Rueda, pp. 7:7-8:10, 9:17-14:15, 19:1-22:5, 24:7-26:7, 27:14-28:4, 35:7-36:6, 37:17-40:12, 49:15-55:19, 56:6-14, 60:8-61:15, 63:7-65:22, 66:10-68:8, 70:21-72:5, 81:15-82:21, 83:8-86:11, 89:12-90:13.

11.  David Engle, pp. 65:14-67:22, 77:24-79:19, 97:4-98:5, 111:4-17, 111:23-112:7, 113:10-17, 114:13-115:2, 214:5-217:8.

12.  Michael O'Brien, pp. 138:21-139:8, 139:19-141:6.

Any objections to the depositions of the foregoing persons or to any

questions or answers in the depositions shall be filed in writing no later than the

day the case is first scheduled for trial.  Objections not perfected in this manner will be deemed waived or abandoned.  All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

The parties may take additional depositions for use at trial prior to trial.

## 21.

Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendant, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

The parties may submit a trial brief discussing applicable statutes and case law at least ten (10) days prior to the time of trial of this case, and may also submit motions in limine at that time.

## 22.

In the event this is a case designated for trial to the court with a jury, requests for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not

timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury.

Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

Plaintiff seeks a special verdict attached here at Attachment "I". However, Plaintiff may modify this proposal based on rulings of this Court if any such rulings affect the allocation of fault or damages.

CSXT desires the case to be submitted to the jury upon a general verdict.

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.

The customary time allotted appears to be sufficient.

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial.

Not Applicable.

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met in person on August 10, 2009, to discuss in good faith the possibility of settlement of this case. The court (_____) has or (_X_) has not discussed settlement of this case with counsel. It appears at this time that there is:

(_____) A good possibility of settlement.

(_____) Some possibility of settlement.

(_X_) Little possibility of settlement.

(_____) No possibility of settlement.

27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court.

Plaintiff requests a special setting so that the large number of witnesses, including numerous experts, will be able to schedule to attend trial.

28.

The plaintiff estimates that it will require  _5_  days to present its evidence. The defendant estimates that it will require  _2-3_  days to present its evidence. It is estimated that the total trial time is  _7-8_  days.

29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case (_____) submitted by stipulation of the parties or (_____) approved by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no

effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED this 26th day of August, 2009.


/s/Thomas W. Thrash
UNITED STATES DISTRICT JUDGE

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in accordance with the form pretrial order adopted by this court.

Warshauer, Poe & Thornton, P.C.                    Casey Gilson, P.C.


/s/ Michael Warshauer                              /s/ Robert E. Casey, Jr.
Michael J. Warshauer                               Robert E. Casey, Jr.
Georgia Bar No.: 018720                            Georgia Bar No.: 115605
3350 Riverwood Pkwy                                Six Concourse Parkway
Suite 2000                                         22nd Floor
Atlanta, Georgia 30339                             Atlanta, Georgia 30328
404-892-4900                                       770-512-0300
Counsel for Plaintiff                              Counsel for Defendant

**Attachment "A"-**
Questions which the parties request that the court propound to the jurors

The parties shall submit the following questions directed to the legal qualifications of the jurors:

1.      Is any juror related by blood or marriage to Doug Burchfield?

2.      Is any juror related to or employed by attorneys Michael Warshauer,

   Steven Thornton, James M. Poe, Lyle Warshauer, Greg Cusimano, David

   Wenner, or Steven Welsh?

3.      Is any juror related to or employed by attorney Robert Casey, Joyce Gist-

   Lewis or the firm of Casey Gilson?

4.      Are you an officer, director, stockholder, or employee of CSX

   Transportation, Inc.?

**Attachment "B-1"**

General questions which plaintiff wishes to be propounded to the jurors on voir

dire examination

**PLAINTIFFS' GENERAL VOIR DIRE QUESTIONS TO PROSPECTIVE
JURORS**

1.      This case involves an incident in which Plaintiff Doug Burchfield was hit

   and run over by a rail car on June 5, 2005.  The rail car had been delivered

by Defendant CSX Transportation to General Mills in Covington, Georgia where Mr. Burchfield worked.  Have any of you heard about this event when from any source whatsoever?

2.    Before knowing anything more about this case, please tell us if you would be inclined to side with the corporate Defendant railroad in this case, merely because it is a corporation being sued, before you hear any of the evidence?

3.    Some people say that what is good for large corporations like the Defendant railroad is good for America, and what hurts large corporations hurts America, what do you think about these ideas?

4.    In this case, the Plaintiff is seeking damages in excess of $15,000,000.00 from the corporate defendant; is there anyone who thinks corporations should not be liable or responsible for damages its employees cause just as individuals are liable for damages they cause?

5.    The burden of proof in civil cases such as this requires Plaintiff to prove his case by a preponderance of the evidence, or greater weight of the evidence.  Is there anyone where who believes that standard is not correct and that Plaintiff should be held to a higher (or lesser) degree of proof?

6.    In this claim, the Plaintiff will be asking for a verdict of over 15 million dollars to compensate him for the amputation of both of his legs, given the

amount of money involved in this claim,  is their anybody who would have to be absolutely certain before deciding that a verdict of over 15 million dollars is just. Would you require that the proof be beyond a reasonable doubt to return a verdict of this size?

7.  Have you ever been selected as a juror in a civil case, as opposed to a criminal case, where one of the parties had suffered personal injuries and sought compensation from the other party for life changing injuries?  If so, please tell us briefly about that case and how that experience will affect your service in this case in which Plaintiff has suffered permanent injuries.

8.  Have you or has any member of your family ever been involved in a lawsuit either as a plaintiff or defendant in a civil action (excluding a divorce proceeding)?  If so, please tell us about that case and how that experience will affect your service in this case in which Plaintiff asserts that he has permanent injuries.

9.  If you regularly take care of, or visit with children, or grandchildren please tell us about that.

10.  If you are active in your community, for example politics, the Shriners, little league coach or church deacon, please tell us about your activities.

11.  If you have a bumper sticker on your car, please tell us what it says.

12. If you or a member of your family have been a plaintiff or a defendant in a lawsuit, please tell us about that experience.

13. Do you or any member of your family have any legal training? If so, please tell us about that training and about any legally related jobs you or your family member holds.

14. Have you or any member of your family worked in the field of insurance or casualty or bodily injury claims adjusting?

15. Do you or any member of your family have any special training or experience in any of the following areas: accident reconstruction, engineering, metallurgy, human factors, product design? If so, please tell us about that work.

16. Have you or any member of your family ever worked in a position that required investigation of an event causing serious injuries such as in the roll of a police officer, private investigator, an insurance adjuster, or the like? If so, please tell us what this work involves.

17. Do you or any member of your family have any medical training? If so, please describe that training and what work you do with it.

18. Are you or any member of your family now engaged in the field of economics, or vocational training, or job placement?

19.    Have you, or has any member of your family, ever been represented by, had a business relationship, or know any of these attorneys in any way, or know any employees of their law firm:

    A.    Robert Casey or Joyce Lewis-Gist of the law firm Casey Gilson, PC located in Atlanta, Georgia?  The attorneys in that firm include:

        i.    Robert Casey, Jr.; Karen Dunbar; Timothy Gardner; James Gilson; Jonathan Granade; Joyce Lewis; Sean McEvoy; George Shingler; Glenn Tornillo; Christopher Huffines; Amy Pettway; and Markee Squire.

    B.    Michael Warshauer, Lyle Griffin Warshauer, Jim Poe or Douglas Dumont of the law firm Warshauer Poe & Thornton located in Atlanta, Georgia?

20.    Do you or any member of your family work for, or know any present or past employees of, or do business with the Defendant CSX Transportation, Inc. a railroad company headquartered in Jacksonville, Florida with several yards in the Atlanta area – including Tilford Yard and Howell Yard off Marietta, and Hulsey Yard  and CSX Intermodal facility in Cabbagetown, Lawrenceville Auto Distribution center near the Gwinnett Airport and the intermodal yard in Fairburn?  If so, please tell us about that.

21.    Do you or any member of you family work for, or have a close relationship
       with employees of, or do business with any railroad including, but not
       limited to, Norfolk Southern? ?  If so, please tell us about that.

22.    Are any of you, or close friends or family members, railroad hobbyist?

23.    Have you operated a hand brake on a railroad car?  If so, tell us about that
       work and the kind of brakes involved.

24.    Are any of you involved in any way in the movement of railroad cars?  If
       so, please tell us about that.

25.    Has anyone ever personally or observed another worker, operate a
       handbrake on a railcar?  If so, tell us about that experience.

26.    Has anyone ever heard of an event where the hand brake on a railroad car
       was inefficient, or defective, and as a result the car rolled away and caused
       injury or damage of some kind?  If so, tell us about that knowledge.

27.    How many of you have been injured, or nearly injured, or had a family
       member injured or nearly injured, because a corporation and its employees
       failed to comply with Federal safety laws or regulations?  Tell us about
       those experiences.

28.    If a railroad company is required to comply with safety standards, laws
       and regulations relating to the safety of handbrakes on railroad cars, what

would you expect the company to do in order to insure that the handbrakes comply with these standards, laws and regulations?

29.    How many of you have experience with operating heavy machinery that requires manual adjustment of heavy parts?   If so, please describe your experiences.

30.    Do you or any member of your family have any special training or experience doing machine repair or maintenance where it has been necessary to adjust, repair and/or replace brakes on any kind of equipment of vehicle?  If so, please tell us about that work.

31.    How many of you try to think about the consequences of your actions and take steps necessary to prevent your actions from causing harm to others?  Please tell us about how you go about this process.

32.    Do you consider yourself to be more safety conscious than average?  If so, tell us about that.

33.    Are any of you or members of your family in positions at work where you have are required to trust that workers for other companies will be properly trained to protect you from unnecessary dangers?  If so, tell us about that.

34.    Do any of you deliver equipment to businesses and have, as part of that job, the responsibility to insure that the equipment is safe for use and

unlikely to cause injury to the workers at the business to which it is

delivered?

35.    Have any of you ever inspected a piece of machinery, or a vehicle, or

equipment that you were responsible for delivering to others and "bad

ordered" it or otherwise taken it out of service to prevent anyone from

being injured by it?

36.    Do you or any member of your family know anyone, including yourself,

who has worked at General Mills Cereals, in Covington, Georgia or a for

General Mills in any capacity?  If so, please tell us about their job at

General Mills.

37.    I am going to read you a list of witnesses, if you know any of them, please

let us know how you know them:

A. Douglas Burchfield

B. Bridgette Burchfield

C. Charles Adams

D. Gary Beale

E. Richard Beall

F. Chuck Brown

G. Eddie Butler

H. Charles Cherry

I.   Scott Dormire

J.   Michael Fasseszke

K.  William Gerstmyer

L.  Dave Hilfiger

M. Joe Holton

N.  Lawrence Jeffords

O.  Charlie Jobes

P.  Jason Jones

Q.  Allen H. Lingenfelter

R.  Bryan Nutt

S.  George Parades

T.  Foster Peterson

U.  Greg Poynter

V.  Greg Rueda

W. Horace Taylor

X.  Rodney Turk

Y.  Wayne Willis

Z.  Harold Winters

AA.    Josh Winters

BB.    Francis Rushing. Ph.D.

CC.     David Engle, Jr.

DD.     Michael J. O'Brien

EE.     Mark L. Elrod, P.E.,

FF. Kathy W. Willard, M.Ed., CRC, CDMS, CCM, CLCP, VE

38.     Do any of you have any close friends of family members who have suffered the amputation of a limb? If so, please tell us about that injury and your knowledge of how these injuries affect them on a daily basis including prosthetic use, phantom pain, and mobility issues.

39.     Have you ever helped someone put a prosthetic leg on? If so, please tell us about that.

40.     Have you sustained injuries, or had a family member or close friend sustain injuries or be killed as a result of the failure of a company to comply with standards of care, or federal safety laws or regulations?

41.     Regardless what the evidence in this case may be, do you feel, for whatever reason, that monetary damages should not be awarded for physical and mental pain and suffering even if the Defendant's actions caused the Plaintiff to be injured?

42.     What are your general thoughts of feelings about people who bring lawsuits for personal injuries?

43.    In this action, Plaintiff seeks to recover monetary compensation from the Defendant CSX Transportation because he claims that it delivered an unsafe railcar to his employer.  Who feels, for whatever reason, that such cases simply should not be brought?

    A.  Will you be able to award damages for pain and suffering if the evidence shows that the Defendant is liable to the Plaintiff and that the Plaintiff was caused to endure pain and suffering?

    B.  Will you be able to award damages for lost income if the evidence shows that the Defendant is liable to the Plaintiff and that the Plaintiff was caused to lose income?

    C.  Will you be able to award damages for medical expenses if the evidence shows that the Defendant is liable to the Plaintiff and that the Plaintiff was caused to incur medical expenses?

44.    Plaintiff is seeking amount in excess of 15 million dollars for the loss of both of his legs; is there any predetermined amount of money, regardless of the injuries Plaintiff may show to have been caused by the Defendant, beyond which you would not award damages, even if the evidence and the law of the case have led you to find liability against the Defendant railroad?

45.    Do lawsuits like these just end up costing all of us money?  If so, would that affect your ability to return a verdict that fully compensates the Plaintiff for all of his losses if the evidence and the law of the case lead you to find liability against the Defendant railroad?

46.    Does anyone think there are certain kinds of lawsuits that should not be allowed to be brought in court?  If so, tell us about those feelings.

47.    Is anyone familiar with the term "tort reform"?

    A. If so, tell us about your thoughts about tort reform.

    B. If you believe that there should be caps on damages, please tell us what kinds of cases should have capped damages and the amount of the cap that should apply.

    C. Who else believes that damages should be capped at some certain predetermined amount?

    D. Are you a member of, or have you contributed money or time to, any organization that has as one of its goals tort reform or the reformation or elimination of the civil justice or jury system?

48.    From anything which you have read, or which you have heard about jury verdicts, would you have any conscientious objection about returning a substantial verdict if demanded by the facts in this case?

**DEFENDANT'S OBJECTIONS TO**
**PLAINTIFF'S VOIR DIRE QUESTIONS**
**ATTACHMENT B-1A**

Defendant submits the following objections to Plaintiff's voir dire questions.

CSXT objects to all or part of Plaintiff's voir dire question numbers 3, 4, 5, 6, 7, 26, 27, 28, 29, 31, 32, 33, 34, 35, 38, 39, 40, 41, 43, 44, 45, 46, 48 for the reasons set forth below:

3.    CSXT objects to this question as argumentative, inflammatory, and unduly suggestive.

4.    CSXT objects to this question as argumentative, inflammatory, and duplicative of question no. 3.

5.    CSXT objects to Plaintiff purporting to instruct the jury pool regarding the burden of proof and standards for determining liability.  The Court will instruct the jury as to the law to be applied at trial.  CSXT has no objection to Plaintiff inquiring as to whether members of the jury pool will be able to follow the Court's instructions.

6.    CSXT objects to this question as argumentative, inflammatory, and duplicative of question no. 4 insofar as the same references the $15 million dollar recovery sought by Plaintiff.  CSXT further objects to Plaintiff purporting to instruct the jury pool regarding the burden of proof and standards for

determining liability. The Court will instruct the jury as to the law to be applied at trial. CSXT has no objection to Plaintiff inquiring as to whether members of the jury pool will be able to follow the Court's instructions.

7.      CSXT objects to the phrase "life-changing injuries" as argumentative and inflammatory.

26.     CSXT objects to this question as argumentative, inflammatory, and unduly suggestive.

27.     CSXT objects to this question as argumentative, inflammatory, unduly suggestive, and extraneous in light of the Court's order dismissing Plaintiff's claims for punitive damages.

28.     CSXT objects to this question as argumentative, inflammatory, and unduly suggestive. This question is also duplicative of question no. 27.

29.     CSXT objects to the phrase "heavy parts" as argumentative, inflammatory, and extraneous.

31.     CSXT objects to this question as argumentative, inflammatory, and extraneous in light of the Court's order dismissing Plaintiff's claims for punitive damages.

32.     CSXT objects to this question as argumentative, inflammatory, and unduly suggestive.

33.    CSXT objects to this question as argumentative, inflammatory, and unduly suggestive.

34.    CSXT objects to this question as as argumentative, inflammatory, and unduly suggestive.

35.    CSXT objects to this question as argumentative, inflammatory, and unduly suggestive.

38.    CSXT objects to the phrase "on a daily basis including prosthetic use, phantom pain, and mobility issues" as argumentative, inflammatory, and unduly suggestive.

39.    CSXT objects to this question as inflammatory, unduly suggestive, and duplicative of question no. 38.

40.    CSXT objects to this question as argumentative, inflammatory, and duplicative of question no. 27.

41.    CSXT objects to the phrase "even if the Defendant's actions caused the Plaintiff to be injured" as argumentative, unduly suggestive, and extraneous.

43.    CSXT objects to Plaintiff's repeated use of the phrase "the Defendant is liable to the Plaintiff" in the subparts of this question as unduly suggestive and unnecessarily duplicative.

44.  CSXT objects to this question as argumentative, inflammatory, and duplicative of question nos. 4 and 6 insofar as the same references the $15 million

dollar recovery sought by Plaintiff.  CSXT further objects to this question as duplicative  of question no. 43, subparts A, B, and C.

45.    CSXT objects to the phrase "find liability against the Defendant railroad" as unduly suggestive and as duplicative of question nos. 43 and 44.   CSXT has no objection to Plaintiff inquiring as to whether members of the jury pool will be able to follow the Court's instructions.

46.    CSXT objects to this question as duplicative of question no. 43.

48.    CSXT objects to this question as argumentative and inflammatory.  CSXT has no objection to Plaintiff inquiring as to whether members of the jury pool will be able to follow the Court's instructions.

In addition to the foregoing objections, the following errors should be corrected in Plaintiff's proposed voir dire questions:

19.    CSXT's counsel Joyce Gist Lewis is misidentified.

## Attachment "B-2"

General questions which defendant wishes to be propounded to the jurors on

voir dire examination.

COMES NOW CSX TRANSPORTATION, INC. ("CSXT"), Defendant

herein, and submits the following Voir Dire questions to be submitted to the jury:

1.     Do you recognize any of the attorneys representing Plaintiff Doug

       Burchfield?  Have you ever been represented by these attorneys or any of

       the attorneys of Warshauer Poe & Thornton in Atlanta, Georgia:  These

       attorneys are:

              Michael J. Warshauer
              Douglas C. Dumont
              Steven Thornton
              James M. Poe
              Lyle Warshauer
              Greg Cusimano
              David Wenner
              Steven Welsh

2.     Do you know the Plaintiff Doug Burchfield or his wife Bridgette

Burchfield?

3.     Do you know any of the individuals who may appear as witnesses in the

       trial of this matter (Witnesses listed in Pretrial Order)?

4.  Were you aware, prior to coming to Court today, of an industry accident that occurred at the General Mills Covington, Georgia plant on June 5, 2005?

5.  Are you familiar with the General Mills plant located in Covington, Georgia?

6.  Have you ever had an interaction with a railroad, such as being blocked at a crossing or being bothered by train whistles or horns, that has influenced your view of railroads?

7.  Have you or any of the members of your family or friends ever worked for any railroad company?

8.  Does anyone here live close to railroad tracks?

9.  Does anyone here have any problems with their hearing or a hearing impairment of any kind?

10.  Have you or any of the members of your family or friends ever been involved in a lawsuit as a Plaintiff or Defendant?  If so, explain the type of suit and its resolution.

11.  Have you or any of the members of your family ever served on a jury before?  If so, please explain the type of suit and its resolution.

12. Are you or any of the members of your family or friends engaged in the practice of law or have any of you studied law or worked in a law office in any capacity?

13. Does anyone here have any feelings or attitudes about lawyers that would affect your ability to be a fair and impartial juror in this case?

14. This case involves a significant injury to a General Mils employee. Is there anyone here who feels that they cannot set aside their natural sympathy for this gentleman in order to decide this case fairly to all concerned?

15. Do you or any of the members of your family or friends work in the healthcare industry in any capacity?

16. Is there anyone here that cannot find in favor of Defendant in this case if Plaintiff fails to prove hus case by a preponderance of the evidence?

17. Is there anyone here that cannot follow the law as the judge instructs you to do even if you disagree with the law?

18. Before knowing anything about this case, who would be inclined to side with the General Mills employee, because it is an individual suing a corporation, before you hear any of the evidence?

19. Do you or any other members of your family have any experience in the use of a track mobile, a machine used to move railcars at an industry that is smaller than a railroad locomotive?

20.    Do you or any other members of your family understand or work on the mechanical aspects of vehicle brake systems?  Please explain.

21.    Have you ever seen applied or actually applied yourself a railcar handbrake?

22.    Do you or any other members of your family work as or have training as a mechanic?

23.    Have you or any other members of your family work or have been trained as an accident reconstructionist?

24.    Have you or any other members of your family ever been retained or testified as an expert witness?

25.    Have you or any members of your family ever worked in a business or industry that is subject to or involved in the interpretation of federal regulations?

26.    Have you or any members of your family ever been involved in the training of employees at a business or industry?

27.    Do you or any other members of your family have familiarity with or have worked at any job involving the movement and switching of railcars?

28.    Have you or any other members of your family been trained or work in mechanical engineering or design?

29. Have you or any other members of your family been trained in or worked in the area of metallurgy?

30. Have you or any other members of your family ever worked for a business that used, as part of its operations, equipment or vehicles that were owned and maintained by a third-party?

31. Would any of you for any reason be unable to set aside any sympathy or prejudice for or against any party and render a true verdict based upon the law as you are instructed by the judge?

**PLAINTIFFS' OBJECTIONS TO
DEFENDANT'S VOIR DIRE QUESTIONS
ATTACHMENT B-2A**

Plaintiff submits the following objections to Defendant's voir dire questions:

Number 4 – Plaintiff objects to the introductory portion of Number 4 as the use of the term "industry accident" is part of an illegal effort to imply that there is worker's compensation.  Furthermore, this isn't an "industry accident", as no industry was injured.  A human was injured.

Number 14 - Plaintiff objects to the introductory portion of Number 14 as the use of the term "General Mills employee" is clearly designed to inject workers compensation into the case.  Plaintiff was a General Mills employee, but he was injured as an individual and seeks damages as an individual, not a General Mills employee.

Number 18 - Plaintiff objects to the use of the term "General Mills employee" as clearly designed to inject workers compensation into the case. Plaintiff was a General Mills employee, but he was injured as individual and seeks damages as an individual, not a General Mills employee.

Number 26 – The Court has ruled that training is not an issue upon which the Defendant is allowed to rely.  This question is designed to insert that defense into the case.

## Attachment "C"- Plaintiff's outline of the case

I.      Liability

Defendant accepted the railcar at issue (AEX 7136) for transport numerous times in the four months prior to the incident.  On each occasion it had a duty to inspect the car for compliance with industry and federal safety standards. Despite multiple opportunities to inspect and discover a problem with the handbrake, Defendant delivered AEX 7136 to General Mills in Covington, Georgia, on June 3, 2005, with an unsafe and inefficient handbrake. Had Defendant properly and adequately inspected the car, it would have discovered that the handbrake was inefficient and would have repaired the car before delivering it to its customer.  Defendant failed to discover these defects because its inspection and transportation crews were not properly trained to detect defects, and potential defects, in handbrakes on rail cars.  Accordingly Defendant CSXT transported and delivered a railcar with an inefficient handbrake in violations of its duties of reasonable care and its obligations under the Safety Appliance Act and Federal Railroad Administration Safety Regulations.

After AEX 7136 was delivered by CSXT to General Mills, it was not moved until Plaintiff, and a co-worker Rodney Turk, moved it on the morning of June 5, 2005. Before moving the car from where the Defendant's employee, Jason Jones had left it, Plaintiff and Mr. Turk insured that the the air brake system was fully

charged and then Plaintiff released the hand brake using the quick release. This would have dumped the entire chain from the hand brake housing. They then moved AEX 7136 from where it had been left by Mr. Jones to Track 22. On Track 22, Plaintiff applied the hand brake by taking the chain completely into the hand brake housing and snuggly tightening the hand brake wheel. Turk then pulled off from the car and the air was allowed to escape form it and engage the emergency brake system which held it in place. The car was supposed to sit until other work was completed and the crew could come back to get it so it could be moved into a building to be unloaded. After Plaintiff applied the hand brake to hold the car in place, as the trackmobile separated from AEX 7136, and emergency air brake was applied, even without any handbrake the car should have been held by the air brakes for hours. When the trackmobile pulled away from AEX 7136, Rodney Turk noticed some movement of it and asked Plaintiff if he had set the handbrake, and Plaintiff replied, "Yes," and nodded his head. The car did not move after that and it appeared that the brakes were working as expected.

The hand brake on AEX 7136 did not hold the car in place even though tightened with reasonable force by Burchfield. It failed to hold the car because it was not properly maintained and inspected by CSX. In particular, CSX has a practice, policy and procedure that provides that it does not adjust hand brake

rigging until it is at the point of complete failure. This policy allows a car to go from having an inefficient hand brake to no hand brake at all due to the brake wear in a single trip. CSX had multiple opportunities to discover and correct the defect in the hand brake on AEX 7136 including when the car was repaired and inspected and delivered. When the car was delivered, the conductor who delivered the car was unable to discover the defect because he had not been trained to do so. The brakeman on that same job had better training and more experience and testified that he would have recognized the defect and bad ordered the car. Perhaps most importantly, CSX's mechanical department employees, who are charged with inspecting rail cars for safety, do not test or inspect to determine whether the handbrake is efficient or capable of holding a railcar. AEX 7136 rolled from its place of rest where Plaintiff left it solely because of a defect in the brake system. When the hand brake proved defective, the back up emergency air brake also failed to hold as virtually every CSXT employee expected it to do. When AEX 7136 rolled away, it struck the trackmobile so violently it lifted AEX 7136 up and out of its bolster. This caused the quick release on the hand brake to be forced upwards and partially release the chain from the housing resulting in a condition of the chain being neither totally loose as it was when Burchfield hit the quick release when he first picked up the car nor totally in the housing as it was when he tied the hand brake when the car

was left on Track 22.  All three cars ran over Burchfield.

II.    Damages

When the three rail cars ran over the Plaintiff it amputated his legs and caused other bodily injuries as well.  Plaintiff is entitled to recover all damages caused by Defendant's negligence and *per se* negligence as described above.

1. General Damages

As a result of the incident, Plaintiff had numerous rib fractures, a massive chest contusion, sacral fracture, inferior and superior pubic ramus fractures, right pubic bone fracture, L5 vertebrae fracture, right and left clavicle fractures, left open femur fracture, left below knee amputation and right above the knee amputation.  Secondary to these injuries, Plaintiff has suffered a severe loss of mobility due to the broken bones, tendonitis in his wrist from using canes and a wheel chair, constant numbness and tingling in his left quad area due to damage in pelvic floor, and phantom pains coming from his amputated legs. These injuries cause him permanent pain and suffering.  The elements of Plaintiff's pain and suffering are as follows:

1.  Interference with normal living;

2.  Interference with enjoyment of life;

3.  Loss in capacity to labor and earn money;

4.  Impairment of bodily health and vigor;

5. Confinement – actual and fear of in the future;

6. Fear of extent of injury;

7. Shock of impact;

8. Actual physical pain and suffering – past;

9. Actual physical pain and suffering – future;

10. Mental anguish, anxiety and depression – past;

11. Mental anguish, anxiety and depression – future; and/or,

12. Limited activities for the rest of life.

The amount is to be determined by the jury. Plaintiff will request an amount in excess of $15,000,000.00 for general damages. O.C.G.A. § 51-12-2 (a); *Food Lion v. Williams*, 219 Ga. App. 352, 464 S.E.2d 913 (1995).

## 2. Special Damages

Plaintiff seeks special damages which include medical expenses, future medical expenses, life care expenses, lost income, future lost income, and lost benefits. Kathy Willard and Dr. Francis "Bill" Rushing will testify about the need for and cost of such damages. O.C.G.A. §§ 51-12-2, 51-12-4, 51-12-7, 51-12-13; *Atlantic Coastline Railroad Co. v. McDonald*, 103 Ga. App. 328, 332 (1961); *Nashville, etc., Railway Co. v. Miller*, 120 Ga. 453 (1904); *Western, etc., Railroad Co. v. Sellers*, 15 Ga. App. 369 (1914); *Camilla Cotton Oil, etc., Co. v. Walker*, 21 Ga. App.

603 (1918); *Georgia Power Co. v. Clark*, 69 Ga. App. 273 (1943); *Georgia Railway and Power Co. v. Ryan*, 24 Ga. App. 290 (1919); *Florida, etc., R.R. Co. v. Burney*, 98 Ga. 1 (1894); *Williams v. Vinson*, 104 Ga. App. 886, 893 (1961); *Miller v. Tuten*, 137 Ga. App. 188 (1976); *Savannah, etc., Railway v. Stewart*, 71 Ga. 427 (1883); *Augusta Railway Co. v. Glover*, 92 Ga. 132, 148 (1892); *Western, etc., Railroad Co. v. Young*, 83 Ga. 512, 515 (1889); *Redd v. Peters*, 100 Ga. App. 316 (1959); *OB-GYN Associates of Albany v. Littleton*, 259 Ga. 663 (1989); *Southern Railway Co. v. Jackson*, 146 Ga. 243 (1916); *Chapman v. Western Union Telegraph Co.*, 88 Ga. 763 (1892); *Southern Railway Co. v. Bottoms*, 35 Ga. App. 804 (1926); *Brock v. Cato*, 75 Ga. App. 79, 82 (1947); *Williams v. Vinson*, 104 Ga. App. 886, 893 (1961*); Shore v. Ferguson*, 142 Ga. 657 (1914); *Everett v. Holmes*, 126 Ga. App. 208 (1972).

III.    Specifications of Negligence

(a.)    Defendant accepted a railroad covered hopper car for interstate transportation which it knew, or should have known through the exercise of reasonable care, that the railcar had an unsafe and inefficient handbrake.

(b.)    Defendant failed to exercise reasonable care to inspect the hand brake on the car multiple times prior to this incident, including but not limited to February 7, 2005, March 23, 2005, May 30, 2005, and June 3, 2005.

(c.)    Defendant was negligent for putting into service on its line and delivering a hopper car (AEX 7136), which had an unsafe and inefficient hand brake.

(d.)    Defendant was negligent for following a practice, policy and procedure that encourages the transportation and delivery of rail cars with defective and inefficient handbrakes because its mechanical employees do not adjust or repair hand brakes until they actually stop working instead of being proactive.

(e.)    Defendant was negligent for having an inadequate number of car inspectors to perform necessary safety inspections.

(f.)    Defendant was negligent for failing to train its mechanical department employees to recognize that when there is evidence that a handbrake is a "dead pull" because of the bell crank touching the end sill of the car, or that the bell crank is above horizontal, or that the live lever is lying at too steep of an angle, and that these conditions need to be investigated and remedied.

(g.)    Defendant was negligent for failing to train its mechanical department employees to conduct proper single car brake tests so that they would recognize that when there is evidence that a handbrake is a "dead pull", or out of proper manufacturer's

adjustment specifications, that the hand brake is inefficient and that this condition needs to be investigated and remedied.

(h.)    Defendant was negligent for failing to train its mechanical department employees to adjust WABCO truck mounted hand brake rigging consistent with the recommendations of the manufacturer of the rigging components.

(i.)    Defendant was negligent for failing to require its mechanical department employees to test hand brakes to determine if the hand brakes were actually capable of holding a car in place when reasonably expected force is applied in setting the brake by likely users.

(j.)    Defendant was negligent for failing to require its mechanical department employees to test hand brakes to determine if the hand brakes were efficient.

(k.)    Defendant was negligent for failing to train Jason Jones how to recognize the proper piston travel for the brake system applicable to AEX 7136.

(l.)    Defendant was negligent for failing to train Jason Jones, the last CSXT employee to have an opportunity to inspect the car and discover the inefficient hand brake, that when the bell crank is out of

proper geometry or touches the sill of the car that the brake is inefficient and dangerous and that the car needs to be "bad ordered" to protect users from injury.

(m.)  Defendant was negligent for failing to warn General Mills and its employees that the hopper car (AEX 7136) did not have adequate or safe brakes and could not be held in place by its own brakes.

(n.)  Defendant was negligent for failing to maintain the air portion of the brake system on AEX 7136 to keep the emergency brakes on for a reasonable period of time.

(o.)  Defendant is liable to Plaintiff without proof of negligence for putting into service on its line a hopper car (AEX 7136) with an unsafe and inefficient hand brake in violation of 49 U.S.C. §20302(a)(1)(B), a Safety Appliance Act of the United States Congress.

(p.)  Defendant is liable to Plaintiff without proof of negligence for putting into service on its line a hopper car (AEX 7136) with an unsafe and inefficient hand brake in violation of Federal Safety Regulations at 49 C.F.R. 231.2(a).

IV.   Statutes and Case Law Creating a Legal Duty

49 U.S.C. §20302(a)(1)(B); 49 C.F.R. 231.2(a); *Myers v. Reading Co.*, 331 U.S. 477, 483, 67 S.Ct. 1334, 91 L.Ed. 1615 (1947); ); 45 U.S.C. § 54a; *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 300 (7th Cir. 1996); *Kernan v. American Dredging Co.*, 355 U.S. 426 (1958); *Richards v. Consolidated Rail Corp.*, 330 F.3d 428, 432 (6th Cir. 2003); *O'Donnell v. Elgin, J. & E. Ry. Co.*, 338 U.S. 384, 390, 70 S.Ct. 200 (1949); *Didinger v. Pennsylvania R.R. Co.*, 39 F.2d 798 (6th Cir.1930); *Perdue v. CSX Transp., Inc.*, 2007 WL 1229503 (Ky.App.,2007); *Woods v. New York, C. & St. L. R. Co.*, 88 N.E.2d 740, 339 Ill.App. 132 (Ill.App.1949); *Roy v. Georgia R. & Banking Co.*, 17 Ga. App. 34, 35, 86 S.E. 328 (1915); *Rouse v. CSX Transp., Inc.*, 722 F.Supp. 751 (S.D.Ga. Aug 08, 1989); *Synar v. Union Pacific R. Co.*, 2001 WL 1263573 (Tex.App.-Tyler Oct 17, 2001); *Underhill v. CSX Transp., Inc.*, 2006 WL 1128619 (N.D.Ind. 2006); *Hoemmelmeyer v. CSX Transp., Inc.*, 2005 WL 2124259, *4+ (S.D.Ohio Aug 30, 2005); *S. F. & W. Ry. Co. v. Booth*, 98 Ga. 20, 25 S. E. 928; *Sykes v. St. Louis Railroad*, 178 Mo. 693, 77 S. W. 723; *Weeks v. Pollard*, 65 Ga.App. 377, 16 S.E.2d 225, 231 (1941); *Bass v. Seaboard Air Line R. Co.*, 205 Ga. 458, 53 S.E.2d 895 (1949); *Shiver v. Norfolk Southern Ry. Co.*, 220 Ga. App. 483, 469 S.E.2d 769 (1996); *Central Anesthesia Associates P.C. v. Worthy*, 173 Ga. App. 150, 325 S.E.2d 819 (1984); *Hall County School Dist. v. C. Robert Beals & Associates, Inc.*, 231 Ga. App. 492(3), 498 S.E.2d 72 (1998); *Wilson v. Georgia Power & Light Co.*, 200 Ga. 207, 36 S.E.2d 757 (1946); *Garrett v. Royal Bros. Co.*, 225 Ga. 533, 170 S.E.2d 294 (1969); *Platt v.*

*Southern Photo Material Co.*, 4 Ga. App. 159(2a), 60 S.E. 1068 (1908); *Central of Ga. Ry. Co. v. Leonard*, 49 Ga. App. 689(6), 176 S.E. 137 (1934); *Northwestern Mut. Life Ins. Co. v. McGivern*, 132 Ga. App. 297, 208 S.E.2d 258 (1974*); Cardin v. Telfair Acres of Lowndes County, Inc.*, 195 Ga. App. 449, 393 S.E.2d 731 (1990); *Dupree v. Keller Industries, Inc.*, 199 Ga. App. 138(1), 404 S.E.2d 291 (1991); *Arnold v. Arnold*, 197 Ga. App. 103, 397 S.E.2d 724 (1990); *Kull v. Six Flags Over Georgia II, L.P.*, 264 Ga. App. 715, 592 S.E.2d 143 (2003).

## CSXT'S OBJECTIONS TO PLAINTIFF'S OUTLINE OF CASE

CSXT objects to Plaintiff's outline of the case and specifications of negligence as argumentative, not succinct, and as making multiple allegations which are not supported by the record in this case.  CSXT further objects to Attachment C to the extent that the same appears to reference factual allegations intended to support a claim for punitive damages.  Pursuant to the terms of the Court's May 15, 2009 Order granting partial summary judgment to CSXT, the only issues to be determined by the jury are the facts supporting or refuting a finding of negligence, causation, and compensatory damages.

## <u>Attachment "D"- Defendant's outline of the case</u>

On or about Friday, June 3, 2005, CSX Transportation, Inc. delivered railcar AEX 7136 to the General Mills cereal processing plant in Covington, Georgia.  On Sunday, June 5, 2005, General Mills employees Rodney Turk and Plaintiff Doug Burchfield were assigned to move railcars at the plant, with Plaintiff working as groundman, and Mr. Turk operating the trackmobile (a rail mover which can be used on railroad tracks or on pavement).  The men needed to move railcar AEX 7136 to Track 22, but were first required to re-position three cars which were already on that track "To make room for the loaded car [AEX 7136]."  Mr. Turk had "a clear view" of the handbrake on AEX 7136 from his position in the trackmobile, but he did not see Plaintiff touch the handbrake on the south end of the railcar.

Instead, Mr. Turk assumed that Plaintiff set the handbrake on the north end of the railcar, which did not have a handbrake.  Mr. Turk saw the railcar move approximately one foot while it was disconnecting from the trackmobile, but neither he nor Mr. Burchfield went back to check the handbrake.  Although Plaintiff had completed the Barloworld trackmobile training in which he would have been instructed to always use chocks to prevent the accidental movement of railcars, the men did not use chocks after moving AEX 7136 and the other railcars

that day and did not set derail devices. Plaintiff does not recall setting the handbrake and no one saw him set the handbrake on AEX 7136.

After leaving AEX 7136 on Track 22, Plaintiff and Mr. Turk moved to work down the tracks. Mr. Turk was in the trackmobile when he observed AEX 7136 rolling towards him down the tracks. Mr. Burchfield was on the ground near the tracks and was run over as a result of the collision. Upon inspection after the accident, the handbrake on AEX 7136 was not applied and the brake shoes were not touching the wheels. Further, no other railcars that had been moved by Plaintiff and Mr. Turk at General Mills that day were observed to have a handbrake applied.

A videotape of AEX 7136 taken at General Mills in the weeks following the accident shows the railcar rolling when its handbrake is released, and stopping when the handbrake is applied. Plaintiff's experts agree that the test of the handbrake's efficiency is whether the handbrake is capable of holding the car in place or stopping movement of the car, and that the video appears to show an efficient handbrake. After the accident, railcar AEX 7136 remained at General Mills for at least five (5) months and was held in place by the handbrake without the use of chocks or chains to impede its movement. Although Plaintiff has asserted that the handbrake was defective because of the position of its bell crank, Plaintiff's experts do not know whether AEX 7136 could be held in place

64

on the grade at General Mills despite this criticism. Defendant's experts have observed that when applied, the handbrake provided sufficient force to prevent movement of the subject railcar.

In March 2005, prior to this accident, the AEX 7136 handbrake was tested to and passed AAR standards during a single car air brake test by CSXT. CSXT also performed a repair on the car on May 30, 2005, five days prior to Plaintiff's accident, and did not observe any defect in the condition of the handbrake. Although Plaintiff's expert has criticized the fact that AEX 7136 was fitted with a Group N handbrake rather than a higher-powered Group O handbrake at the time of this accident, CSXT was not the owner of AEX 7136, did not select the handbrake on that railcar, and did not have the right to install a different handbrake.

**RULES, STATUTES, REGULATIONS and ILLUSTRATIVE CASE LAW**

49 U.S.C. §§ 20301, 20302; 49 U.S.C. § 20106 et seq.; Title 49 of the Code of Federal Regulations, including 49 § C.F.R. 231.2; 49 C.F.R. §§ 215-13, 232-205; *Woods v. New York, C. & St. L. R. Co.*, 339 Ill.App. 132, 137, 88 N.E.2d 740 (1949); *Jonas v. Isuzu Motors Ltd.*, 210 F.Supp.2d 1373 (M.D.Ga. 2002) (*quoting Finney v. Machiz*, 218 Ga.App. 771, 772, 463 S.E.2d 60, 61 (1995); *Crossley by Crossley v. General Motors Corp.*, 33 F.3d 818, 821 (7th Cir.1994); *Owen v. General Motors Corp.*, 533 F.3d 913, 923 (8th Cir. 2008); *Estate of Ratcliffe v. Pradera Realty Co.*, Not Reported in

F.Supp.2d, 2008 WL 53115, (S.D.N.Y. 2008); *Allen Kane's Major Dodge, Inc. v. Barnes*, 243 Ga. 776, 781, 257 S.E.2d 186 (1979); *Dawkins v. Doe*, 263 Ga.App. 737, 740, 589 S.E.2d 303 (2003); *Ken Thomas of Georgia, Inc. v. Halim*, 266 Ga.App. 570, 597 S.E.2d 615 (2004); *Willard v. Bic Corp.*, 788 F.Supp. 1059, 1069-70 (W.D.Mo.1991); 2005 Field Manual of the American Association of Railroads (AAR) Interchange Rules; AAR Manual of Standards and Recommended Practices; Federal Railway Safety Act (FRSA) and associated regulations.

Plaintiff objects to CSX's general cite of the FRSA and requests that CSX be required to cite to specific provisions in the FRSA and any associated regulations.

## PLAINTIFF'S OBJECTIONS TO CSXT'S OUTLINE OF CASE

Plaintiff objects to CSXT's outline of the case as follows:

1.      Turk was distracted and otherwise occupied and therefore did not have a clear view of the area in which Plaintiff would have been applying and releasing handbrakes and coupling and uncoupling cars.  Turk's testimony was that he did not see Plaintiff apply or release a single handbrake or couple or uncouple a single car that day despite the fact that we know Plaintiff applied and released several handbrakes and coupled and uncoupled the trackmobile from several different cars that day.

2.      There are no facts to support Defendant's assertion that Turk assumed Plaintiff had set the handbrake on the north end of AEX 7136.  Defense counsel might be able to elicit such testimony at trial, but there is no evidence of this in the record.

3.      AEX 7136 did not move after it was uncoupled from the trackmobile, rather, the testimony is that it moved one foot while being uncoupled from the trackmobile.  This can occur when there is continued interference between the couplers as the trackmobile pulls off from the car.

4.      Defendant's assertion that no one went back to check and make sure the handbrake was set is misleading in that it assumes that Plaintiff or Turk had a

duty to do so despite the fact that Plaintiff had tied the handbrake within minutes of being asked whether he had done so.

5.      Defendant is prohibited from arguing that Plaintiff should have used chocks, chains or derails.  As this Court ruled in its Order of May 15, 2009, Defendant has failed to introduce admissible evidence with regard to the standard of care in railroad operations.  Because, "the proper use of safety appliances on the track requires technical and specialized knowledge," and there is no expert qualified to give opinions as to the standard of care in this area, Defendant is prohibited from criticizing Plaintiff's nonuse of chocks, chains or derails.  In fact, every witness who has done switching agrees that chocks and chains would not have been used in the relevant circumstances to prevent car movement – nor would derails.

6.      Defendant provides an incomplete and misleading chronology of facts with regard to the railcar movement which makes it appear as though Plaintiff and Turk went to work below AEX 7136 and it rolled away right after they had left it.  This is contrary to all the testimony in this case and is very misleading. The car stayed in place for at least half an hour.

7.      The uncontradicted testimony in this case is that Plaintiff was setting the handbrake, or in the process of just starting of just finishing doing so, on AEX 7318 when he was run over by that car, the trackmobile and AEX 7136.

Defendant's assertion that Plaintiff was simply "near the tracks" is incredibly misleading.

8.    Defendant is wrong;  the handbrake was not found unset.  Instead, it was found partially released.  Given that a properly operable and maintained hand brake will completely release when the quick release is used, and given the fact that Burchfield completely released the hand brake when he first connected to the car, had he not set the brake at all on Track 22, the chain would be released entirely instead of just partly released as it was found at the wreck site.  The chain was completely in the housing and tight when the car was left as Mr. Burchfield told Mr. Turk he tied the hand brake.  The best explanation for this partial release is that when AEX 7136 was violently moved upwards out of its bolster on impact, that this caused the quick release to move upwards and downwards so rapidly that just a few links were released.

9.    There is no proof that all the cars moved by Plaintiff and Turk did not have the handbrakes applied.  There is no witness who looked at every handbrake, so CSX cannot be allowed to mislead the jury into believing this is true.

10.    CSX continues to rely on an unauthenticated videotape and treat it as if it were an actual recreation of the June 5, 2005, event.  The reasons CSX should not be permitted  to rely on this video includes but is not limited to the fact that CSX

cannot show substantial similarity, the date and time of testing, and the condition of car.

11.    CSX's assertion that AEX 7136 sat for five months without chains or chocks is misleading because it sat in a flat area of the track, and therefore, did not need anything to prevent its movement.  As Newton's first law proves, objects at rest tend to stay at rest.

12.    Engle has testified that based on multiple inspections and tests that the handbrake on AEX 7136 would not hold the car.  Moreover, CSX's own expert Foster Peterson testified that when reasonable force is applied to the handbrake that the car would roll based upon Jim Shoe testing.  Thus, CSX cannot argue that Plaintiff's experts do not know if AEX 7136's handbrake would hold it on a grade at General Mills.

13.    It is misleading and inaccurate to say that the handbrake on AEX 7136 passed AAR standards for an efficient handbrake in March 2005.  CSX's in-house expert and corporate designee Charles Cherry testified that the testing performed during the single car test did not test whether the handbrake was efficient and would hold the car.

## **Attachment "E"- Facts stipulated by the parties**

1.    The United States District Court for the Northern District of Georgia has jurisdiction over the subject matter of this action.

2.    The United States District Court for the Northern District of Georgia has jurisdiction over the parties in this action.

3.    Venue is proper in the Northern District of Georgia.

4.    CSXT did not employ Doug Burchfield.

5.    CSXT did not train or supervise Doug Burchfield.

TWT    6.    ~~The movement of AEX 7136 for the six months prior to the incident as produced by CSX.~~

7.    ~~Jason Jones was the last CSXT employee to handle AEX 7136.~~

8.    ~~At all times relevant to this action, Jason Jones was an agent of CSXT and was acting within the scope of his agency and employment.~~

## Attachment "F-1"- Plaintiff's witnesses

**Plaintiff will have present:**

1. Douglas Burchfield- 1025 Country Walk Ct., Loganville, Ga 30043

**Plaintiff may have present:**

2. Charles Adams-5175 Huntfield Road, Evans, Georgia

3. Bridgette Burchfield- 1025 Country Walk Ct., Loganville, Ga 30043

4. Gary Beale- 5906 Yarmouth, Toledo, Ohio 43623

5. Chuck Brown- 3046 Pebble Court, Maumee, Ohio.

6. Eddie Butler-2535 Turner Ridge Road, Covington, Georgia.

7. Charles Cherry- 8311 Hunters Meadow Court, Indianapolis, Indiana 46259

8. Hugh Stephens - 2925 Ben Arron Dr, Dacula, Georgia 30019

9. Scott Dormire- 4448 Mira Vista Drive, Frisco, Texas 75034

10. Michael Fasseszke- 700 Maple Crest Drive, Frankenmuth, Michigan 48734

11. William Gerstmyer- 1541 Greyfield Trace, Snellville, Ga 30078

12. Dave Hilfiger- Atlanta, Georgia

13. Joe Holton- 6266 Dorsett Shoals Road, Lot 209, Douglasville, Ga

14. Lawrence Jeffords- Conyers, Georgia

15. Charlie Jobes- 9416 Meadowmont View Dr., Charlotte, NC 28269

16. Jason Jones- 4812 Wrens Highway, Thomson, Georgia

17. Allen H. Lingenfelter- 1601 Logan Avenue, Altoona, PA

18. Bryan Nutt- 123 Barley Mill Road, Moore, SC

19. George Parades-27773 Schriber Street, Walbridge, Ohio, 43465

20. Foster Peterson- 3010 Oak Tree Court, also in Marietta, Georgia 30066

21. Greg Poynter- 46 Old Chestnut Lane, Dallas, Georgia.

22. Greg Rueda- 6616 Pinewood Drive, Pearl River, Louisiana.

23. Horace Taylor-1589 Cuttersville Drive, Lithonia, Georgia and 1097
    Harrison Road, Thomson, Georgia

24. Rodney Turk- 10 Five Oaks Drive, Covington, Georgia

25. Mo Draper – 115 Graystone Driver, Covington, GA.

26. Wayne Willis- 7271 Oak Lane, Holland, Ohio

27. Harold Winters- 195 Carrie Drive, Dallas, Georgia 30157

28. Josh Winters- 3306 Wards Church Road, Blackshear, Georgia 31516

29. Paul Dailey-Covington Police Department, 15200 Industrial Park Blvd,
    Covington, Georgia 30014

30. E. Moore- Covington Police Department, 15200 Industrial Park Blvd,
    Covington, Georgia 30014

31. Officer Brent A. Fuesting- Covington Police Department, 15200 Industrial
    Park Blvd, Covington, Georgia 30014

32. Sergeant W. Wagstaff- Covington Police Department, 15200 Industrial
    Park Blvd, Covington, Georgia 30014

33. C. Smith, Covington Police Department, 15200 Industrial Park Blvd, Covington, Georgia 30014

34. Lt. George R. Jefferson-Covington Fire Department, 2101 Pace Street Covington, Georgia 30014

35. D.C. David R. Cunter- Covington Fire Department, 2101 Pace Street Covington, Georgia 30014

36. FF James M. Cox-Covington Fire Department, 2101 Pace Street Covington, Georgia 30014

37. FAO Matthew W. Grimes- Covington Fire Department, 2101 Pace Street Covington, Georgia 30014

38. LT Robert G. Canady- Covington Fire Department, 2101 Pace Street Covington, Georgia 30014

39. FF Thomas A. Hanson- Covington Fire Department, 2101 Pace Street Covington, Georgia 30014

40. RFAO Jody R. Roberson- Covington Fire Department, 2101 Pace Street Covington, Georgia 30014

41. Doug & Tammy Hawkins-1483 Macy Lane, Lawrenceville, Ga

42. Derrik & Joyce Miller- 215 Rocky Meadow Drive, Gilbert, SC

43. Ronnie & Debra Brasfield-1440 Whitley Road, Dacula, Ga

44. Carol & Everett Holmes-189 Caboose Court, Pendergrass, Ga

45. Paul & Heather Holmes-867 Cochise Trail, Conyers, Ga

46. John & Shelly Holmes-1814 Christopher Drive, Akron, OH

47. Tracee & Fred Archer-735 Neal Road, Akron, OH

48. Robbie Burchfield-2807 Osage Ave., Akron, OH

49. Beth & Alan Bangs-2051 Luke Edwards Road, Dacula, Ga

50. Rev. Ron Brent & Tammy-2411 Merrion Park Court, Dacula, Ga

51. Rev. Rob Brooks & Lisa-2325 Masters Road, Dacula, Ga

52. Robin & Dan Brown-1811 Shacy Creek Lane, Lawrenceville, Ga

53. Denise & Jay Cavanaugh-500 Heritage Woods Drive, Dacula, Ga

54. Beth & Clint Gross-1448 Solomon Drive, Winder, Ga

55. Ryan Grundlock-2371 Larpent Court, Dacula, Ga

56. Lena & Mike Hinton-1790 Leigh Meadow Drive, Dacula, Ga

57. Ginny Hughes-1320 Castle Royale Court, Lawrenceville, Ga

58. Dee Moore- 477 Eastside Drive, Dacula, Ga

59. Lynn & Greg Odum- 640 River Chase, Hoschton Ga

60. Lane & Barry Puckett-2961 Michelle Lee Drive, Dacula, Ga

61. Kelly & David Seckinger- 2254 Duncans Shore Drive, Buford, Ga

62. Dan & Tammy Seckinger- 2100 Wynfield Point Drive, Buford, Ga

63. Tania & Buddy Smith- 157 Azalea Drive, Winder, Ga

64. Johnny & Wanda Watkins- 39 Melody Lane, Lawrenceville, Ga

65. Rev. John Williams & Lisa- 3110 Heritage Woods Court, Dacula, Ga

66. Ted & Kim Archer- P.O. Box 298, Lakemore, OH

67. Terry & Kim Robinson-3415 Killian Road, Uniontown OH

68. Alan & Janet Blashaw- 141 Hebron Church Road, Dacula, Ga

69. Cay & Allen Davis- 3875 Moon Shadow Way, Buford, Ga

70. Brad & Kelly Powell, 3473 Flat Run Drive, Bethlehem, Ga

71. Steve & Pat Edwards-1070 Winnbrook Drive, Dacula, Ga

72. Eddie & Donna Butler- 1412 Emory Street, Oxford, Ga

73. Tony Zontek-105 Dogwood Lane, Covington, Ga

74. David Caron- 916  King Drive, Conyers, Ga

75. Larry Kehoe- 17 Valley Trail, Covington, Ga

76. Roger & Sandra Shockly- 551 Persons Street, Monticelo, Ga

77. Steve & Janet Miller- 365 Channings Lake Drive, Lawrenceville, Ga

78. Randy & Carol Whisenhunt- 349 Paul Smith Road, Convington, Ga

79. Brad & Terrie Marks- 2866 Hwy. 11 South, Mansfield, Ga

80. Scott Anderson- 5510 Elders Ridge Drive, Flowery Branch, Ga

81. Marvin & Sarah Roberts- 2374 Oakland Drive, Lawrenceville, Ga

82. Jonna Jackson- 530 Beackham Walk Dr., Dacula, Ga

83. Bruce & Kathy Skidgel- 2515 Gate Park Dr., Bethlehem, Ga

84. Chris & Laura Sims- 1817 Richmond Hill Dr., Lawrenceville, Ga

85. Larry & Pam Runnels- 4800 Ardmore Lane, Hoschton, Ga

86. Tripp & Jennifer Rogers- 2635 Snowcrest PL, Braselton, Ga

87. Darrell & Kathy Ake- 3041 Ploaters Mill Dr, Dacula, Ga

88. Mark Finchum- 1404 Nunnally Trace, Monro, Ga

89. Tim Townley-480 Alcovey Way, Covington, Ga

90. Mike & Lori Martin- 2362 Crimson King Drive, Braselton, Ga

91. Candis Mixon-1844 Hood Road, Dacula, Ga

92. Karen Lucas-2020 Harfield Court, Bethlehem, Ga

93. Ester Birge-3803 Palisade Ct, Snellville, Ga

94. Trey & Dawn King- 1018 Anise Court, Dacula, Ga

95. Rev. Chip Cranford & DeAnn- 3217 Kinross Court, Dacula, Ga

96. Ronnie & Cindy Beavers-167 Sheffield Road, Ridgeway, VA

97. Rev. Mac Palmer- 1225 Jasmine Green Court, Dacula, Ga

98. Kevin & Sandy Brookshire- 1070 Chapel Hill Drive, Lawrenceville, Ga

99. Steve Alwes- 745 Starrsville Road, Covington, Ga

100.      Rev. Larry Wynn & Ethel- P.O. Box 118, Dacula, Ga

101.      Terri & Wayne Pittman- 550 River Bridge Trail, Cornelia, Ga

102.      Bill & Vicki Trotter- 1880 Crowe Road, Dacula, Ga

103.      Joy & Otis Guillebeau- 1127 Bradford Park Drive, Aurburn, Ga

104.      Ken & Trina Mayson- 560 White Ridge Trace, Larenceville, Ga

105.    Cheryl Walsh-5870 Elm Tree Drive, Bufrod, Ga

106.    Rev. Greg Sweat- 912 Swann's Landing Point, Dacula, Ga

107.    Jim & Nancy Easterling- 276 Pierce Road, Winder, Ga

108.    Rev. Billy Britt & Joyce- 1621 Rocky Knoll Lane, Dacula, Ga

109.    Rev. Tim Taffar- 562 Tappwood Road, Dacula, Ga

110.    Jerri Stanley- 1341 Ewing Chapel Road, Dacula, Ga

111.    Laurie & Dennis Fuller- 970 Sunny Field Court, Lawrenceville, Ga

112.    Jeff & Barbara Drasher- 3004 Knotting Hill Court, Conyer, Ga

113.    Sandy & Gary Forrester- 885 Rutherford Drive, Dacula, Ga

114.    Toni & Charles Goodson-2840 Angel Oak Circle, Dacula, Ga

115.    Shane & Ashley Green- 2945 Angel Oak Circle, Dacula, Ga

116.    Derek & Paula D,Alonzo- 4961 Stone Moss Way, Hoschton, Ga

117.    Melissa Sims- 108 Anita Drive, Winder, Ga

118.    Judy & Mark Gordon- 3306 Stancil Drive, Dacula, Ga

119.    Mike & Jennifer Smith- 2090 Luke Edwards Road, Dacula, Ga

120.    Linda & Sam Taylor- 3903 Kelly Drive, Durham, NC

121.    Clyde & Laurie Joyce- 6393 Rich Pond Road, Bowling Green, KY

122.    Libby & Emmett Bridger- 2600 Maggie Woods Court, Dacula, Ga

123.    Connie & Dave Rackley- 1360 Woodpoint Way, Lawrenceville, Ga

124.    Lynette & Jackie Butler- 107 Greentree Drive, Auburn, Ga

125.     Nancy & Ken Hightower- 654 Rivermill Road, Bethlehem, Ga

126.     Ken & Rhonda Malone- 4470 Windswept Trail, Buford, Ga

127.     Skip & Beverly Martin- 3140 Callie Still, Lawrenceville, Ga

128.     Andy & Carol Coker- 614 Planters Mill Pointe, Dacula

129.     Geoff & Amanda Beene- 966 Chippewa Oak Drive, Dacula, Ga

130.     Tom & Beth Holland- 125 Woodvalley Lane, Athens, Ga

131.     Catherine Norton- 1410 Heatherton Road, Dacula, Ga

132.     Peggy & Charles Scott- 3464 Fence Road, Dacula, Ga

133.     Steve & Debra Harrison- 560 Cooper Road, Loganville, Ga

134.     Denise Kitchen- 2435 Hinton Road, Dacula, Ga

135.     Jody & Baxter Mason- 3384 Fence Road, Dacula, Ga

136.     Tadd & Dianne Stephens- 5228 Union Circle, Flowery Branch, Ga

137.     Tom & Becky Caputo- 1260 Silverwood Court, Lawrenceville, Ga

138.     John & Emily Noble- 654 Sleeping Meadow Lane, Bethlehem, Ga

139.     Scott Smith- 3320 McKinley Point Drive, Dacula, Ga

140.     Jackie & Mike McFarland- 1505 Millhaven Drive, Auburn, Ga

141.     Karen McDonald- 601 Renee Drive, Loganville, Ga

142.     Mike & Melanie Taylor- 2084 Indian Hills, Bethlehem, Ga

143.     Kevin Ringo- 3300 McKinley Point Drive, Dacula, Ga

144.     Charles & Leanne Praigg- 859 Misty River Ct., Dacula, Ga

145.    Lisa & Tom Bradberry- 472 Harbins Road, Dacula, Ga

146.    Roger Giadrosich- 5501 Turnstone Drive, Conyers, Ga

147.    Tim Hayes- 2350 Steadman Lane, Conyers, Ga

148.    Sherry Monroe- 2954 Craigwood Drive, Duluth, Ga

149.    Harriett & David Brawner- 949 Bradford View Court, Dacula, Ga

150.    Cindy & Steve Fowler- 276 Johnson Road, Oxford, Ga

151.    Matthew & Jennifer Butler- 4571 Clack Road, Auburn, Ga

152.    Pam & Stan Turner- 3160 Bailey Cove Court, Dacula, Ga

153.    Sam & Janice Harrison- 1515 Windsong Park Drive, Dacula, Ga

154.    Brian Hume- 3082 Planter's Mill Drive, Dacula, Ga

155.    Robert & Tracey Vande- 5728 Kings Court, Dacula, Ga

156.    Ted & Kay Cone- 205 West Union Grove Circle, Auburn, Ga

157.    Terry & Pat Powell- 1243  Spruce Creek Lane, Lawrenceville, Ga

158.    Ginger Golden- 1030 Ivy Street, Cumming, Ga

159.    Don & Beth Morris- 6578 Johnson Circle, Flowery Branch, Ga

160.    Mac & Val Rowedder- 801 Sandy Court, Bethlehem, Ga

161.    Kathy Shell – CSXT

162.    A witness or witnesses who will testify on behalf of CSXT with

regard to its relationship with Rail Sciences, Inc./Gary Wolf, including but

not limited to all money paid by CSXT to Rail Sciences in the last 15 years and all cases Rail Sciences has worked on for CSXT in the last 15 years.

163.     Any witness needed to authenticate documents, records, photographs or other things.

164.     Any person listed as a will call or may call witness by CSXT.

**Expert Witnesses:**

165.     Francis Rushing. Ph.D.- 912 Dixie Ave, Madison, Ga. 30650- Analysis of Economic Losses as set for in his Rule 26 report and deposition testimony.

166.     David Engle, Jr.- 461 South Bethany Rd, Locust Grove, Ga. 30248- Investigation of accident as in his Rule 26 report and deposition testimony.

167.     Michael J. O'Brien- 1469 Rosewood Creek Dr, Marietta, Georgia 30066-Investigation of Hand brake as in his Rule 26 report and deposition testimony.

168.     Mark L. Elrod, P.E., 1049 Triad Court, Marietta, Georgia 300620 Investigation of Hand brake partial release as in his Rule 26 report and deposition testimony.

169.     Kathy W. Willard, M.Ed., CRC, CDMS, CCM, CLCP, VE- Willard Rehabilitation, 265 West Pike Street, Lawrenceville, Ga. 30045-

Rehabilitation and Life Care Planning as in her report and deposition testimony.

**The following are Plaintiff's medical providers and doctors who treated him for his injuries, each is qualified as an expert and may be called to Trial. Plaintiff anticipates that each will testify consistent with their treatment of Plaintiff and associated records:**

170.    Resurgens Orthopedics, 550 Peachtree St, Atlanta, Ga 30308, 404-215-2000, DOS: 7/27/05- 12/14/05;

171.    Michael M. Amrich, CPO, FAAOP, 419 Brookline Ave, Boston, MA 02115, 617-975-3854;

172.    Atlanta Medical Center, 285 Boulevard NE, Atlanta, Ga 30312, 404-265-4401,

173.    AlphaCare, Ronnie Brasfield, MA, LAPC, 290- D Constitution Blvd, Lawrenceville, Ga 30045; 770-916-9020

174.    Rehabilitation Physicians of Georgia, 5775 Glenridge Dr, Suite B 145, Atlanta, Ga 30328, 404- 659-5909

175.    Dr. Thomas Schorborg, Atlanta Urological Group, 285 Boulevard NE, Suite 215, Atlanta, Ga 30312, 404-524-5084;

176.    Dr. Harvey Tauber, 601 A Professional Dr, Suite 320, Lawrenceville, Ga 30047, 770-995-0424,

177.    Doug Webb, Ph.D., 1244 Clairmont Rd, Decatur, Georgia 30030, 404-257-2722;

178.    Emory Eastside Medical Center, 1700 Medical Way, Snellville, Ga 30078, 770-979-0200,

179.    Beth Israel Deaconess Rehab Services, 330 Brookline Ave, Boston, MA 02115, 617-632-8696,

180.    Caputo Chiropractic Center, 415 W. Pike St., Concourse Center, Suite E,F, Lawrenceville, Ga 30045, 770-962-0559;

181.    Gwinnett Sports Rehabilitation, 500 Medical Center Blvd, Suite 130, Lawrenceville, Ga 30045, 678-442-2803,

182.    Hand and Therapy Specialist, 1960 Riverside Dr, Lawrenceville, Ga 30043. 770-513-8363;

183.    Healthfield Home Care Services, 1130 Hurricane Shoals Rd, Lawrenceville, Ga 30043, 770-995-1644,

184.    National Orthopedic and Prosthetic Company, 419 Brookline Ave, Boston, Ma 02115, 617-975-3854,

185.    Rescue Air One, P.O. Box 2257, Kennesaw, Ga 30156, 678-306-4083,

## Attachment "F-2"- Defendant's witnesses

The Defendant may have the following persons present at trial, to wit:

Defendant will have present:  None

Defendant may have present:

1. Such evidentiary foundation witnesses as are contemplated by the Court's Order of June 10, 2009 regarding the General Mills Handbrake Video

2. Charles Adams - 5175 Huntfield Road, Evans, Georgia

3. Gary Beale - 5906 Yarmouth, Toledo, Ohio 43623

4. Richard Beall - 8211 SW 192nd St, Miami, Florida 33157

5. Chuck Brown - 3046 Pebble Court, Maumee, Ohio

6. Eddie Butler - 2535 Turner Ridge Road, Covington, Georgia

7. Charles Cherry - 8311 Hunters Meadow Court, Indianapolis, Indiana 46259

8. Scott Dormire - 4448 Mira Vista Drive, Frisco, Texas 75034

9. Mo Draper - 115 Graystone Drive, Covington, Georgia 30014

10. Mark Elrod - 2763 Old Dallas Rd, Marietta, Georgia 30064

11. David Engle - 461 S. Bethany Rd, Locust Grove, Georgia 30248

12. Michael Fasseszke - 700 Maple Crest Drive, Frankenmuth, Michigan 48734

13. William Gerstmyer - 1541 Greyfield Trace, Snellville, Georgia 30078

14. John Henderson - 2685 Turner Valley Circle SW, Conyers, Georgia 30094

15. Dave Hilfiger - 11310 Stonebriar Dr, Charlotte, North Carolina 28277

16. Joe Holton - 6266 Dorsett Shoals Road, Lot 209, Douglasville, Georgia

17. Lawrence Jeffords - 2454 Country Club Dr SE, Conyers, Georgia 30013

18. Charles Jobes - 9416 Meadowmont View Drive, Charlotte, North Carolina 28269

19. Jason Jones - 4812 Wrens Highway, Thomson, Georgia

20. Bobi Miesel - 583 Saint Andrews Ct NE, Conyers, Georgia 30094

21. Bryan Nutt - 123 Barley Mill Road, Moore, South Carolina

22. Mike O'Brien - 1469 Rosewood Creek Dr, Marietta, Georgia

23. George Parades - 27773 Schriber Street, Walbridge, Ohio 43465

24. Foster Peterson - 3010 Oak Tree Court, Marietta, Georgia 30066

25. Greg Poynter - 46 Old Chestnut Lane, Dallas, Georgia

26. Greg Rueda - 6616 Pinewood Drive, Pearl River, Louisiana

27. Hugh Stephens - 2925 Ben Arron Dr, Dacula, Georgia 30019

28. Horace Taylor - 1589 Cuttersville Drive, Lithonia, Georgia and 1097 Harrison Road, Thomson, Georgia

29. Rodney Turk - 10 Five Oaks Drive, Covington, Georgia

30. Wayne Willis - 7271 Oak Lane, Holland, Ohio

31.   Harold Winters - 195 Carrie Drive, Dallas, Georgia 30157

32.   Josh Winters - 3306 Wards Church Road, Blackshear, Georgia 31516

33.   Officer Brent Fuesting - Covington Police Department, 1143 Oak St NE, Covington, Georgia 30014

34.   Officer C. Smith - Covington Police Department, 1143 Oak St NE, Covington, Georgia 30014

35.   Officer W. Wagstaff - Covington Police Department, 1143 Oak St NE, Covington, Georgia 30014

36.   Officer Paul Dailey - Covington Police Department, 1143 Oak St NE, Covington, Georgia 30014

37.   E. Moore- Covington Police Department, 15200 Industrial Park Blvd, Covington, Georgia 30014

38.   Lt. George R. Jefferson-Covington Fire Department, 2101 Pace Street Covington, Georgia 30014

39.   David R. Cunter- Covington Fire Department, 2101 Pace Street Covington, Georgia 30014

40.   James M. Cox-Covington Fire Department, 2101 Pace Street Covington, Georgia 30014

41.   Matthew W. Grimes- Covington Fire Department, 2101 Pace Street Covington, Georgia 30014

42.   LT Robert G. Canady- Covington Fire Department, 2101 Pace Street Covington, Georgia 30014

43.   Thomas A. Hanson- Covington Fire Department, 2101 Pace Street Covington, Georgia 30014

44.   Jody R. Roberson- Covington Fire Department, 2101 Pace Street Covington, Georgia 30014

45.   John W. Stanzilis, Jr. G.R.L.S. #2109, Solar Land Surveying
       Company, P.O. Box 723993, Atlanta, Georgia 31139

46.   Alicia Osborne, General Mills, Inc., 15200 Industrial Park Blvd,
       Covington, Georgia 30209

47.   Lee Brinkley Bryant, M.Ed., 2500 West Broad Street, Suite 302,
       Athens, Georgia 30606

## Expert Witnesses

48.   Charles Cherry - FRA inspection procedures and analysis of
       Plaintiff's expert witness allegations as set forth in Rule 26
       disclosures [220, 251] and deposition testimony [370].

49.   Foster Peterson - analysis of incident and allegations of Plaintiff's
       expert witnesses as set forth in Rule 26 disclosure [219, 219-1] and
       deposition testimony [369].

50.   Bryan Nutt - analysis of incident, inspection and testing of AEX
       7136, and allegations of Plaintiff's expert witnesses as set forth in
       Rule 26 disclosure [229, 229-1] and deposition testimony [356].

51.   David Engle - opinion that Group N handbrake "was insufficient to
       meet AAR requirements for [AEX 7136] as modified," and that "even
       assuming braking system was properly adjusted it would not have
       met minimum requirements", as set forth in his Rule 26 disclosure
       and deposition. [172-2, 319]  Also, Mr. Engle's opinion that General
       Mills videotape of AEX 7136 shows an efficient handbrake, that
       asymmetry in WABCO truck-mounted brake system is common and
       is not considered a defect, and that Plaintiff and Rodney Turk did
       not appear knowledgeable about freight cars, as set forth in his
       deposition [319].

52.   Michael O'Brien - opinion that General Mills videotape of AEX 7136
       shows an efficient handbrake, as set forth in his deposition [320].

## **Attachment "G-1"- Plaintiff's exhibits**

| Ex. # | Description | Deposition |
|---|---|---|
| 1 | CSX#1-Ill. GM Railshed diagram | D. Burchfield, Gerstmyer, Turk |
| 2 | CSX#2- Color Photo of angle cock | D. Burchfield |
| 3 | CSX#3 Color Photo-Trackmobile | D. Burchfield |
| 10 | Google Maps- Covington, Georgia | Jones, |
| 11 | Google Maps- Satellite View- Covington | Jones, Taylor |
| 12 | Illustration-Railshed- GM/O 139 241 – identical to number 1 | Jeffords, Jones, |
| 13 | Illustration- brake | Adams, Jeffords, Jones, |
| 14 | Color Photo- red chain - released | Adams, Gerstmyer, Jeffords, Jones, Taylor |
| 15 | Color Photo- Handbrake tightened | Jones, |
| 16 | Color Photo- Handbrake wheel and chain | Adams, Beale, Cherry (6/6/08), Gerstmyer, Holton, Jeffords, Jones, Poynter, Taylor, Willis, J. Winters |
| 17 | Color Photo-railcar and trackmobile at wreck site | Jeffords, Jones, Taylor |
| 18 | Illustration- Railshed – same as 1 and 12 | Jones, |
| 19 | CSX Switch Request for 06/03/2005 | Adams, Jones, Taylor |
| 20 | Work Order Number 295448 | Adams, Jones, Taylor, H. Winters |
| 21 | Railcar Placement and Identification- GM | Adams, Jones, |
| 22 | Statement of Jason Jones – identification for impeachment | Cherry (6/6/08), Jones, |

| 23 | Color Photo- 2 railcars and trackmobile at wreck site | Holton, Jones, Taylor, Turk |
| 24 | Color Photo- Railcar AEX 7136 A end at wreck site | Jones, |
| 25 | Color Photo- GM track looking north from wreck site | Adams, Jones, Taylor |
| 26 | Color Photo- GM track to railshed showing switches looking north | Jones, Turk |
| 27 | Color Photo- railcar GPFX 0897 B end | Jones, |
| 28 | Color Photo- 2 rail cars and trackmobile at wreck site | Holton |
| 29 | Color Photo- Derailed AEX 7318 at wreck site | Beale |
| 30 | Color Photo- hand brake- derailed 7318 | Beale |
| 35 | Statement of Lawrence Jeffords for impeachment purposes | Cherry (6/6/08), Jeffords, |
| 36 | Gerstmeyers Color Photos A-OO – day of event | Gerstmyer, Jeffords, Turk, H. Winters |
| 37 | Davis Color Photos A-E – day of event | Gerstmyer, Jeffords |
| 38 | Inspection of Freight Car 06/06/05 #7318 | Gerstmyer, Reuda, H. Winters, J. Winters |
| 39 | Inspection of Freight Car 06/06/05 #7136 | Cherry (6/6/08), Gerstmyer, Reuda, Willis, H. Winters |
| 42 | CSX bills to General Mills | Reuda, H. Winters |
| 43 | Color illustration of hand brake – with bell crank highlighted | |
| 44 | Redacted Statement – for impeachment | Turk |
| 45 | US Department of Labor- OSHA Statement – for impeachment | Butler, Turk |
| 46 | Color Photo- Trackmobile from side. | Turk |
| 47 | Color Photo-Trackmobile- Front | Turk |

| 48 | Color Photo- Trackmobile- Control Panel | Turk |
| 49 | Color Photo- Trackmobile- Control Panel | Turk |
| 50 | Color Photo- Inside of Trackmobile through window | Turk |
| 51 | Drawing- Trackmobile - control panel | Turk |
| 52 | Drawing- Inside of Trackmobile-Seats | Turk |
| 53 | Color Photo- handbrake chain on 7136 at wreck site showing partial release | Turk |
| 54 | Color Photo- handbrake testing by Engle | Turk |
| 57 | FRA Inspection (hours of service) | Winters |
| 58 | 30 b6 notice - Not relevant or admissible | |
| 59 | Charles Cherry's Docs *sep Notebook – all admissible documents are otherwise numbered | Cherry (6/6/08), J. Winters |
| 60 | Drawing of Bell Crank | Cherry (6/6/08), J. Winters |
| 61 | 3 color photos related to David Engle investigation | Cherry (6/6/08) |
| 62 | 3 color photos- showing impact of bell crank and sill of car – (dead pull) | Cherry (6/6/08), J. Winters |
| 63 | Drawing - Not relevant or admissible | |
| 64 | CSX Billing Repair Card(TAI doc#38) | Cherry (6/6/08), Parades, H. Winters |
| 65 | CSX Billing Repair Card (TAI doc #35) | Cherry (6/6/08), Holton |
| 66 | CSX Billing Repair Card (TAI doc#33) | Cherry (6/6/08) |
| 67 | CRB History 7136 (pg 5) | Cherry (6/6/08), H. Winters |
| 68 | CRB History 7136 (pg 6) | Cherry (6/6/08), H. Winters |

| 69 | Derailment file | Holton, H. Winters |
| 70 | 6.20.08 CSX Docs Prod. (1-8)-CRB Hist. | Holton, Parades, Poynter, H. Winters, J. Winters |
| 71 | Illustration brake lever | Holton, J. Winters |
| 72 | Carmen Course- Student Handout | Holton, J. Winters |
| 73 | Copy of cd face- Single Car Air Brake test – video of process of doing the test | Poynter, J. Winters |
| 74 | Color Photo- showing evidence of dead pull | Poynter, J. Winters |
| 75 | Rule 13-Hand Brakes- geared & nongeared | Poynter, H. Winters, J. Winters |
| 76 | 30b6 - Not relevant or admissible | |
| 77 | Umler Inquiry pgs1-3 | H. Winters |
| 78 | Correct AAR-CRB History | H. Winters |
| 79 | Correct AAR-CRB History | Willis, H. Winters |
| 81 | Willard Billing records | Willard |
| 83 | Willard- Life Care Plan | Willard |
| 85 | Willard File | Willard |
| 102 | Andersons Documents 00033-00064 (AAR hx for 7136) | Beale |
| 103 (a) | Brake Shoe Static Test 10/2005 | Beale, Nutt (9/11/08), Willis, |
| 105 | TNC Engineering Client Page | Nutt (9/11/08) |
| 108 | Millennium Rail- test Hollidaysburg – Not relevant unless CSX is allowed to argue negligence of the Andersons | Lingenfelter (a.m.), Nutt (9/11/08) |

| 118 | David Engle Preliminary Rule 26 Report | |
| 121 | Hand drawing Bell Crank | Engle |
| 122 | Interswiss test | Engle |
| 124 | Engle- hand drawings and notes | Engle |
| 125 | Jim Shoe Force Measurement system | Engle |
| 128 | Hand drawing of bell crank | Engle |
| 129 | Engle's Notes- GM | Engle |
| 130 | Fax from Engle to Robert and Jim Reese | Engle |
| 133 | Black and White photo | Engle |
| 134 | Black and White photo | Engle |
| 135 | Black and White photo | Engle |
| 136 | Color photos | Engle |
| 146A | Written Notes – Elrod | Elrod |
| 147 | Invoice ATS to WPT | Elrod |
| 148 | Project Detail Report | Elrod |
| 149 | ATS Work Order 6/19/08 | Elrod |
| 150 | ATS Lab Data Sheet | Elrod |
| 151 | ATS Lab Data Sheet 07/08 | Elrod |
| 152 | ATS- Lab Data Sheet 07/08 | Elrod |

| 153 | ATS- Lab Data Sheet 07/08 | Elrod |
| 154 | Color Photo brake | Elrod |
| 155 | ATS- Illustration | Elrod |
| 156 | ATS- Illustration | Elrod |
| 157 | color photo of bell crank on railcar | Elrod |
| 158 | color photos derailed wheels from railcar | Elrod |
| 159 | Color photo derailed trackmobile | Elrod |
| 160 | Color photo handbrake | Elrod |
| 161 | Color photo testing in the snow | Elrod |
| 163 | Hand drawing of Hard Stop | Elrod |
| 164 | Illustration of hand brake test | Elrod |
| 166 | Evidence Transmittal 6/08 | Elrod |
| 167 | Written notes | Elrod |
| 168 | 17 color photos of Elrod Brake | Elrod |
| 169 | Color photo of test handbrake | Elrod |
| 170 | 39 color photos of ATS equipment | Elrod |
| 171 | Color photo trackmobile and railcar | Elrod |
| 172 | Color photo trackmobile and 2 railcars | Elrod |
| 177 | Michael O'Brien Testimonies | O'Brien |

| | | |
|---|---|---|
| 178 | Michael O'Brien Fee Schedule | O'Brien |
| 179 | Color photo of 7136 w/ruler | O'Brien |
| 180 | Color photo of 7136 w/ruler | O'Brien |
| 181 | Color photo | O'Brien |
| 182 | Color photo | O'Brien |
| 183 | Color Photo | O'Brien |
| 184 | Color photo- back of 7136 | O'Brien |
| 185 | Color photo | O'Brien |
| 186 | Color photo | O'Brien |
| 187 | Color photo-bell crank | O'Brien |
| 188 | Color photo rust and bell crank | O'Brien |
| 189 | Illustration of bell crank | O'Brien |
| 190 | Color photo of bell crank and rust | O'Brien |
| 191 | Stdnt wrkbk- Freight car brake rigging | O'Brien |
| 196 | Brake Shoe Test 10/13/05 | Nutt (10.1.08) |
| 197 | Hand Drawing of rail line | Nutt (10.1.08) |
| 199 | Hand Drawing of Handbrake | Nutt (10.1.08) |
| 200 | Color Photo of bell crank and chain | Nutt (10.1.08) |
| 202 | Inter Swiss, LTD, Jim Shoe Calibration | Nutt (10.1.08) |

| 203 | Color Photo crow bar on bell crank | Nutt (10.1.08) |
| 204 | Color Photo of hand brake | Nutt (10.1.08) |
| 205 | Color Photo of hand brake * | Nutt (10.1.08), Parades |
| 206 | Color Photo of AEX 1136 | Dormire, |
| 207 | Color Photo of Tracks | Dormire |
| 208 | Color Photo of AEX 7136 | Dormire |
| 209 | Color Photo of derailed car | Dormire |
| 210 | Color Photo of AEX 7318 | Dormire |
| 211 | Color Photo of AEX 7318 | Dormire |
| 212 | Color Photo of derailed car | Dormire |
| 213 | Color Photo of rail car | Dormire |
| 214 | Color Photo of trackmobile | Dormire |
| 215 | Drawing | Lingenfelter (p.m.) |
| 235 | Rule 26 2nd Supp Rogg-Cherry | |
| 236 | Illustration hand brake | |
| 237 | Pamphlet No. GHBM-12-99 | Cherry (10/10/08) |
| 238 | Color photo of bell crank | Cherry (10/10/08) |
| 239 | 9.15.08 ltr to Casey from Peterson | Peterson |
| 240 | 9.26.08 Ltr to Casey from Peterson | Peterson |

| 241 | Foster Peterson CV | Peterson |
|---|---|---|
| 242 | Foster Peterson testimony history | Peterson |
| 243 | Subpoena to Foster Peterson | Peterson |
| 244 | Invoices from Full Service RR Cons. | Peterson |
| 245 | Color Photo A-DD | Peterson |
| 246 | Hand drawing of Railcars | Peterson |
| 247 | Written notes-calculations | Peterson |
| 248 | The General Mills Photographs | |
| 249 | Photographs of David Engle's August 2005 Testing | |
| 250 | Photographs and video of David Engle's March 2008 Testing | |
| 251 | Photographs and video of David Engle's November 2008 Testing | |
| 252 | Photographs and video of Mike O'Brien's March 2008 testing | |
| 253 | Photographs and video of Mark Elrod's Testing | |
| 254 | Plaintiff's Expert Witnesses' Files – to the extent not otherwise objectionable | |
| 255 | Annuity Mortality Table, 1949 Ultimate | |
| 256 | Canadian TSB REPORT R96C0172 | |
| 257 | All of Plaintiff's medical and rehabilitation records, bills and illustration | |
| 258 | Documents produced with and/or relied upon by Plaintiff's designated experts Engle, O'Brien, Elrod, Rushing and Willard | |
| 259 | Billing records from CSXT for Rail Sciences, Inc. | |

259     Railshead drawing with Turk markings
        (Plaintiff's 1A)
260     Railshead drawing with Turk markings
        (Plaintiff's 1B)

**LEARNED TREATISES**

**CANADIAN RAILWAY REPORT ZX**

**ATTACHMENT "G-1A"**
**DEFENDANT'S OBJECTIONS TO**
**PLAINTIFFS' PROPOSED TRIAL EXHIBITS**
<u>Attachment "G-1A"</u>

| Ex. # | Description /Objection |
|-------|------------------------|
| 13 | Objection - Not relevant |
| 15 | Objection - Authenticity, foundation, relevance, cropped photo |
| 16 | Objection - Authenticity, foundation, relevance, cropped photo |
| 22 | Objection - Unsigned statement, relevance, hearsay |
| 35 | Objection - Unsigned statement, relevance, hearsay |
| 42 | Objection - Relevance |
| 43 | Objection - Not Relevant |
| 57 | Objection - Relevance, records for day after accident |
| 60 | Objection - Foundation, relevance, counsel drawing |
| 62 | Objection - Authenticity, Relevance, Foundation |
| 67 | Objection - Relevance |
| 68 | Objection - Relevance |

| Ex. # | Description /Objection |
|-------|------------------------|
| 69 | Objection - Relevance, Billing |
| 70 | Objection - 6.20.08 CSX Docs Prod. (1-8)-CRB Hist.  Relevance - Entries for 9-5-05 |
| 71 | Objection - Relevance, incomplete, out of context, foundation |
| 72 | Objection - Relevance |
| 74 | Objection - Authenticity, Relevance, Foundation |
| 78 | Objection - Correct AAR-CRB History Relevance - Entries for 9-6-05 |
| 83 | Objection - Duplicative of Testimony |
| 85 | Objection - Duplicative of Testimony |
| 105 | Objection - Relevance |
| 108 | Objection - Relevance, foundation, authenticity |
| 118 | Objection - Duplicative of testimony |
| 121 | Objection - Foundation, relevance |
| 122 | Objection - Foundation, relevance, authenticity |
| 124 | Objection - Duplicative of testimony |
| 128 | Objection - Relevance, duplicative of testimony, misleading |

| Ex. # | Description/Objection |
|-------|----------------------|
| 129 | Objection - Duplicative of testimony |
| 130 | Objection - Duplicative of testimony |
| 135 | Objection - Foundation, relevance, authenticity |
| 136 | Objections to specific photos: Exhibit 329 - authenticity, foundation, relevance Exhibit 298 - unduly prejudicial Exhibit 321 - authenticity, relevance, foundation Exhibit 320 - unduly prejudicial Exhibit 293 - unduly prejudicial Exhibit 294 unduly prejudicial Exhibit 295 - unduly prejudicial Exhibit 296 - unduly prejudicial Exhibit 297 - unduly prejudicial Exhibit 299 - unduly prejudicial Exhibit 300 - unduly prejudicial Exhibit 301 - unduly prejudicial Exhibit 302 - unduly prejudicial |
| 146A | Objection - Duplicative of testimony |
| 147 | Objection - Relevance if Elrod testimony excluded |
| 148 | Objection - Relevance if Elrod testimony excluded |
| 149 | Objection - ATS Work Order 6/19/08 - Relevance if Elrod testimony excluded |
| 150 | Objection - Duplicative of testimony, relevance |

| Ex. # | Description / Objection |
|-------|------------------------|
| 151 | Objection - ATS Lab Data Sheet 07/08 - Relevance if Elrod testimony excluded |
| 152 | Objection - Duplicative of testimony |
| 153 | Objection - Duplicative of testimony |
| 154 | Objection - Relevance, foundation |
| 155 | Objection - Duplicative of testimony |
| 156 | Objection - Duplicative of testimony |
| 157 | Objection - Foundation, relevance, authenticity |
| 160 | Objection - Foundation, relevance, authenticity |
| 163 | Objection - Duplicative of testimony |
| 164 | Objection - Duplicative of testimony |
| 166 | Objection - Relevance |
| 167 | Objection - Written notes - Duplicative of testimony |
| 169 | Objection - Relevance, foundation |
| 170 | Objection - Not produced |
| 177 | Objection - Duplicative of testimony |
| 178 | Objection - Duplicative of testimony |

| Ex. # | Description/Objection |
|-------|----------------------|
| 179 | Objection - Relevance |
| 180 | Objection - Relevance |
| 181 | Objection - Relevance |
| 182 | Objection - Relevance |
| 183 | Objection - Relevance |
| 184 | Objection - Relevance |
| 185 | Objection - Relevance |
| 186 | Objection - Relevance |
| 187 | Objection - Relevance, foundation, authenticity |
| 188 | Objection - Relevance, foundation, authenticity |
| 189 | Objection - Relevance, foundation, authenticity, hearsay |
| 190 | Objection - Relevance, foundation, authenticity |
| 191 | Objection - Hearsay, foundation, authenticity |
| 203 | Objection - Foundation, relevance, authenticity |
| 204 | Objection - Foundation, relevance, authenticity |

| Ex. # | Description /Objection |
|-------|------------------------|
| 205 | Objection - Foundation, relevance, authenticity |
| 215 | Objection - Not produced, relevance, duplicative of testimony |
| 235 | Objection - Discovery pleadings, relevance |
| 237 | Objection - Foundation, authenticity, relevance |
| 238 | Objection - Foundation, authenticity, relevance |
| 242 | Objection - Discovery pleading, relevance |
| 243 | Objection - Discovery pleading, relevance |
| 244 | Objection - Invoices from Full Service RR Cons. - relevance |
| 245 | Objection - Color Photo A-DD - object to photos J-DD, relevance |
| 246 | Objection - Hand drawing of Railcars - duplicative of testimony, relevance |
| 248 | Objection - Foundation, authenticity |
| 249 | Objection - Photographs of David Engle's August 2005 Testing except as previously objected to above or not produced |
| 250 | Objection - Photographs and video of David Engle's March 2008 Testing - object, not produced |

| Ex. # | Description/Objection |
|-------|----------------------|
| 251 | Objection - Photographs and video of David Engle's November 2008 Testing except as previously objected to above, or not produced, videos not produced |
| 252 | Objection - Photographs and video of Mike O'Brien's March 2008 testing, except as previously objected to above, or not produced, video not produced |
| 253 | Objection - Photographs and video of Mark Elrod's Testing, except as previously objected to above, or not produced |
| 254 | Objection - Plaintiff's Expert Witnesses' Files – to the extent not otherwise objectionable |

## Attachment "G-2"- Defendant's Exhibits

The Parties had agreed to attempt to retain the same joint sequential numbering for trial exhibits as was created during the course of multiple depositions. Accordingly, both Plaintiff's and Defendant's Exhibit lists and objections refer to the same document or thing from Exhibit Number 1 through Exhibit number 247. Within the two exhibit lists there are a number of exhibits that the parties agree upon. There are a number of exhibits that both parties agree are not relevant or admissible and will be withdrawn. The parties have stated their objections to the remaining exhibits as per the Northern District Rules.

| Ex. # | Description | Deposition |
|-------|-------------|------------|
| 1 | CSX#1-Ill. GM Railshed diagram | D. Burchfield, Gerstmyer, Turk |
| 2 | CSX#2- Color Photo of angle cock | D. Burchfield |
| 3 | CSX#3 Color Photo -Trackmobile | D. Burchfield |
| 4 | CSX #4 - Doug Burchfield's Test - Railcar Mover Training | D. Burchfield |
| 5 | CSX#5 - Barloworld Trackmobile Hands on Training | D. Burchfield |
| 6 | CSX#6 - 3 Color Photos - Trackmobile Hands on Training | D. Burchfield |
| 7 | CSX#7 - Trackmobile Manual | D. Burchfield, Turk |
| 8 | CSX#8 - Barloworld Materials | D. Burchfield |

| Ex. # | Description | Deposition |
|---|---|---|
| 9 | General Mills Handbrake Video | |
| 10 | Google Maps - Covington, Georgia | Jones, |
| 11 | Google Maps - Satellite View- Covington | Jones, Taylor |
| 12 | Illustration-Railshed - GM/O 139 241 – identical to number 1 | Jeffords, Jones, |
| 13 | Objection - Not relevant | |
| 14 | Color Photo - red chain - released | Adams, Gerstmyer, Jeffords, Jones, Taylor |
| 15 | Objection - Authenticity, foundation, relevance, cropped photo | |
| 16 | Objection - Authenticity, foundation, relevance, cropped photo | |
| 17 | Color Photo-railcar and trackmobile at accident site | Poynter, Taylor, Willis, J. Winters, Jeffords, Jones, Taylor |
| 18 | Illustration- Railshed – same as 1 and 12 | Jones, |
| 19 | CSX Switch Request for 06/03/2005 | Adams, Jones, Taylor |
| 20 | Work Order Number 295448 | Adams, Jones, Taylor, H. Winters |
| 21 | Railcar Placement and Identification- GM | Adams, Jones, |
| 22 | Objection - Unsigned statement, relevance, hearsay | |
| 23 | Color Photo - 2 railcars and trackmobile at accident site | Holton, Jones, Taylor, Turk |
| 24 | Color Photo - Railcar AEX 7136 A end at accident site | Jones, |
| 25 | Color Photo - GM track looking north from accident site | Adams, Jones, Taylor |
| 26 | Color Photo - GM track to railshed showing switches looking north | Jones, Turk |

| Ex. # | Description | Deposition |
|---|---|---|
| 27 | Color Photo- railcar GPFX 0897 B end | Jones, |
| 28 | Color Photo- 2 rail cars and trackmobile at accident site | Holton |
| 29 | Color Photo - Derailed AEX 7318 at accident site | Beale |
| 30 | Color Photo- hand brake - derailed 7318 | Beale |
| 31 | Objection - 30 b 6 notice - Not relevant or admissible | |
| 32 | Objection - Email - Not relevant or admissible | |
| 33 | Objection - Email - Not relevant or admissible | |
| 34 | Objection - Letter to court - Not relevant or admissible | |
| 35 | Objection - Unsigned statement, relevance, hearsay | |
| 36 | Gerstmeyers Color Photos A-OO – day of event | Gerstmyer, Jeffords, Turk, H. Winters |
| 37 | Davis Color Photos A-E – day of event | Gerstmyer, Jeffords |
| 38 | Inspection of Freight Car 06/06/05 #7318 | Gerstmyer, Reuda, H. Winters, J. Winters |
| 39 | Inspection of Freight Car 06/06/05 #7136 | Cherry (6/6/08), Gerstmyer, Reuda, Willis, H. Winters |
| 40 | Rule 13 - Handbrakes | Beale, Nutt (9/11/08) Reuda, Willis |
| 41 | Application Form for AR Approval | Reuda |
| 42 | Objection - Relevance | |
| 43 | Objection - Not Relevant | |
| 44 | Objection - Redacted statement – for impeachment | Turk |

| Ex. # | Description | Deposition |
|-------|-------------|------------|
| 45 | US Department of Labor- OSHA Statement – for impeachment | Butler, Turk |
| 46 | Color Photo- Trackmobile from side | Turk |
| 47 | Color Photo-Trackmobile - Front | Turk |
| 48 | Color Photo- Trackmobile - Control Panel | Turk |
| 49 | Color Photo- Trackmobile- Control Panel | Turk |
| 50 | Color Photo - Inside of Trackmobile through window | Turk |
| 51 | Drawing - Trackmobile - control panel | Turk |
| 52 | Drawing - Inside of Trackmobile-Seats | Turk |
| 53 | Color Photo - handbrake chain on 7136 at accident site | Turk |
| 54 | Color Photo - handbrake testing by Engle | Turk |
| 55 | Objection - Depo notice - Not relevant or admissible | |
| 56 | Objection - Privilege log - Not relevant or admissible | |
| 57 | Objection - Relevance, records for day after accident | |
| 58 | Objection - 30 b6 notice - Not relevant or admissible | |
| 59 | Objection - Charles Cherry's Docs *sep Notebook – all admissible documents are otherwise numbered | Cherry (6/6/08), J. Winters |
| 60 | Objection - Foundation, relevance, counsel drawing | |
| 61 | 3 color photos related to David Engle investigation | Cherry (6/6/08) |
| 62 | Objection - Authenticity, Relevance, Foundation | |

| Ex. # | Description | Deposition |
|-------|-------------|------------|
| 63 | Drawing of Handbrake Chain | Cherry (6/6/08) |
| 64 | CSX Billing Repair Card(TAI doc#38) | Cherry (6/6/08), Parades, H. Winters |
| 65 | CSX Billing Repair Card (TAI doc #35) | Cherry (6/6/08), Holton |
| 66 | CSX Billing Repair Card (TAI doc#33) | Cherry (6/6/08) |
| 67 | Objection - Relevance | |
| 68 | Objection - Relevance | |
| 69 | Objection - Relevance, Billing | |
| 70 | Objection - 6.20.08 CSX Docs Prod. (1-8)- CRB Hist.  Relevance - Entries for 9-5-05 | Holton, Parades, Poynter, H. Winters, J. Winters |
| 71 | Objection - Relevance, incomplete, out of context, foundation | |
| 72 | Objection - Relevance | |
| 73 | Copy of cd face - Single Car Air Brake test – video of process of doing the test | Poynter, J. Winters |
| 74 | Objection - Authenticity, Relevance, Foundation | |
| 75 | Rule 13-Hand Brakes - geared & nongeared | Poynter, H. Winters, J. Winters |
| 76 | Objection - 30b6 - Not relevant or admissible | |
| 77 | Umler Inquiry pgs1-3 | H. Winters |
| 78 | Correct AAR-CRB History Relevance - Entries for 9-6-05 | H. Winters |
| 79 | Correct AAR-CRB History | Willis, H. Winters |
| 80 | Objection - Depo notice - Not relevant or admissible | |

| Ex. # | Description | Deposition |
|-------|-------------|------------|
| 81 | Willard Billing records | Willard |
| 82 | Willard list of cases - Testimony and Depositions | Willard |
| 83 | Objection - Duplicative of Testimony | |
| 84 | Attorney correspondence | Willard |
| 85 | Objection - Duplicative of Testimony | |
| 86 | Brake Shoe Force Test | Beale, Nutt (9/11/08), Willis |
| 87 | Scope of work - Star of The West | Beale, Nutt (9/11/08) |
| 88 | TNC - Engle letter to TTIC 9/12/01 | Beale, Nutt (9/11/08), Willis |
| 89 | The Andersons - comments and recommendations | Beale |
| 90 | The Andersons - AAR App. for Approval Brakes | Beale, Nutt (9/11/08), Willis |
| 91 | TNC Engle letter to Wayne Willis 3/30/01 | Beale, Nutt (9/11/08) |
| 92 | The Andersons Full Service Agreement | Beale, Brown, Passeszke |
| 93 | Scope of work | Beale, Nutt (9/11/08) |
| 94 | Objection - Not relevant or admissible | |
| 95 | Scope of work LaRoche Industries | Beale |
| 96 | The Andersons maintenance repairs by car | Beale |
| 97 | The Andersons Railcar Repair Shop | Beale |
| 98 | Objection - Not relevant or admissible | |

| Ex. # | Description | Deposition |
|-------|-------------|------------|
| 99 | Summary of repairs - AEX007136 | Beale |
| 100 | Objection - Not relevant or admissible | |
| 101 | The Andersons maintenance repairs | Beale, Nutt (9/11/08) |
| 102 | Andersons Documents 00033-00064 (AAR hx for 7136) | Beale |
| 103 | Brake Shoe Static Test 10/2005 | Beale, Nutt (9/11/08), Willis, |
| 104 | E-mail correspondence 2/7/06 to Betsy Hall | Willis |
| 105 | Objection - Relevance | |
| 106 | Objection - Not relevant or admissible | |
| 107 | Objection - Not relevant or admissible | |
| 108 | Objection - Relevance, foundation, authenticity | |
| 109 | 10/5/06 letter from Powell to Nutt | Nutt (9/11/08) |
| 110 | Objection - Not relevant or admissible | |
| 111 | Objection - Not relevant or admissible | |
| 112 | 6/10/06 letter from AAR to Nutt | Nutt (9/11/08) |
| 113 | Objection - Not relevant or admissible | |
| 114 | Objection - Not relevant or admissible | |
| 115 | Objection - Not relevant or admissible | |
| 116 | Objection - Not relevant or admissible | |

| Ex. # | Description | Deposition |
|-------|-------------|------------|
| 117 | Objection - Not relevant or admissible | |
| 118 | Objection - Duplicative of testimony | |
| 119 | Objection - Not relevant or admissible | |
| 120 | Objection - Not relevant or admissible | |
| 121 | Objection - Foundation, relevance | |
| 122 | Objection - Foundation, relevance, authenticity | |
| 123 | Fax from Engle to Interswiss | Engle |
| 124 | Objection - Duplicative of testimony | |
| 125 | Jim Shoe Force Measurement system | Engle |
| 126 | 3/24/08 Email from Rios to Engle | Engle |
| 127 | Objection - Not relevant or admissible | Engle |
| 128 | Objection - Relevance, duplicative of testimony, misleading | |
| 129 | Objection - Duplicative of testimony | |
| 130 | Objection - Duplicative of testimony | |
| 131 | Fax from Engle to Robert and Reece | Engle |
| 132 | 8/23/05 fax from Engle to Robert | Engle |
| 133 | Black and White photo | Engle |
| 134 | Black and White photo | Engle |

| Ex. # | Description | Deposition |
|-------|-------------|------------|
| 135 | Objection - Foundation, relevance, authenticity | |
| 136 | Color photos - Defendant objects to selected photos as listed on objection page | Engle |
| 137 | Objection - Not relevant or admissible | Engle |
| 138 | AAR Standards and Recommended Practices | Engle |
| 139 | Env label to Engle from Butler Wooten | Engle |
| 140 | Objection - Not relevant or admissible | Hilfiger |
| 141 | Purchase ticket for Trackmobile | Hilfiger |
| 142 | Training Roster - Trackmobile | Jobes |
| 143 | Operator daily check list | Jobes |
| 144 | Handwritten letter from Gary Burkholder | Jobes |
| 145 | Objection - Not relevant or admissible | Jobes |
| 146 | Barloworld Railcar moves crew training | Jobes |
| 146A | Objection - Duplicative of testimony | Elrod |
| 147 | Objection - Relevance if Elrod testimony excluded | Elrod |
| 148 | Objection - Relevance if Elrod testimony excluded | Elrod |
| 149 | Objection - ATS Work Order 6/19/08 - Relevance if Elrod testimony excluded | Elrod |
| 150 | Objection - Duplicative of testimony, relevance | |
| 151 | Objection - ATS Lab Data Sheet 07/08 - Relevance if Elrod testimony excluded | Elrod |

| Ex. # | Description | Deposition |
|-------|-------------|------------|
| 152 | Objection - Duplicative of testimony | |
| 153 | Objection - Duplicative of testimony | |
| 154 | Objection - Relevance, foundation | |
| 155 | Objection - Duplicative of testimony | |
| 156 | Objection - Duplicative of testimony | |
| 157 | Objection - Foundation, relevance, authenticity | |
| 158 | Color photos derailed wheels from railcar | Elrod |
| 159 | Color photo derailed trackmobile | Elrod |
| 160 | Objection - Foundation, relevance, authenticity | |
| 161 | Color photo testing in the snow | Elrod |
| 162 | Illustration of crank | |
| 163 | Objection - Duplicative of testimony | |
| 164 | Objection - Duplicative of testimony | |
| 165 | Illustration of Model 9300 | |
| 166 | Objection - Relevance | |
| 167 | Objection - Written notes - Duplicative of testimony | Elrod |
| 168 | 17 color photos of Elrod Brake | Elrod |
| 169 | Objection - Relevance, foundation | |

| Ex. # | Description | Deposition |
|-------|-------------|------------|
| 170 | Objection - Not produced | |
| 171 | Color photo trackmobile and railcar | Elrod |
| 172 | Color photo trackmobile and 2 railcars | Elrod |
| 173 | Objection - Not relevant or admissible | GM Depo- cancelled |
| 174 | Objection - Not relevant or admissible | GM Depo- cancelled |
| 175 | Objection - Not relevant or admissible | GM Depo- cancelled |
| 176 | Objection - Not relevant or admissible | GM Depo- cancelled |
| 177 | Objection - Duplicative of testimony | |
| 178 | Objection - Duplicative of testimony | |
| 179 | Objection - Relevance | |
| 180 | Objection - Relevance | |
| 181 | Objection - Relevance | |
| 182 | Objection - Relevance | |
| 183 | Objection - Relevance | |
| 184 | Objection - Relevance | |
| 185 | Objection - Relevance | |
| 186 | Objection - Relevance | |
| 187 | Objection - Relevance, foundation, authenticity | |

| Ex. # | Description | Deposition |
|-------|-------------|------------|
| 188 | Objection - Relevance, foundation, authenticity | |
| 189 | Objection - Relevance, foundation, authenticity, hearsay | |
| 190 | Objection - Relevance, foundation, authenticity | |
| 191 | Objection - Hearsay, foundation, authenticity | |
| 192 | TNC Engineering invoice | Nutt (10.1.08) |
| 193 | Bryan Nutt CV | Nutt (10.1.08) |
| 194 | 7136 Engineering Report of handbrake | Nutt (10.1.08) |
| 195 | Preliminary expert report of Bryan Nutt | Nutt (10.1.08) |
| 196 | Brake Shoe Test 10/13/05 | Nutt (10.1.08) |
| 197 | Hand Drawing of rail line | Nutt (10.1.08) |
| 198 | Railway Engineering | Nutt (10.1.08) |
| 199 | Hand Drawing of Handbrake | Nutt (10.1.08) |
| 200 | Color Photo of bell crank and chain | Nutt (10.1.08) |
| 201 | Color photo of handbrake | Nutt (10.1.08) |
| 202 | Inter Swiss, LTD, Jim Shoe Calibration | Nutt (10.1.08) |
| 203 | Objection - Foundation, relevance, authenticity | |
| 204 | Objection - Foundation, relevance, authenticity | |
| 205 | Objection - Foundation, relevance, authenticity | |

| Ex. # | Description | Deposition |
|-------|-------------|------------|
| 206 | Color Photo of AEX 1136 | Dormire, |
| 207 | Color Photo of Tracks | Dormire |
| 208 | Color Photo of AEX 7136 | Dormire |
| 209 | Color Photo of derailed car | Dormire |
| 210 | Color Photo of AEX 7318 | Dormire |
| 211 | Color Photo of AEX 7318 | Dormire |
| 212 | Color Photo of derailed car | Dormire |
| 213 | Color Photo of rail car | Dormire |
| 214 | Color Photo of trackmobile | Dormire |
| 215 | Objection - Not produced, relevance, duplicative of testimony | |
| 216 | | |
| 217 | | |
| 218 | | |
| 219 | | |
| 220 | | |
| 221 | | |
| 222 | | |
| 223 | | |

| Ex. # | Description | Deposition |
|---|---|---|
| 224 | | Parades |
| 225 | Objection - Not relevant or admissible | Beall |
| 226 | Expert report of Richard C. Beall | Beall |
| 227 | Objection - Not relevant or admissible | Beall |
| 228 | Color photos A-P, track and trackmobile | Beall |
| 229 | Objection - Not relevant or admissible | Beall |
| 230 | Objection - Not relevant or admissible | Beall |
| 231 | | |
| 232 | | |
| 233 | | |
| 234 | | |
| 235 | Objection - Discovery pleadings, relevance | |
| 236 | Illustration hand brake | |
| 237 | Objection - Foundation, authenticity, relevance | |
| 238 | Objection - Foundation, authenticity, relevance | Cherry (10/10/08) |
| 239 | 9.15.08 Ltr to Casey from Peterson | Peterson |
| 240 | 9.26.08 Ltr to Casey from Peterson | Peterson |
| 241 | Foster Peterson CV | Peterson |

| Ex. # | Description | Deposition |
|-------|-------------|------------|
| 242 | Objection - Discovery pleading, relevance | |
| 243 | Objection - Discovery pleading, relevance | |
| 244 | Invoices from Full Service RR Cons. - relevance | Peterson |
| 245 | Objection - Color Photo A-DD - object to photos J-DD, relevance | Peterson |
| 246 | Objection - Hand drawing of Railcars - duplicative of testimony, relevance | Peterson |
| 247 | Written notes - calculations | Peterson |
| 248 | Objection - Foundation, authenticity | |
| 249 | Objection - Photographs of David Engle's August 2005 Testing except as previously objected to above or not produced | |
| 250 | Objection - Photographs and video of David Engle's March 2008 Testing - object, not produced | |
| 251 | Objection - Photographs and video of David Engle's November 2008 Testing except as previously objected to above, or not produced, videos not produced | |
| 252 | Objection - Photographs and video of Mike O'Brien's March 2008 testing, except as previously objected to above, or not produced, video not produced | |
| 253 | Objection - Photographs and video of Mark Elrod's Testing, except as previously objected to above, or not produced | |
| 254 | Objection - Plaintiff's Expert Witnesses' Files – to the extent not otherwise objectionable | |
| 255 | Objection - Defendant's expert witness files - to the extent not otherwise objectionable | |

| Ex. # | Description | Deposition |
|---|---|---|
| 256 | Settlement documents pertaining to Plaintiffs' settlement with The Andersons | |
| 257 | Solar Land Surveying Company survey | |
| 258 | Sink & Associates Rehabilitation Report | |
| 259 | Railshead drawing with Turk markings (Plaintiff's 1A) | |
| 260 | Railshead drawing with Turk markings (Plaintiff's 1B) | |
| 261 | | |
| 262 | Any documentary evidence listed or tendered by Plaintiff | |
| 263 | All other documents exchanged during discovery between the parties | |
| 264 | Any and all documents required for purposes of impeachment or rebuttal | |

## L̲earned Treatise:

### Exhibit 198 - Railway Engineering

**ATTACHMENT "G-2A"**
**PLAINTIFFS' OBJECTIONS TO DEFENDANT'S**
**PROPOSED TRIAL EXHIBITS**

| Ex. # | Description | Deposition |
|-------|-------------|------------|
| 4 | Objection-Authenticity, relevancy, competency and lack of foundation | |
| 5 | Objection-Authenticity, relevancy, competency and lack of foundation | |
| 6 | Objection-Authenticity, relevancy, competency and lack of foundation | |
| 7 | Objection-Authenticity, relevancy, competency and lack of foundation | |
| 8 | Objection-Authenticity, relevancy, competency and lack of foundation | |
| 9 | Objection-Authenticity, relevancy, competency and lack of foundation | |
| 40 | Objection-Authenticity, relevancy, competency and lack of foundation | |
| 41 | Objection-Authenticity, relevancy, competency and lack of foundation | |
| 55 | Objection-Authenticity, relevancy, competency and lack of foundation | |
| 56 | Objection-Authenticity, relevancy, competency and lack of foundation | |
| 58 | Objection-Authenticity, relevancy, competency and lack of foundation | |
| 63 | Objection-Authenticity, relevancy, competency and lack of foundation | |
| 76 | Objection-Authenticity, relevancy, competency and lack of foundation | |
| 80 | Objection-Authenticity, relevancy, competency and lack of foundation | |
| 82 | Objection-Authenticity, relevancy, competency and lack of foundation | |
| 84 | Objection-Authenticity, relevancy, competency and lack of foundation | |

| 86  | Objection-Authenticity, relevancy, competency and lack of foundation |
|-----|----------------------------------------------------------------------|
| 87  | Objection-Authenticity, relevancy, competency and lack of foundation |
| 88  | Objection-Authenticity, relevancy, competency and lack of foundation |
| 89  | Objection-Authenticity, relevancy, competency and lack of foundation |
| 90  | Objection-Authenticity, relevancy, competency and lack of foundation |
| 91  | Objection-Authenticity, relevancy, competency and lack of foundation |
| 92  | Objection-Authenticity, relevancy, competency and lack of foundation |
| 93  | Objection-Authenticity, relevancy, competency and lack of foundation |
| 94  | Objection-Authenticity, relevancy, competency and lack of foundation |
| 95  | Objection-Authenticity, relevancy, competency and lack of foundation |
| 96  | Objection-Authenticity, relevancy, competency and lack of foundation |
| 97  | Objection-Authenticity, relevancy, competency and lack of foundation |
| 98  | Objection-Authenticity, relevancy, competency and lack of foundation |
| 99  | Objection-Authenticity, relevancy, competency and lack of foundation |
| 100 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 101 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 104 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 106 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 107 | Objection-Authenticity, relevancy, competency and lack of foundation |

| | |
|---|---|
| 109 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 110 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 111 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 112 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 113 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 114 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 115 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 116 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 117 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 119 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 120 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 123 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 126 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 127 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 131 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 132 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 137 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 138 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 139 | Objection-Authenticity, relevancy, competency and lack of foundation |

140     Objection-Authenticity, relevancy,
        competency and lack of foundation
141     Objection-Authenticity, relevancy,
        competency and lack of foundation
142     Objection-Authenticity, relevancy,
        competency and lack of foundation
143     Objection-Authenticity, relevancy,
        competency and lack of foundation
144     Objection-Authenticity, relevancy,
        competency and lack of foundation
145     Objection-Authenticity, relevancy,
        competency and lack of foundation
146     Objection-Authenticity, relevancy,
        competency and lack of foundation
162     Objection-Authenticity, relevancy,
        competency and lack of foundation
173     Objection-Authenticity, relevancy,
        competency and lack of foundation
174     Objection-Authenticity, relevancy,
        competency and lack of foundation
175     Objection-Authenticity, relevancy,
        competency and lack of foundation
176     Objection-Authenticity, relevancy,
        competency and lack of foundation
192     Objection-Authenticity, relevancy,
        competency and lack of foundation
193     Objection-Authenticity, relevancy,
        competency and lack of foundation
194     Objection-Authenticity, relevancy,
        competency and lack of foundation
195     Objection-Authenticity, relevancy,
        competency and lack of foundation
198     Objection-Authenticity, relevancy,
        competency and lack of foundation
201     Objection-Authenticity, relevancy,
        competency and lack of foundation
216     Objection-Authenticity, relevancy,
        competency and lack of foundation

| 217 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 218 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 219 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 220 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 221 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 222 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 223 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 224 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 225 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 226 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 227 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 228 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 229 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 230 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 231 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 232 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 233 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 234 | Objection-Authenticity, relevancy, competency and lack of foundation |
| 256 | Objection-Authenticity, relevancy, competency and lack of foundation |

257     Objection-Authenticity, relevancy,
        competency and lack of foundation
258     Objection-Authenticity, relevancy,
        competency and lack of foundation
262     Objection-Authenticity, relevancy,
        competency and lack of foundation
263     Objection-Authenticity, relevancy,
        competency and lack of foundation
264     Objection-Authenticity, relevancy,
        competency and lack of foundation

Plaintiffs submit the following objections to Defendant's proposed trial exhibits.

**General Objection:**

**Specific Objections:**

1.      General Mills Handbrake Video – Plaintiff objects because this video is not

        authenticated, there is no one competent to testify as to its contents, and

        CSX has not and cannot lay the proper foundation to admit this video.

        Plaintiff further objects because there is no evidence that the condition of

        the railcar is substantially similar to June 5, 2005, and in fact, the

        photographic evidence demonstrates that the brake rigging was modified

        in this video.  Finally, Plaintiff objects because expert testimony is required

        to establish the authenticity and admissibility of this testing, and no such

        expert testimony is available.

2.    Settlement documents pertaining to Plaintiff's settlement with The

Andersons – This is irrelevant given the absence of evidence that The

Andersons breached any duty of care owed to Plaintiff.  It is also not

relevant to any issue for determination by the jury in this case.  There has

not been any foundation laid for this exhibit.

3.    Solar Land Surveying Company survey – This is unauthenticated and was

not produced to Plaintiff during discovery.  Plaintiff objects to this lacking

foundation and him being prevented to cross examine the survey

company.  Further, this is an expert opinion and CSX failed to designate

any such person competent to testify about these exhibits.

4.    Sink & Associates Rehabilitation Report – This report was prepared for the

workers' compensation case and was prepared within the limits of

Georgia's workers' compensation system.  CSX never listed this document

as one it would rely upon when responding to written discovery. It is not

relevant to the damages issues and rules governing this case and the

prejudice injected by its admission greatly outweighs any relevancy.  It has

not been authenticated and no foundation for its admission has be laid.

Finally, CSX has not designated any expert competent to testify as to

foundation or authenticity.

5.      Any documentary evidence listed or tendered by Plaintiff is non-specific and does not allow Plaintiff to properly object.

6.      All other documents exchanged during discovery between the parties – Plaintiff objects as Defendant has failed to list said exhibits with specificity so Plaintiff is unable to list specific objections to this designation.

7.      Any and all documents required for purposes of impeachment or rebuttal. Plaintiff objects as Defendant has failed to list said exhibits with specificity so Plaintiff is unable to list specific objections to this designation.  Plaintiff further objects as he has no way of knowing whether Defendant ever produced such documents.

### Attachment "H-1"-Plaintiff's trial brief

The parties will submit a trial brief discussing applicable statutes and case law at least ten (10) days prior to the time of trial of this case, and will also submit motions in limine.

## **<u>Attachment "H-2"- Defendant's trial brief</u>**

The parties will submit a trial brief discussing applicable statutes and case law at least ten (10) days prior to the time of trial of this case, and will also submit motions in limine.

## Attachment "I"

Plaintiff's proposed verdict form

Answer the following questions and comply with the instructions stated after each question in the order they are presented.

(1)    Do you find that the Defendant was negligent?

Yes or No (Circle One).

Go next to Question (2).

(2)    Do you find that the Defendant was *per se* negligent?

Yes or No (Circle One).

Go next to Question (3).

(3)    Do you find that the Plaintiff was contributorily negligent?

Yes or No (Circle One).

If you answered "no" to this Question, go next to Question (5) and do not answer Question (4).

(4)    If you answered "no" to Questions (1) and Question (2), please stop. If you answered "yes" to Question (1) and/or Question (2) and to Question (3), then what percentage of fault do you attribute to:

Defendant CSXT:    _____        (0%-100%)

Plaintiff:              _____        (0%-100%)

(Note:  The percentages must add up to equal 100%).

If you find that Plaintiff is less than 50% at fault, then please go to Question (5).

If not, then please stop.

(5)     What damages, if any, were proximately caused by Defendant's negligence

or *per se* negligence?

      (a)     Lost Earnings              $_____

      (b)     Medical Bills              $_____

      (c)     Pain and Suffering        $_____

      (d)     Mental Anguish            $_____

      **Total (of (a) – (d))**        **$_____**