# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA - ATLANTA DIVISION

| | |
|---|---|
| Douglas Burchfield, | **Civil Action File No.** |
| Plaintiff, | **1:07-CV-1263 (TWT)** |
| v. | |
| CSX Transportation, Inc., | |
| Defendant. | |

## NON-PARTY GENERAL MILLS' MOTION FOR PROTECTIVE ORDER REGARDING SUBPOENAE OF JOHN HENDERSON AND MO DRAPER

### INTRODUCTION

In August 2008, this Court ruled that Defendant CSX could not depose or obtain "any opinions, data concerning testing, or other matters … covered by the work product privilege" from General Mills' consulting expert Gary Wolf regarding his experimental testing of the rail car at issue in this case. In December, 2008, the Court extended that ruling to preclude CSX from deposing General Mills' 30(b)(6) witness, John Henderson, regarding Wolf's testing.

General Mills complied with this Court's order to produce a copy of the videotape of Wolf's testing, but is concerned by suggestions made in pre-trial motions that General Mills' interests, rights and privileges surrounding Wolf's

videotaped testing have been destroyed by production of the videotape. CSX has subpoenaed and intends to solicit testimony from John Henderson and Mo Draper, who were present at the testing, about their observations of the testing in an attempt to lay a proper foundation for the videotape. Plaintiff will presumably have questions of these witnesses as well. Both Henderson, a General Mills employee, and Draper, a trackmobile driver retained by General Mills' legal counsel, were present at the testing at direction of counsel, conferred with and received direction from counsel and Mr. Wolf during the testing, and many of their observations and perceptions of and about General Mills' attorney-directed investigation unquestionably remain protected by the attorney-client privilege, the work product doctrine, Fed. R. Civ. P. 26(b)(3) and this Court's prior rulings.

General Mills understands CSX is authorized to subpoena witnesses to trial in an attempt to lay a foundation for the videotape. General Mills respectfully requests only that this Court protect General Mills, Mr. Henderson and Mr. Draper to the extent testimony is sought from these witnesses that exceeds foundation testimony and encompasses privileged and protected matters.

## FACTS

John Henderson is the Safety Manager at General Mills' manufacturing facility in Covington, Georgia. (Rebensdorf Aff., Ex. A). Henderson was present

for and participated in the experimental tests performed at General Mills' Covington, Georgia facility, and conducted by General Mills' consulting expert, Gary Wolf of Rail Sciences, at the direction of General Mills' retained legal counsel. (Rebensdorf Aff., ¶ 4). Henderson has been subpoenaed by CSX to testify at trial about the activities shown on the Wolf videotape in an attempt to establish foundation for the videotape. (Docket No. 455; Rebensdorf Aff., Ex. A).

Mo Draper has also been subpoenaed by CSX to testify at trial. (Docket No. 454). As this Court is well aware, Mr. Draper was retained by General Mills' attorney, Mark Dreux, to drive the trackmobile for the testing. In that capacity, he received direction from Mr. Dreux, and although efforts were made to limit Mr. Draper's exposure to the details of the testing, he was necessarily in a position to possibly hear statements by Mr. Wolf and Mr. Dreux and other privileged and protected discussions. Mr. Dreux specifically asked Mr. Draper to maintain the confidentiality of the tests and his role in the testing. (Rebensdorf Aff., Ex. B).

On August 27, 2008, this Court ruled that CSX could not depose Gary Wolf or "obtain from Mr. Wolf any opinions, data concerning testing, or other matters….covered by the work product privilege as incorporated in Rule 26." (Rebensdorf Aff., Ex. C). On December 10, 2008, this Court further ordered that

3

CSXT was restricted from seeking discovery at the 30(b)(6) deposition on the issue of General Mills' knowledge of Gary Wolf's testing. The Court stated:

> With respect to the 30(b)(6) deposition notice, I am not going to permit CSX to question Mr. Henderson regarding the testing that was done by Mr. Wolf. As I have said, that information may be admissible, may be relevant to get the videotape admitted; but it's not permissible discovery given the posture of this case and given my prior ruling with respect to the discussion of Mr. Wolf's opinions and permissible testimony.

(Rebensdorf Aff., Ex. D).

## ARGUMENT

### I.  Protective Order Standard

Fed. R. Civ. P. 26 (c) gives a court the authority to enter "any order which justice requires to protect a party or persons from annoyance, embarrassment, oppression, or undue burden or expense…." Pursuant to this provision, the court can enter any one of a variety of protective orders for purposes of protecting parties or other persons. Lampshire v. Procter & Gamble Co., 94 F.R.D. 58, 60 (D. Ga. 1982). The rule allows a protective order to be entered upon a showing of good cause by the movant. Id.; Fed. R. Civ. P. 26 (c).

General Mills does not wish to belabor the issues and associated legal arguments surrounding the controversial videotape, of which this Court is well aware. At this juncture, General Mills respectfully requests only that the Court

assist at the time of trial in drawing a careful distinction between testimony elicited in an attempt to establish a foundation for the videotape, and questions of witnesses which may invade the intact protections afforded to non party General Mills pursuant to the attorney-client privilege, the work product doctrine, Fed. R. Civ. P. 26(b)(3) and this Court's prior rulings.

The work product doctrine applies to communications made to or heard by Mr. Henderson and Mr. Draper by General Mills' legal counsel and expert regarding testing parameters and outcomes.  Hickman v. Taylor, 329 U.S. 495, 510 (1947) (holding that attorneys must "work with a certain degree of privacy free from unnecessary intrusion by the opposing parties and their counsel"; work product includes an attorney's "interviews, statements, memoranda, correspondence, [and] briefs").  Further, an attorney's mental impressions, conclusions, opinions or legal theories formed in anticipation of litigation are protected from discovery.  Fed. R Civ. Pro. 26(b)(3); Lott v. Seaboard S.R. Inc, 109 F.R.D. 554, 558 (S.D. Ga. 1985). Notably, the work product doctrine has been extended to work product produced by an attorney's agent.  United States v. Nobles, 422 U.S. 225, 238-239 (1975).

Similarly, the attorney-client privilege attaches not only to Mr. Dreux's communications with Mr. Henderson, but also to any pertinent comments about the

testing made to Mr. Draper.  See, e.g., Byrnes v. Empire Blue Cross Blue Shield, 1999 U.S. Dist. LEXIS 17281, No. 98 Civ. 8520, 1999 WL 1006312 (S.D.N.Y. 1999) (consultant was involved in the same case the attorney had been hired to represent the client in, thus communications that assisted the attorney in rendering legal advice were protected by the attorney-client privilege) (cited with approval in Tri-State Outdoor Media Group, Inc. v. Official Comm. of Unsecured Creditors, 283 B.R. 358, 362 (Bankr. M.D. Ga. 2002)).

      Application of these protections will be made all the more complicated by the fact that Mr. Wolf's testing was an attempted recreation of railcar handbrake performance several months after the accident, and as such, the testing and results constitute expert analysis, not "facts" of the accident.  It is one thing, for example, to ask Mr. Henderson: "Did you observe the experimental testing that day?  Does this segment of the videotape represent what you saw on the day of the testing?" and another thing to ask: "Was the railcar moved that day?  Was the handbrake set?  Was the handbrake released?  Did the handbrake stop the car?  etc…"  The latter questions implicate not only the parameters and results of the testing performed by Mr. Wolf, but also Mr. Wolf's narration of the testing (which has been redacted from the videotape), and also the many questions posed and interpretive comments made by legal counsel and Mr. Wolf in the midst of the

6

testing, many of which were shared with Mr. Henderson, and therefore, are privileged and protected .[1]

## CONCLUSION

For the reasons above, General Mills respectfully requests that this Court grant General Mills' Motion for Protective Order regarding the trial subpoenae issued to John Henderson and Mo Draper, to the extent questions are asked of these witnesses which encroach upon the privileges and protections afforded to non-party General Mills pursuant to the attorney-client privilege, the work product doctrine, Fed. R. Civ. P. 26(b)(3) and this Court's prior rulings.

Dated:  October 2, 2009

/s/ Alyssa L. Rebensdorf
Jerry W. Blackwell, Minn. Bar #186867
Alyssa L. Rebensdorf, Minn. Bar #296478
BLACKWELL BURKE P.A.
431 South Seventh Street, Suite 2500
Minneapolis, MN  55415
Tel: (612) 343-3200
Fax: (612) 343-3205
Blackwell@blackwellburke.com
arebensdorf@blackwellburke.com

**ATTORNEYS FOR NON-PARTY GENERAL MILLS, INC.**

---

[1] CSX has argued that Plaintiff lacks standing to assert privilege arguments about the videotape.  If the Court agrees, and will permit, counsel for General Mills will sit at counsel table during the examination of Mr. Henderson and Mr. Draper to represent General Mills' interests during questioning of these witnesses.

**THIS DOCUMENT WAS PREPARED IN COMPLIANCE WITH LOCAL RULE 5.1 USING TIMES NEW ROMAN 14 POINT FONT.**

CERTIFICATE OF SERVICE

This is to certify that this Notice of Appearance was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

| | |
|---|---|
| Robert Edward Casey, Jr. | rec@caseygilson.com |
| Joyce Gist Lewis | jgist@caseygilson.com |
| Michael J. Warshauer | mjw@warpoe.com |
| James M. Poe | jpoe@warpoe.com |
| Douglas Campbell Dumont | dcd@warpoe.com |
| Jerry W. Blackwell | Blackwell@blackwellburke.com |
| Corey L. Gordon | cgordon@blackwellburke.com |
| Alyssa L. Rebensdorf | arebensdorf@blackwellburke.com |

/s/Alyssa L. Rebensdorf